**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| MISTY MURRAY AND SHAUN MURRAY, | ) | |
| individually and on behalf of a class of | ) | |
| similarly situated individuals, | ) | |
| | ) | |
| *Plaintiffs*, | ) | No.  12-cv-04789 |
| | ) | |
| v. | ) | |
| | ) | Hon. Sara L. Ellis |
| BILL ME LATER, INC., a Delaware corporation, | ) | |
| | ) | |
| *Defendant*. | ) | |

**PLAINTIFFS' UNCONTESTED MOTION & MEMORANDUM IN SUPPORT OF**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

I.      BACKGROUND ........................................................................................................2

        A.  Erroneous Collection Calls to Plaintiffs and Commencement of Action....................2

        B.  Plaintiffs' Discovery Efforts.........................................................................................3

        C.  Plaintiffs Identify Potential Class Members Through Bill Me Later's Invalidated
            Number List and CSG Call Records.............................................................................4

        D.  The Settlement Negotiations .........................................................................................5

II.     THE PROPOSED SETTLEMENT ...........................................................................6

        A.  The Settlement Class.....................................................................................................6

        B.  The Settlement Fund.....................................................................................................6

        C.  Other Relief ..................................................................................................................7

        D.  Notice and Settlement Administration..........................................................................7

        E.  Opt-Out and Objection Procedure................................................................................10

        F.  Release..........................................................................................................................10

III.    ARGUMENT ..............................................................................................................11

        A.  The Settlement is Well Within the Range of Possible Approval, and All Factors
            Warrant Preliminary Approval.....................................................................................11

        B.  The Proposed Class Notice is Adequate ......................................................................16

        C.  The Court Should Grant Class Certification for Settlement Purposes .........................18

                1.  The Rule 23(a) Factors are Met .......................................................................19

                        a.  The Class is sufficiently numerous and joinder is impracticable. .............19

                        b.  The Class shares common issues of law and fact. .....................................20

                        c.  The Plaintiffs' claims are typical of the Settlement Class. ........................21

                        d.  The Plaintiffs and their counsel are adequate representatives.................21

i

2.  The Rule 23(b)(3) Factors are Met ...................................................................24

a.  *Common questions of law or fact predominate over questions affecting only individuals*..........................................................................................24

b.  *A class action is a superior method of adjudication.*................................25

**D.  Plaintiffs' Counsel Should Be Appointed As Class Counsel** ........................................27

**IV.     CONCLUSION** ........................................................................................................28

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Int'l Grp., Inc. et al., v. ACE INA Holdings, et al.*,
    Nos. 07-cv-2898, 09 C 2026, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012) ......................... 1, 27

*Amchem Prods. Inc. v. Windsor*,
    521 U.S. 591 (1997) ............................................................................................ *passim*

*Armstrong v. Board of Sch. Dirs. of City of Milwaukee*,
    616 F.2d 305 (7th Cir. 1980), *overruled on other grounds* ................................. 11, 12

*In re AT&T Mobility Wireless Data Services Sales Litig.*,
    270 F.R.D. 330 (N.D. Ill. 2010) ........................................................................... 12

*In re Bridgestone/Firestone, Inc.*,
    288 F.3d 1012 (7th Cir. 2002) .............................................................................. 25

*CE Design v. Beaty Const., Inc.*,
    07 C 3340, 2009 WL 192481 (N.D. Ill. Jan. 26, 2009) ............................. 21, 22, 24

*In re Citibank HELOC Reduction Litigation*,
    09-cv-0350-MMC (N.D. Cal) ................................................................................ 23

*Desai et al v. ADT Security Services, Inc.*,
    No. 11-cv-1925 (N.D. Ill. 2013) ........................................................................... 15

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) .............................................................................................. 16

*Gasper v. Linvatec Corp.*,
    167 F.R.D. 51 (N.D. Ill. 1996) ............................................................................. 21

*Golon v. Ohio Savs. Bank*,
    98 C 7430, 1999 WL 965593 (N.D. Ill. Oct. 15, 1999) ........................................ 25

*Gomez v. Ill. State Bd. of Educ.*,
    117 F.R.D. 394 (N.D. Ill. 1987) ........................................................................... 22

*Haynes v. Logan Furniture*,
    503 F.2d 1161 (7th Cir. 1974) .............................................................................. 26

*Henry v. Cash Today, Inc.*,
    199 F.R.D. 566 (S.D. Tex. 2000) .......................................................................... 26

*Hinman v. M and M Rental Cen., Inc.*
  545 F. Supp. 2d 802 (N.D. Ill. 2008) ............................................................................. *passim*

*Ira Holtzman, C.P.A. v. Turza*,
  728 F.3d 682 (7th Cit. 2013) ................................................................................20, 26

*Isby v. Bayh*,
  75 F.3d 1191 (7th Cir. 1996) ...........................................................................................12

*In re Jiffy Lube Int'l, Inc. Text Spam Litigation*,
  No. 3:11-MD-02261-JM-JMA (S.D. Cal.) ................................................................23

*Keele v. Wexler*,
  149 F.3d 589 (7th Cir. 1998) ..........................................................................................20

*Kessler v. Am. Resorts Int'l*,
  05 C 5944, 2007 WL 4105204 (N.D. Ill. Nov. 14, 2007).......................................12

*Kramer v. Autobytel et al*
  4:10-cv-02722 (N.D. Cal.) ..............................................................................................23

*Lemon v. Int'l Union of Operating Eng's.*,
  216 F.3d 577 (7th Cir. 2000) ..........................................................................................24

*Lozano v. Twentieth Century Fox Film Corp, et al.*,
  No. 09-6344 (N.D. Ill.) .....................................................................................................23

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*,
  256 F.R.D. 589 (N.D. Ill. 2009).....................................................................................19

*Malta et al. v. Fed Home Loan Mortgage*,
  No. 10-cv-01290 (S.D. Cal. 2013) .................................................................................15

*Mars Steel Corp. v. Cont'l Ill. Nat'l. Bank & Trust Co. of Chicago*,
  834 F. 2d 677 (7th Cir. 1987) .........................................................................................15

*McCabe v. Crawford & Co.*,
  210 F.R.D. 631 (N.D. Ill. 2002).....................................................................................19

*Medina v. Mfrs. & Traders Trust Co.*,
  No. 04 C 2175, 2004 WL 3119019 (N.D. Ill. Dec. 14, 2004) ..............................16

*Mirfasihi v. Fleet Mortg. Corp.*,
  356 F.3d 781 (7th Cir. 2004) ..........................................................................................17

*Murray v. GMAC Mortg. Corp.*,
  434 F.3d 948 (7th Cir. 2006) ..........................................................................................26

*Oshana v. Coca-Cola Co.*,
    472 F.3d 506 (7th Cir. 2006) ...............................................................................19

*Payton v. County of Kane*,
    308 F.3d 673 (7th Cir. 2002) ...............................................................................24

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)..............................................................................................26

*Radamanovich v. Combined Ins. Co. of Am.*,
    216 F.R.D. 424 (N.D. Ill. 2003).............................................................................24

*Rahim v. Sheahan*,
    No. 99 C 0395, 2001 WL 1263493 (N.D. Ill. Oct. 19, 2001)...............................24

*Randolph v. Crown Asset Mgmt., LLC*,
    254 F.R.D. 513 (N.D. Ill. 2008).............................................................................20

*Retired Chicago Police Ass'n v. City of Chicago*,
    7 F.3d 584 (7th Cir. 1993) ....................................................................................21

*Robles v. Lucky Brand Jeans*,
    3:10-cv-04846 (N.D. Cal.) .....................................................................................23

*Rojas et al v. Career Education Corp.*,
    No. 10-cv-05260 (N.D. Ill. 2012) ..........................................................................15

*Rojas v. Career Education Corp.*,
    10-cv-05260 (N.D. Ill.) ..........................................................................................23

*Rosario v. Livaditis*,
    963 F.2d 1013 (7th Cir. 1992) .........................................................................20, 21

*Rose et al v. Bank of America Corp.*,
    No. 11-cv-02390 (N.D. Cal) ..................................................................................15

*Satterfield v. Simon & Schuster*,
    No. 06-cv-2893 CW (N.D. Cal.).............................................................................23

*Schulken v. Washington Mutual Bank, et al.*,
    09-cv-02708-LHK (N.D. Cal.)...............................................................................23

*Schulte v. Fifth Third Bank*,
    805 F. Supp.2d 560 (N.D. Ill. 2011) .................................................................13, 14

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006) ................................................................................12

*Weinstein, et al. v. The Timberland Company*,
   No. 06-cv-0454 (N.D. Ill.) ..........................................................................................22

**Statutes**

Telephone Consumer Protection Act, 47 U.S.C. §227 ........................................ *passim*

Federal Rule of Civil Procedure 23 ................................................................. *passim*

**Other Authorities**

Conte & Newberg, 4 *Newberg on Class Actions*, §11.25 (4th Ed. 2002).....................................11

Conte & Newberg, 4 *Newberg on Class Actions*, § 11.42 ..............................................................15

Conte & Newberg, 4 *Newberg on Class Actions*, § 11:22 ...........................................................18

Conte & Newberg, 4 *Newberg on Class Actions*, § 21.612 .........................................................18

Conte & Newberg, 4 *Newberg on Class Actions*, § 21.632 .........................................................18

*Manual for Complex Litig.* § 21.31 (4th ed. 2004) ....................................................................16

*Manual for Complex Litig.,* § 21.632 (4th ed. 2004) ............................................................11, 18

*Manual for Complex Litig.,* § 21.612 (4th ed. 2004) ..................................................................18

After more than two years of litigation including months of negotiation, the parties in this putative class action under the Telephone Consumer Protection Act, 47 U.S.C. §227, (the "TCPA") have reached a proposed settlement which provides all persons of the proposed Settlement Class the opportunity to recover the full statutory penalty of $500 under the TCPA. (*See* Settlement Agreement, Ex. 1 hereto). The Settlement[1] provides significant relief to thousands of consumers, establishing a $9.9 million fund from which Class Members will be compensated. If approved, the Settlement would bring certainty and closure – and significant and valuable relief for consumers – to what otherwise has been, and likely would continue to be, contentious and costly litigation centered on the unsettled legal question of Defendant Bill Me Later, Inc.'s ("Bill Me Later" or "BML") liability for its allegedly unlawful calling practices.

By their motion, Plaintiffs Misty Murray and Shaun Murray seek, *inter alia*, preliminary certification of a settlement class, approval of a claims procedure, and approval of the proposed form and method of class notice. This memorandum describes in detail the reasons why preliminary approval is in the best interests of the class and is consistent with Federal Rule of Civil Procedure 23.

In evaluating the fairness of a proposed class action settlement, and as discussed in more detail below, the most important consideration is the strength of the plaintiff's case on the merits balanced against the amount offered in the settlement. *Am. Int'l Grp., Inc. et al., v. ACE INA Holdings, et al.,* Nos. 07-cv-2898, 09 C 2026, 2012 WL 651727, at *2 (N.D. Ill. Feb. 28, 2012). While the Plaintiffs believe they would secure class certification and prevail on the merits at trial, success is not assured, and Bill Me Later has vigorously defended this case at every turn. The

---

[1] Unless otherwise indicated, capitalized terms have the same meaning as those terms are used in the Settlement Agreement, attached as Exhibit 1.

1

Settlement Fund created here, which provides Settlement Class Members the ability to claim up to the full statutory amount of $500, coupled with the changes to Bill Me Later's collection practices implemented in response to this class action suit, meets and exceeds the applicable standards of fairness and is substantially consistent with other TCPA settlements that have been approved in this District and throughout the country. Accordingly, the Court should preliminarily approve the Settlement so that Settlement Class Members can receive notice of their rights.

## I.       BACKGROUND

### A.  Erroneous Collection Calls to Plaintiffs and Commencement of Action

Bill Me Later developed an open-end credit product that enables consumers to purchase merchandise online and over the phone. Consumers who want to make purchases without using a credit or debit card may instead finance the payment of their purchases using the open-end credit product developed by Bill Me Later. While Bill Me Later does not directly extend credit for the loans – the loans have been funded by various banking partners, including CIT Bank, WebBank, and later, Comenity Capital Bank – it processes the applications, services the accounts for their duration, and engages in collection activity on delinquent accounts, including placing automated collection calls to debtors.

As part of the customer application process, Bill Me Later receives telephone numbers from customers using the Bill Me Later® product, one purpose of which is to call those customers should their account go into arrears. Unfortunately, periodic phone number inputting errors during the application process have led Bill Me Later to occasionally call consumers who are not Bill Me Later® customers and to continue calling many of those non-customers long after they inform Bill

Me Later of its error.[1]

Beginning on March 17, 2012, Bill Me Later started calling Plaintiff Misty Murray, attempting to collect a debt from Faiza Tahir, a Bill Me Later® customer. The Murrays tried repeatedly to get the calls to stop, but to no avail. When Bill Me Later called, the Murrays repeatedly informed its operators that they were not Faiza Tahir, that they did not know Ms. Tahir, and that they were not Bill Me Later® customers. Despite their requests, the calls continued unimpeded. Between March 17 and May 16, 2012, Bill Me Later called Ms. Murray 126 times, despite the fact that neither Misty Murray nor Shaun Murray are Bill Me Later® customers.

On June 15, 2012, Misty Murray and Shaun Murray filed a Class Action Complaint against Bill Me Later in this Court. Contemporaneously with the filing of the Complaint, Plaintiffs filed their Motion for Class Certification. Pursuant to stipulation, that Motion was subsequently withdrawn with leave to re-file after the close of discovery.

### B. Plaintiffs' Discovery Efforts

The Parties have engaged in extensive discovery, including numerous depositions, document requests, interrogatories, and the production of thousands of documents by Bill Me Later and a third-party, CSG International, Inc. ("CSG"). Plaintiffs took the depositions of three separate Bill Me Later employees in July 2013, and Bill Me Later took the depositions of both Plaintiffs later in the summer of 2013. In addition, Plaintiffs subpoenaed and reviewed phone records of

---

[1] Bill Me Later's procedure for invalidating phone numbers has changed since this action was filed. Prior to this lawsuit, Bill Me Later followed a "three strikes rule," which meant that BML customer service representatives could continue to call a phone number until the third time the called party told BML that the number was wrong (agents had discretion to discontinue calls after one attempt if it appeared evident to the agent that the number was a "wrong number" and was not an instance of "customer avoidance," such as where a customer simply told the agent that she had reached a wrong number so that BML would stop calling). After this lawsuit was filed, BML changed its calling procedures so that calls on behalf of BML to a phone number will be discontinued on the first occasion that the called party claims the number does not belong to a customer, regardless of whether the called party appeared to be engaged in customer avoidance.

several years' of automated phone calls, covering millions of calls, from CSG, a vendor hired by Bill Me Later for the purpose of placing automated telephone calls. Plaintiffs also noticed the 30(b)(6) deposition of CSG but agreed to withdraw the Subpoena pending the outcome of the mediation that resulted in the instant Agreement. Class discovery was initially scheduled to be completed in June 2013, but, pursuant to agreement of the parties, the Court permitted discovery to continue through October 10, 2013. Near the end of the discovery period, the Court granted the parties' stipulation to stay discovery to explore class-wide settlement.

### C. Plaintiffs Identify Potential Class Members Through Bill Me Later's Invalidated Number List and CSG Call Records

During discovery, Plaintiffs learned that Bill Me Later "invalidated" certain numbers that it believed were not accurate or that should not receive additional automated calls. Bill Me Later produced a list of all such invalidated numbers, which included approximately one million numbers from June 2008 through 2012. This list identified the telephone number that was invalidated, the date of invalidation, and whether the number was subsequently re-validated. In response to a Subpoena in this case, CSG produced call detail records for all calls made by CSG on Bill Me Later's behalf between June 15, 2008 and December 31, 2012. These call detail records identified millions of automated calls, including the telephone number called, the date and time of the call, the call result, and a call result "code" assigned. Some of those codes are explained in a "call flow and scripting" guideline produced in this case. During CSG's automated calls, the recipient of the call can indicate that the Bill Me Later customer does not live at that address – i.e., that the call is being made to a wrong number. If the call recipient indicates a wrong number and then hangs up the call, CSG's system will record a particular code to indicate that the wrong number was called. An analysis of the call detail records produced in this case for all Bill Me Later calls made from June 2008 through 2012 revealed the unique phone numbers where the

"wrong number" code was entered through CSG's system. Plaintiffs planned to move for class certification of a narrow class consisting of only those consumers whose phone numbers appeared on both Bill Me Later's invalidated number list and also on CSG's records as indicating that a "wrong number" code had been entered by the call recipient. Bill Me Later contended that Plaintiff's proposed class would not be certified for several reasons, including its arguments that it invalidated phone numbers for a number of reasons, not limited to the phone numbers being incorrect, and that call recipients routinely made false claims indicating that a wrong number had been called in order to avoid debt collection activities.

### D. The Settlement Negotiations

As the deadline to complete class discovery approached and with Plaintiffs' class certification motion forthcoming, the parties began to explore settlement. At the close of class certification discovery, with discovery disputes still lingering both among the parties and third parties, the parties agreed to mediate to determine if a settlement could be reached in advance of the uncertainties and high risks of the class certification decision. On January 28, 2014, counsel for Plaintiffs met with both in-house and outside counsel for Defendant and its corporate parent eBay Inc., in two full-day mediation sessions with the Hon. Edward A. Infante (ret.), a former Chief Magistrate Judge of the United States District Court for the Northern District of California, at JAMS in San Francisco with expertise in TCPA class settlements. The parties were unable to reach an agreement at the initial mediation session. However, upon recommendation of Judge Infante, the parties agreed to meet again for a second mediation, and did so in San Francisco on March 13, 2014. The parties reached an agreement in principle to resolve the case at the second mediation. In the interim between these formal sessions, and in the months that followed, counsel for Plaintiffs and for Defendant, together with assistance and guidance from Judge Infante,

successfully resolved most of the key elements of the settlement. Eventually, these discussions culminated in the Settlement Agreement that Plaintiffs are now asking the Court to approve preliminarily.

## II. THE PROPOSED SETTLEMENT

### A. The Settlement Class

The proposed settlement would establish a Settlement Class for this matter defined as follows:

> All persons who from June 15, 2008 through the date of preliminary approval, (a) received a call on their cellular phone made by or on behalf of Bill Me Later, Inc. (BML) using an automated telephone dialing system and the called party did not give consent for BML to make such a call, or (b) received a call on their cellular phone or residential telephone line made by or on behalf of BML using an artificial or prerecorded voice to deliver a message and the called party did not give consent for BML to make such a call.

(*See* Ex. 1, § 2.1.)

### B. The Settlement Fund

The proposed Settlement would establish a $9,900,000.00 cash settlement fund. Each authorized claimant is entitled to an equal share of the Settlement Fund, up to the full $500 statutory amount available under the TCPA, after payments are first made for notice and administration costs (approximately $1 million), Court-approved attorneys' fees (up to $3.3 million) and expenses, and Court-approved incentive payments to Plaintiffs (up to $30,000 each). Each Settlement Class Member may submit only one claim. (Ex. 1, § 3.6.)

The total payment to each Settlement Class Member will depend on the number of valid Claim Forms submitted. Discovery has shown that only a very small fraction of the telephone numbers that Bill Me Later® calls belong to Settlement Class Members like the Plaintiffs. The vast majority of such phone numbers belong to Bill Me Later® customers who consented to receive such calls when they enrolled as Bill Me Later® customers. Based on an estimate of the

number of claims expected in response to the notice program developed with the assistance of the proposed Settlement Administrator, Heffler Claims Group LLC, Plaintiffs anticipate a payout in the range of $75.00 - $150.00 per Settlement Class Member claim, although that amount may be higher or lower depending on the number of valid Claim Forms submitted. To the extent that any funds remain after Settlement Class Members are paid, those funds will be distributed as *cy pres* to three charitable organizations to be determined by the parties and approved by the Court.

### C. Other Relief

Although not a formal term of the Settlement, Plaintiffs contend that this lawsuit has already resulted in significant non-monetary relief to the Settlement Class and the public. Shortly after the filing of the Complaint in this matter, Bill Me Later revised its internal policies relating to invalidation of phone numbers to be called. Whereas Bill Me Later previously followed what is known as a "three strikes" policy – *i.e.*, it would often continue placing automated calls to a phone number until the third time the called party indicated it was calling the wrong number – it has changed that policy to a "one-strike" policy – meaning that it discontinues placing automated calls, or calls featuring a prerecorded or artificial voice (together, "robocalls"), to a telephone number the first time that a called party indicates that Bill Me Later has called the wrong number. Bill Me Later's internal documents produced in discovery demonstrate that the reasons for the change, which has already resulted and will continue to result in fewer unauthorized automated calls to non-Bill Me Later customers, were the filing of this lawsuit and the prevention of such suits in the future.

### D. Notice and Settlement Administration

As noted above, the Settlement Class Members are consumers who received automated calls, or calls featuring a prerecorded or artificial voice, to their residential or cellular phones made

by or on behalf of Bill Me Later between June 15, 2008 and the date of preliminary approval of the Settlement Agreement, and who did not give Bill Me Later consent to receive such calls.

Because most Settlement Class Members probably were not Bill Me Later customers, Bill Me Later does not have accurate identifying information for most members of the Settlement Class. As a result, for purposes of notice, the Settlement Class is comprised of two categories of members: "Direct Notice Consumers" who received unauthorized robocalls from Bill Me Later and whose names and addresses (and in certain instances, email addresses) can be obtained through "reverse lookup" procedures or through information otherwise available to Bill Me Later; and "Publication Notice Consumers" who received unauthorized robocalls from Bill Me Later but for whom the parties do not have specific identifying information, and have no way of determining their identities in order to send them direct notice. (*See* Ex. 1, §§ 2.6, 2.7; Ex. E to the Settlement Agreement (Notice Plan).)

Direct Notice Consumers will be identified through a "reverse lookup procedure." and by reference to data available to Bill Me Later. A reverse lookup entails utilizing comprehensive and extensive databases of information from third- party sources to determine subscriber information affiliated with a telephone number at a given point in time. The procedure will begin with Bill Me Later providing the Settlement Administrator a "Called Number List" which will contain a list of unique telephone numbers "to which automated calls were made by or on behalf of Bill Me Later from June 15, 2008 through the date of preliminary approval." (Ex. 1, § 2.6(b).) The Settlement Administrator will then perform a reverse lookup of every number on that list, which will determine the name of the individual who subscribed to that telephone number as of the date when Bill Me Later placed robocalls to that number. The results of that reverse lookup will then be compared against Bill Me Later's customer account records, and all records for which the surname

(i.e., last name) from the reverse lookup results does not match the surname from Bill Me Later's customer account records will be Direct Notice Consumers.

In addition, Bill Me Later will also generate and provide to the Settlement Administrator an "Email Notice List." The Email Notice List shall consist of the approximately 32,000 unique email addresses that BML has identified as belonging to individuals who had telephone numbers on the Called Number List that were invalidated but for whom phone records indicated that the telephone number had been dialed after the date of invalidation. Like the individuals identified through the reverse lookup procedure, individuals on the Email Notice List will also be Direct Notice Consumers.

Direct Notice Consumers will receive first-class mailed notice or, in some cases, email notice. (*See* Ex. 1, § 2.6; Ex. C to the Settlement Agreement (Long Form Class Notice and Claim Form).) Settlement Class Members whose mailed notice is returned as undeliverable will be run once through the U.S. Post Office's National Change of Address system by the Settlement Administrator to identify, if possible, a current address. Publication Notice Consumers will receive publication notice through the extensive notice plan developed by the Settlement Administrator. (*See* Ex. 1, §§ 2.6, 2.7; Exs. D, E to the Settlement Agreement (Publication Notice and Notice Plan, respectively).)

The proposed Notice program, through a combination of direct outreach and publication, is expected to reach at least 76% of potential class members. The publication notice plan, set forth in Exhibit E to the Settlement Agreement, will disseminate notice over a variety of media, selected to reach adults who are 18 years of age and older. The publication notice plan will place ads in two popular magazines of general interest – *Sports Illustrated* and *People* –with a total of three insertions having a total circulation of 10,340,773 copies. The plan, through internet banners on

popular websites, will also target consumers who shop at online retailers. Additionally, the plan will include the establishment of a page on Facebook, and placement of advertisements on a separate network of smartphone and tablet-based content providers. The media plan is expected to generate 175 million views (or "impressions") of the banners over a 30-40 day period. Potential Class Members can click on the advertisement, which will link to the settlement website. The banners will be carried on Facebook.com, as well as on the Xaxis Network and the Millennial Media Mobile & App Network, which are networks comprised of hundreds of popular websites.

Finally, the proposed notice plan will establish a settlement website with downloadable case documents and claim forms, and will allow persons to input their telephone numbers and other identifying information to determine eligibility for settlement benefits. The website will include a list of anticipated "frequently asked questions" with responses, and other pertinent case information.

### E.  Opt-Out and Objection Procedure

Settlement Class Members will have an opportunity to exclude themselves from the Settlement or object to its approval. The procedures and deadlines for filing opt-out requests and objections (*see* Ex. 1, §§ 2.8, 2.9) will be referenced in the Publication Notice and conspicuously listed in the Long Form Notice and on the settlement website. With regard to objections, the notices inform Settlement Class Members that the Final Approval Hearing will be their opportunity to appear and have their objections heard. The notices also inform Settlement Class Members that they will be bound by the release unless they timely exercise their right to exclusion.

### F.  Release

In exchange for the relief described above, the above-defined class will provide Defendant Bill Me Later, and certain other parties involved in either automated calls or the BML Program

(*e.g.*, CSG International, WebBank and Comenity Capital Bank),a full release of all claims related to the allegedly-improper phone calls described in the Complaint, which includes a release of any claims under the TCPA or any state laws relating to unauthorized phone calls, and any other statutory or common law claim that could have been asserted based upon the same conduct.  (*See* Ex. 1, §§ 1.35, 1.36, 5.1 for a description of the complete release language.)

## III.    ARGUMENT

### A.  The Settlement is Well Within the Range of Possible Approval, and All Factors Warrant Preliminary Approval

The Settlement represents a fair and reasonable resolution of this dispute and is worthy of notice to, and consideration by, the Settlement Class Members.  It will provide financial relief to participating Settlement Class Members up to the full statutory recovery under the TCPA of $500.00, and will relieve the parties of the burden, uncertainty and risk of continued litigation.

Courts review proposed class action settlements using a well-established two-step process. Conte & Newberg, 4 *Newberg on Class Actions*, §11.25, at 38-39 (4th Ed. 2002); *see also Armstrong v. Board of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds.*  The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." *Newberg*, §11.25, at 38-39; *Armstrong*, 616 F.2d at 314.  The preliminary approval hearing is not a fairness hearing, but rather a hearing to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing.  *Newberg*, §11.25, at 38-39; *Armstrong*, 616 F.2d at 314.  The preliminary approval stage is an "initial evaluation" of the fairness of the proposed settlement based on the written submissions and informal presentation from the settling parties.  *Manual for Complex Litigation,* § 21.632 (4th ed. 2004).  If the Court

11

finds a settlement proposal "within the range of possible approval," the case proceeds to the second step in the review process—the final approval hearing. *Newberg*, §11.25, at 38-39.

Because the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory, given that parties to a settlement "benefit by immediately resolving the litigation and receiving some measure of vindication for [their] position[s] while foregoing the opportunity to achieve an unmitigated victory." *In re AT&T Mobility Wireless Data Services Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) (internal quotations and citations omitted). There is a strong judicial and public policy favoring the settlement of class action litigation, and such a settlement should be approved by the Court after inquiry into whether the settlement is "fair, reasonable, and adequate." *Isby v. Bayh*, 75 F.3d 1191, 1198 (7th Cir. 1996). "Although this standard and the factors used to measure it are ultimately questions for the fairness hearing that comes after a court finds that a proposed settlement is within approval range, a more summary version of the same inquiry takes place at the preliminary phase." *Kessler v. Am. Resorts Int'l,* 05 C 5944, 2007 WL 4105204, at *5 (N.D. Ill. Nov. 14, 2007) (citing *Armstrong*, 616 F.2d at 314).

The factors ultimately to be considered by the Court are: (1) the strength of the plaintiff's case compared to the amount of the settlement offer; (2) an assessment of the likely complexity of a trial; (3) the length and expense of the litigation; (4) the amount of opposition to settlement among affected parties; (5) the opinion of competent counsel; and (6) the stage of the proceedings and amount of discovery completed at the time of settlement. *Id.* (citing *Isby,* 75 F.3d at 1199). Of these considerations, the first is most important. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).

A preliminary application of these factors to this case demonstrates that the proposed settlement is "fair, reasonable, and adequate." The Settlement in this case provides significant benefits to the Settlement Class, as every Settlement Class Member will be able to make a claim for up to $500 from the Settlement Fund – the full amount of statutory damages available under the TCPA. Plaintiffs believe their TCPA claim against Bill Me Later is strong, but are also aware that Defendant has denied the material allegations of the Complaint and has raised several legal defenses, any of which, if successful, would result in the Plaintiffs and the proposed Settlement Class Members receiving no payment whatsoever. Furthermore, Bill Me Later has taken the position consistently throughout this litigation that Plaintiffs would be unable to certify the class due, among other things, to the claimed impossibility of ascertaining the identity of class members without individual inquiries, as well as the complex nature of its call procedures involving millions of customers and non-customers and dozens of call response "codes." Consequently, Bill Me Later's defenses to a potential class certification motion could result in the Settlement Class receiving no payment even if Misty Murray and Shaun Murray were to prevail on their individual claim. Taking these realities into account, and recognizing the risks involved in any litigation, the settlement relief represents an excellent result for the Settlement Class.

The amount of the settlement and the payments to Settlement Class Members are particularly significant in light of the risks of ongoing litigation. If Bill Me Later were to succeed on its defenses to liability against Plaintiffs' individual claim, Settlement Class Members would recover nothing. In addition to Bill Me Later's defenses on the merits, Plaintiffs would have been required to prevail on a contested class certification motion, for which success is by no means guaranteed. *See Schulte v. Fifth Third Bank,* 805 F. Supp.2d 560, 582 (N.D. Ill. 2011). "Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued

13

litigation." *Id.*, at 586 (citation omitted). "If the Court approves the [Settlement], the present lawsuit will come to an end and [Settlement Class Members] will realize both immediate and future benefits as a result." *Id.* Plaintiffs and Settlement Class Members will receive meaningful payments now, instead of years from now—or perhaps never. *See id.* at 582.

In short, in the absence of settlement, it is certain that the expense, duration, and complexity of the protracted litigation that would result would be substantial. Further, evidence and witnesses from across the country would have to be assembled. Given the complexity of the issues and the amount in controversy, the defeated party would likely appeal both the decision on the merits (at summary judgment and/or trial), as well as the decision on class certification. As such, the immediate relief provided to the Class under the Settlement Agreement weighs heavily in favor of its approval compared to the inherent risk and delay of continued litigation, trial, and appeal.

With respect to factor five,[3] Plaintiffs' counsel believe that the proposed Agreement is in the best interest of Settlement Class Members because, upon submission of a valid Claim Form and approval of their claim, Settlement Class Members are each provided an immediate payment instead of having to wait for the litigation and appeals to run their course. Further, due to the defenses that have been raised, and likely will be raised, by Bill Me Later – and the resources that Bill Me Later and its corporate parent have available to defend and litigate this matter through appeal – it is possible that the Settlement Class Members may receive no benefit whatsoever in the absence of this Settlement. As for the final factor, the parties did not engage in any settlement discussions at all prior to the conclusion of an extended period of discovery. The instant Settlement was not finalized until proposed Class Counsel engaged in extensive investigation into the claims and defenses of the Class, engaged in significant discovery efforts, and negotiated the Settlement

---

[3] Presently, there is no opposition to the Settlement and, given the strength of this Settlement, Plaintiffs expect little or no opposition to the Settlement by Settlement Class Members.

14

with the aid of a neutral mediator, Judge Infante.

The requirement that a settlement be fair is designed to protect against collusion among the parties. *Mars Steel Corp. v. Cont'l Ill. Nat'l. Bank & Trust Co. of Chicago*, 834 F. 2d 677, 684 (7th Cir. 1987) (approving settlement upon a finding of no "hanky-panky" in negotiations). There is an initial presumption that a proposed settlement is fair and reasonable when it was the result of arms-length negotiations. *Newberg*, *supra*, § 11.42. The lengthy duration of the litigation; the extensive and sometimes contentious investigation and discovery process; the multiple months of highly contested settlement negotiations; the excellent result for the settlement Class in spite of the significant procedural and substantive hurdles faced by Plaintiffs; and the participation of an experienced mediator throughout the negotiation process are all testament to the non-collusive nature of the proposed Settlement.

Finally, the Court need not rule on a blank slate as to the fairness, reasonableness, and adequacy of the instant Settlement. Similar class action settlements involving robocalls under the TCPA have received final approval in this District and elsewhere. *See, e.g., Desai et al v. ADT Security Services, Inc*., No. 11-cv-1925 (N.D. Ill. 2013) (approving settlement creating a $15 million fund for unauthorized robocalls to 1.4 million class members, resulting in a settlement payment of approximately $50-100 per class member); *Rose et al v. Bank of America Corp*., No. 11-cv-02390 (N.D. Cal) (approving settlement creating a $32 million fund for unauthorized robocalls to 7.6 million class members, resulting in a settlement payment of approximately $20-40 per class member); *Malta et al. v. Fed Home Loan Mortgage*, No. 10-cv-01290 (S.D. Cal. 2013) (approving settlement creating a $17 million fund for unauthorized robocalls to 5.1 million class members, resulting in a settlement payment of approximately $50-100 per class member); *Rojas et al v. Career Education Corp*., No. 10-cv-05260 (N.D. Ill. 2012) (approving settlement creating

a $20 million settlement fund for the transmission of 99,000 text messages entitling each class member to a $200 settlement payment).  Accordingly, the proposed Settlement, which creates a $9.9 million Settlement Fund – which is non-reversionary and will be fully paid out – where each recipient of the allegedly unauthorized calls made by or on behalf of Bill Me Later can submit a claim for up to $500 from the Settlement Fund, subject to *pro rata* reduction, is equally fair, reasonable, and adequate, and warrants Court approval.

### B.  The Proposed Class Notice is Adequate

Under Rule 23(c)(2), class members are entitled to notice of any proposed settlement and an opportunity to object or opt out before it is finally approved by the Court.  *Manual for Complex Litig.* § 21.31 (4th ed. 2004).  The advisory committee note to Rule 23 states that the "mandatory notice pursuant to subdivision (c)(2) . . . is designed to fulfill requirements of due process to which the class action procedure is of course subject." FED. R. CIV. P. 23(d)(2) advisory committee's note.  When certifying a settlement class under Rule 23(b)(3), the substance of the notice to the settlement class must describe in plain language the nature of the action, the definition of the class to be certified, and the class claims and defenses at issue.  Furthermore, the notice must explain that settlement class members may enter an appearance through counsel if so desired, that class members may request to be excluded from the settlement class, and that the effect of a class judgment shall be binding on all class members.  *See* Fed. R. Civ. P. 23 (c)(2)(B).  In addition to the substance of the notice, the manner of dissemination must also satisfy Rule 23 and Due Process, which requires that the Class receive "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).  The requirement of "personal notice" does not mean that each individual who is potentially a member of the class must receive actual notice of

the class action. *Medina v. Mfrs. & Traders Trust Co.*, No. 04 C 2175, 2004 WL 3119019, at *3 (N.D. Ill. Dec. 14, 2004) (Rule 23(b)(3) class) ("This [best notice practicable] standard can be satisfied even though a particular class member never receives actual notice.")

In cases where the names and addresses of class members are not readily ascertainable, notice by publication alone is sufficient. "When individual notice is infeasible, notice by publication in a newspaper of national circulation . . . is an acceptable substitute." *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 786 (7th Cir. 2004) (Rule 23(b)(3) class) ("[Individual] notice is preferable to newspaper or other collective notice but it was impossible here because [Defendant] has no record of those customers whose financial information it gave the telemarketers but who did not buy anything from the latter.")

The proposed notices in this case satisfy both the substantive and manner of distribution requirements of Rule 23 and Due Process. As set forth in detail in § II(D), *supra*, the Settlement Agreement contemplates a multi-part notice plan designed to reach as many potential Settlement Class Members as possible. First, direct notice of the Settlement will be sent via U.S. Mail to those Direct Notice Consumers whose addresses are obtained through reverse lookup searches of the cell phone numbers that received the robocalls at issue. Direct notice will be mailed to all potential Settlement Class Members whose addresses will be accurately determined through records available to Class Counsel through discovery, as well as through the reverse lookup performed by the Claims Administrator.

In addition, because accurate contact information for many Settlement Class Members will not be readily identified through records produced in discovery or through means available to the Class Administrator, the Publication Notice Consumers will receive notice in the form of publication notice, which will be published as soon as is reasonably possible after the date of

17

preliminary approval.  As explained in § II(D), *supra*, and as detailed in Ex. E to the Settlement Agreement, publication notice will be thorough, and will proceed in print publications, through internet banner advertising, on Facebook, and through mobile advertising networks that will make the publication notice form available within applications and browsers on mobile devices. Additionally, the Claims Administrator will establish a website containing the relevant court documents and the notice form, and which provides for the online submission of claims, as well as online exclusions.  The Claims Administrator will support the effectiveness of the Settlement website with targeted on-line and mobile advertising, all of which will link directly to the class notice.  The proposed notices and Claim Form are attached as Exhibits C and D to the Settlement Agreement and should be approved by the Court.  As such, the proposed methods of notice comport with Rule 23 and the requirements of Due Process.

### C.  The Court Should Grant Class Certification for Settlement Purposes

For settlement purposes only, the parties have agreed that the Court may make preliminary findings and enter an order granting provisional certification of the Settlement Class and appoint Plaintiffs and their counsel to represent the class.  "The validity of use of a temporary settlement class is not usually questioned."  *Newberg*, *supra*, § 11:22. The *Manual for Complex Litigation* (Fourth) § 21.612, explains the benefits of settlement classes:

> Settlement classes—cases certified as class actions solely for settlement— can provide significant benefits to class members and enable the defendants to achieve final resolution of multiple suits. Settlement classes also permit defendants to settle while preserving the right to contest the propriety and scope of the class allegations if the settlement is not approved and, in Rule 23(b)(3) actions, to withdraw from the settlement if too many class members opt out. An early settlement produces certainty for the plaintiffs and defendants and greatly reduces litigation expenses.

Prior to granting preliminary approval of a class action settlement, the Court should determine that the proposed settlement class is a proper class for settlement purposes.  *Manual for Complex Litigation* (Fourth) § 21.632; *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  A class

may be certified under Federal Rule of Civil Procedure 23(a) only if "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006); *Hinman v. M and M Rental Cen., Inc.* 545 F. Supp. 2d 802, 804 (N.D. Ill. 2008). In addition, a plaintiff must demonstrate one of the three provisions of Rule 23(b). *Amchem*, 521 U.S. at 614; *Hinman*, 545 F. Supp. 2d at 804-05. Here, Plaintiffs seek certification of the Settlement Class under Rule 23(b)(3), which requires that common questions of law or fact predominate and that maintaining the suit as a class action is superior to other methods of adjudication. *See Amchem*, 521 U.S. at 615-16; *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 256 F.R.D. 589, 594 (N.D. Ill. 2009). In this case, the Settlement Class meets all of the applicable certification requirements. For settlement purposes only, the Settlement Class is submitted for certification under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. The Class is defined in the Settlement Agreement and also appears in § II(A), *supra*.

### 1. The Rule 23(a) Factors are Met

#### a. *The Class is sufficiently numerous and joinder is impracticable*.

Numerosity is met where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Although there is no bright-line test for numerosity, a class of forty is generally sufficient to satisfy Rule 23(a)." *Hinman*, 545 F. Supp. 2d at 805-06; *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002) (a class of forty or more is generally sufficient to establish numerosity). Here the proposed Class encompasses consumers nationwide and may number in the tens of thousands. Based on estimates provided by the claims

19

administrator, it is likely that direct notice will be mailed to approximately 150,000 individuals. In addition, Settlement Class Members for whom no contact information is available will receive notice through nationwide publication notice. This class is obviously sufficiently numerous. The number of individuals in the Settlement Class, coupled with the fact that it is a national class that is geographically disbursed throughout the country, renders joinder impracticable. *See, e.g., Randolph v. Crown Asset Mgmt.*, *LLC*, 254 F.R.D. 513, 517 (N.D. Ill. 2008) (finding that joinder of hundreds of lawsuits is impractical).

b. *The Class shares common issues of law and fact.*

Commonality, the second requirement for class certification, necessitates that "questions of law or fact common to the class" exist. Fed. R. Civ. P. 23(a)(2). This element is met where there is a "common nucleus of operative fact," even if only one common question exists. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Commonality is often present where defendants have "engaged in standardized conduct toward members of the proposed class." *Keele v. Wexler,* 149 F.3d 589, 594 (7th Cir. 1998); *Hinman*, 545 F. Supp. 2d at 806. The Seventh Circuit has found that class certification of TCPA claims is "normal" because the main questions in the case are "common to all class members." *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cit. 2013).

As alleged in this case, all members of the proposed Class share a common statutory TCPA claim that arose out of the standardized conduct of the Defendant: the making of telephone calls to the Settlement Class Members using an artificial or prerecorded voice and/or with an automatic telephone dialing system without having valid consent from the called parties to receive such calls. Proving a TCPA violation would require the resolution of whether the equipment used to send the allegedly offending messages was an "automatic telephone dialing system" ("ATDS") and other common factual inquiries. *See* 47 U.S.C. § 227(b)(1)(A). In addition, as the claims of the Class

20

are based on the same legal theory – that the robocalls made by Defendant violated the TCPA – another common question is whether Settlement Class Members are entitled to statutory damages under the TCPA as a result of this conduct. Thus, commonality is satisfied.

c. *The Plaintiffs' claims are typical of the Settlement Class.*

The typicality requirement of Rule 23(a)(3) focuses on whether the class representative's claims "have the same essential characteristics as the claims of the class at large." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596-97 (7th Cir. 1993). The claims of the named plaintiff must stem from the same course of conduct that gave rise to the claims of the class, and must rest on the same legal theory. *Rosario*, 963 F.2d at 1018; *Hinman*, 545 F. Supp. 2d at 806. Typicality does not require claims to be "identical," and is generally "liberally construed." *Gasper v. Linvatec Corp.*, 167 F.R.D. 51, 57 (N.D. Ill. 1996). Courts have found that typicality is met where the defendant's action of sending unsolicited advertisements resulted in TCPA claims of the named plaintiff and members of the class. *See, e.g., CE Design v. Beaty Const., Inc.,* 07 C 3340, 2009 WL 192481, *5 (N.D. Ill. Jan. 26, 2009).

Plaintiffs and the proposed Settlement Class alleged that Defendant and its agent made robocalls to them without having prior express consent, a course of conduct common to all Class Members. As a result of this alleged conduct, Plaintiffs and the proposed Settlement Class are entitled to identical statutory damages under the TCPA. Accordingly, Plaintiffs Misty and Shaun Murray, by pursuing their own claims, will advance the interests of the proposed Settlement Class in satisfaction of Rule 23(a)(3).

d. *The Plaintiffs and their counsel are adequate representatives.*

The final Rule 23(a) prerequisite requires that the representative parties have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This

inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625. To satisfy the adequacy requirement, Misty Murray and Shaun Murray, as class representatives, must establish that: (1) their claims are not antagonistic or in conflict with those of the proposed class, (2) they have sufficient interest in the outcome of the case, and (3) experienced, competent counsel represent them. *Hinman*, 545 F. Supp. 2d at 807. It is persuasive evidence of the adequacy of proposed class counsel where they have been found adequate to serve as class counsel in other cases. *Gomez v. Ill. State Bd. of Educ.,* 117 F.R.D. 394, 401 (N.D. Ill. 1987).

In the case at hand, Plaintiffs' interests are entirely representative of and consistent with the interests of the proposed Settlement Class—all have allegedly received unauthorized calls from the Defendant or CSG made using an ATDS or made using an artificial or prerecorded voice, and their pursuit of this matter has demonstrated that they have been and will remain zealous advocates for the Settlement Class. *See CE Design*, 2009 WL 192481, *5 (finding typicality where defendant's practice of sending unsolicited advertisements to the named plaintiff and the proposed class resulted in the claims of the potential plaintiffs being "based upon the same legal theory, *i.e.* violation of the TCPA.") Thus, Plaintiffs have the same interests as the Settlement Class, with the primary interest of obtaining relief from Defendant for making the unauthorized calls that allegedly violated the TCPA.

Similarly, proposed Class Counsel have regularly engaged in major complex litigation, and have extensive experience in consumer class action lawsuits involving cellular phone technology and, in particular, the TCPA. (*See* Declaration of Evan M. Meyers, attached as Exhibit 2, and Declaration of Michael J. McMorrow, attached as Exhibit 3.) Plaintiffs' counsel and their firms have been appointed as class counsel in several complex consumer class actions, including similar

TCPA cases. *See, e.g., Weinstein, et al. v. The Timberland Company,* No. 06-cv-0454 (N.D. Ill.) (settlement creating $7 million settlement fund for the transmission of 40,000 text message calls where each recipient of an unauthorized text call was entitled to receive a $150 settlement payment); *Satterfield v. Simon & Schuster*, No. 06-cv-2893 CW (N.D. Cal.) (settlement creating $10 million settlement fund for the transmission of 59,000 text message calls where each recipient of an unauthorized text call was entitled to receive a $175 settlement payment); *Lozano v. Twentieth Century Fox Film Corp, et al.*, No. 09-6344 (N.D. Ill.) (settlement creating $16 million settlement fund for the transmission of 99,000 text message calls where each recipient of an unauthorized text call was entitled to receive a $200 settlement payment); *Kramer v. Autobytel et al* 4:10-cv-02722 (N.D. Cal.) (settlement creating $12 million settlement fund for the transmission of over 40 million text message calls where each recipient of an unauthorized text call was entitled to receive a $100 settlement payment); *Rojas v. Career Education Corp.*, 10-cv-05260 (N.D. Ill.) (settlement creating $20 million settlement fund for the transmission of 98,000 text message calls where each recipient of an unauthorized text call was entitled to receive a $200 settlement payment); *In re Jiffy Lube Int'l, Inc. Text Spam Litigation*, No. 3:11-MD-02261-JM-JMA (S.D. Cal.) (settlement creating cash benefit of $47 million for the transmission of over 1 million text message calls); *Robles v. Lucky Brand Jeans* 3:10-cv-04846 (N.D. Cal.) (settlement creating $10 million settlement fund for the transmission of 240,000 text message calls where each recipient of an unauthorized text call was entitled to receive a $100 settlement payment). Plaintiffs' counsel have also served as class counsel in numerous other nationwide consumer class action settlements not involving the TCPA. *See, e.g., In re Citibank HELOC Reduction Litigation*, 09-cv-0350-MMC (N.D. Cal); *Schulken v. Washington Mutual Bank, et al.*, 09-cv-02708-LHK (N.D. Cal.). Accordingly, Plaintiffs' counsel will adequately represent the instant Settlement Class.

2.   The Rule 23(b)(3) Factors are Met

Once Rule 23(a) is satisfied, a plaintiff must also demonstrate one of the three requirements of Rule 23(b).  *Payton v. County of Kane,* 308 F.3d 673, 680 (7th Cir. 2002).  Rule 23(b)(3) provides that a class action can be maintained where: (1) the questions of law and fact common to members of the class predominate over any questions affecting only individuals, and (2) the class action mechanism is superior to the other available methods for the fair and efficient adjudication of plaintiffs' claims.  Fed. R. Civ. P 23(b)(3).  The Court must consider these requirements in the context of: (1) the interest of the individual class members in controlling the litigation; (2) the extent and nature of any pending litigation involving the same matters; (3) the desirability of concentrating the litigation of all the members' claims in the forum in which the class action was commenced; and (4) the management difficulties that may be encountered in a class action.  *Rahim v. Sheahan*, No. 99 C 0395, 2001 WL 1263493, at *16 (N.D. Ill. Oct. 19, 2001).

        a.   *Common questions of law or fact predominate over questions affecting only individuals.*

The focus of the predominance requirement is whether the proposed class is sufficiently cohesive to warrant adjudication by representation.  *Amchem*, 521 U.S. at 623.  To satisfy Rule 23(b)(3), "each class member must share common questions of law or fact with the rest of the class, therefore making class-wide adjudication of the common questions efficient compared to the repetitive individual litigation of the same question."  *Lemon v. Int'l Union of Operating Eng's.*, 216 F.3d 577, 581 (7th Cir. 2000).  While the common issues must predominate, they need not be exclusive.  *Radamanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424, 435 (N.D. Ill. 2003).  Common legal and factual issues have been found to predominate where the class members' claims arose under the TCPA, and where the claims focused on the defendant's

24

advertising practices. *CE Design.,* 2009 WL 192481, at *8-9.

In this case, the central factual and legal issues are whether the Defendant made calls to the Settlement Class Members without their consent, whether the calls made to the cellular or residential phones of Settlement Class Members were made using an artificial or prerecorded voice, whether the system used to make those calls to the cellular phones of Settlement Class members was an ATDS, and whether that conduct violated the TCPA. In addition, Defendant's calls were allegedly made to the Settlement Class Members in precisely the same manner and may entitle the class to identical statutory damages under the TCPA. Predominance is satisfied "when there exists generalized evidence that proves or disproves an element on a simultaneous, class-wide basis … [since s]uch proof obviates the need to examine each class member's individual position." *Golon v. Ohio Savs. Bank*, 98 C 7430, 1999 WL 965593, at *4 (N.D. Ill. Oct. 15, 1999). Here, the common questions resulting from Defendant's alleged conduct predominate over any individual issues that may exist.

### b. *A class action is a superior method of adjudication.*

The instant class action is superior to any other method available to fairly and efficiently adjudicate the Class Members' claims. To determine whether a class action is a superior method, courts often look to whether it is an "efficient use of both judicial and party resources." *Hinman,* 545 F. Supp. 2d at 807. The superiority requirement is satisfied where class members have uniform claims governed by the same law. *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002). Moreover, the class action mechanism is superior to individual actions in consumer cases with thousands of members as:

> Rule 23(b)(3) was designed for situations such as this, in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate. Reliance on federal law avoids the complications that can plague multi-state classes under state law, and society may gain from the deterrent effect of

25

financial awards.

*Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006). Class actions brought

pursuant to the TCPA are routinely certified in the Seventh Circuit. *See Ira Holtzman,*, 728 F.3d

at 684 (stating that "[c]lass certification is normal in litigation under §227, because the main

questions … are common to all recipients.")

In determining the best available method for resolving a dispute, the Court may consider

the "improbability that large numbers of class members would possess the initiative to litigate

individually." *Haynes v. Logan Furniture*, 503 F.2d 1161, 1164-65 (7th Cir. 1974). In fact, in this

case many Settlement Class Members may be unaware of their claims or may not understand their

legal rights. *See Henry v. Cash Today, Inc.*, 199 F.R.D. 566, 574 (S.D. Tex. 2000). Many others

may not have access to competent counsel willing to invest the time and resources necessary to

prosecute the claims.

This case is particularly suited for class treatment because the claims of the Plaintiffs and

the proposed Settlement Class involve identical alleged violations of a federal statute for the phone

calls made by or on behalf of Defendant to Class Members who had not consented to receive the

calls. Absent a class action, most members of the Settlement Class would find the cost of litigating

their claims—each of which, in the absence of a finding of willfulness, is statutorily limited to

$500 under the TCPA—to be prohibitive. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809

(1985) (a class action is the superior method of proceeding when it allows the plaintiffs to pool

claims that would be uneconomical to litigate individually). It is thus unlikely that individuals

would invest the time and expense necessary to seek relief through individual litigation.

Moreover, because the action will now settle, the Court need not be concerned with issues

of manageability relating to trial. When "confronted with a request for settlement only class

26

certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620; *see also Am. Int'l Grp, Inc.*, 2012 WL 651727, at *4 (*quoting Amchem*, 521 U.S. at 622 ("settlement is a factor in the calculus" in determining whether certification is proper)). A class action is the superior method of resolving large scale claims if it will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615. Accordingly, a class action is the superior method of adjudicating this action and the proposed Class should be certified.

### D. Plaintiffs' Counsel Should Be Appointed As Class Counsel

Under Rule 23, "a court that certifies a class must appoint class counsel . . .[who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court must consider counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i-iv).

As described in detail above, proposed Class Counsel have diligently investigated Plaintiffs' TCPA claim and the feasibility of class certification, and have devoted and will continue to devote substantial time and resources to this litigation. As discussed above, proposed Class Counsel have experience with similar class action litigation and have been appointed class counsel in analogous consumer class actions. (*See* § III(C)(1)(d), *supra*.) Proposed Class Counsel also have an in-depth knowledge of the law, having been involved in other TCPA litigation.

Accordingly, the Court should appoint Plaintiffs' counsel to serve as Class Counsel for the proposed Class pursuant to Rule 23(g).

## IV.     CONCLUSION

For the foregoing reasons, Plaintiffs Misty Murray and Shaun Murray respectfully request that the Court: (1) certify the Settlement Class; (2) appoint Misty Murray and Shaun Murray as the Settlement Class Representatives; (3) appoint Plaintiffs' counsel as Class Counsel; (4) preliminarily approve the proposed Settlement Agreement; (5) approve the form and methods of the proposed notice; (6) and grant such further relief as the Court deems reasonable and just. A proposed preliminary schedule leading to final approval is contained in the Proposed Order separately submitted to the Court, and is attached as Exhibit A to the Settlement Agreement.

Dated: July 23, 2014                                    Respectfully submitted,

                                                        By: /s/  Michael J. McMorrow_____
                                                        One of Plaintiffs' Attorneys

Myles McGuire
mmcguire@mgpc.com
Evan M. Meyers
emeyers@mcgpc.com
McGUIRE LAW, P.C.
161 N. Clark Street, 47th Floor
Chicago, IL 60601
Tel: (312) 216-5179
Fax: 312-275-7895

Michael J. McMorrow
mike@mjmcmorrow.com
MCMORROW LAW, P.C.
One North LaSalle St., 44th Floor
Chicago, IL 60604
Tel:  (312) 265-0708

*Counsel for Misty Murray and Shaun Murray and*
*proposed Class Counsel*