**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| MISTY MURRAY AND SHAUN MURRAY, | ) | |
| individually and on behalf of a class of | ) | |
| similarly situated individuals, | ) | |
| | ) | |
| *Plaintiffs*, | ) | No.   12-cv-04789 |
| | ) | |
| v. | ) | |
| | ) | Hon. Sara L. Ellis |
| BILL ME LATER, INC., a Delaware corporation, | ) | |
| | ) | |
| *Defendant*. | ) | |

**PLAINTIFFS' MOTION FOR APPROVAL OF**
**ATTORNEYS' FEES, EXPENSES & INCENTIVE AWARDS**

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................... i

TABLE OF AUTHORITIES ...................................................................................... ii

I.      INTRODUCTION ................................................................................................1

II.     THE FACTS AND THE TCPA ..........................................................................2

        A.  The TCPA. ..................................................................................................3

        B.  Bill Me Later's Phone Calls to Consumers. ..............................................3

III.    THE LITIGATION & THE WORK PERFORMED .........................................4

IV.     THE SETTLEMENT ...........................................................................................6

V.      THE COURT SHOULD APPROVE THE AGREED-UPON ATTORNEYS'
        FEES AND EXPENSES BECAUSE THEY ARE REASONABLE. ..........................7

        A.  The Requested Fees Represent 33.33% of the Common Benefit
            Provided to the Class—a Percentage Consistent with the Range
            that has Been Found Reasonable by the Courts. .......................................11

        B.  The Requested Fees are Equally Appropriate Under the Lodestar Method. ...............12

VI.     THE COURT SHOULD APPROVE THE AGREED-UPON INCENTIVE
        AWARDS. ............................................................................................................16

VII.    CONCLUSION ..................................................................................................18

Page(s)

**Cases**

*Aspacher v. Rosenthal Collins Grp.*,
No. 00 C 7520, 2001 U.S. Dist. LEXIS 19464 (N.D. Ill. Nov. 6, 2001) .................................14

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)..........................................................................................................7

*In re Continental Ill. Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) .......................................................................................12, 14

*Cook v. Niedert*,
142 F.3d 1004 (7th Cir. 1998) ...............................................................................12, 16, 17

*Denius v. Dunlap*,
330 F.3d 919 (7th Cir. 2003) ...........................................................................................12

*Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*,
137 F.R.D. 240 (S.D. Ohio 1991) .....................................................................................17

*Florin v. Nationsbank of Ga., N.A. ("Florin I")*,
34 F.3d 560 (7th Cir. 1994) .....................................................................................8, 9, 12

*Gaskill v. Gordon*,
160 F.3d 361 (7th Cir. 1998) ...........................................................................................11

*Gastineau v. Wright*,
592 F.3d 747 (7th Cir. 2010) ...........................................................................................12

*Halverson v. Convenient Food Mart, Inc.*,
458 F.2d 927 (7th Cir. 1972) .............................................................................................8

*Harman v. Lyphomed, Inc.*,
945 F.2d 969 (7th Cir. 1991) ...........................................................................................12

*Hensley v. Eckerhar*t,
461 U.S. 424 (1983)....................................................................................................7, 12

*Jeffboat, LLC v. Director, Office of Workers' Comp. Programs*,
553 F.3d 487 (7th Cir. 2009) ...........................................................................................12

*Kirchoff v. Flynn*,
786 F.2d 320 (7th Cir. 1986) .............................................................................................9

*In re Linerboard Antitrust Litig.*,
    No. 98-5055, 2004 WL 1221350 (E.D. Pa. Jun. 2, 2004)......................................................13

*Lucken Family Ltd. P'ship, LLLP, v. Ultra Res., Inc.*,
    09-cv-01543-REB-KMT, 2010 U.S. Dist. LEXIS 144366 (D. Colo. Dec. 22,
    2010) ...........................................................................................................................17

*McKinnie v. JP Morgan Chase Bank, N.A.*,
    678 F. Supp. 2d 806 (E.D. Wis. 2009).....................................................................................11

*Meyenburg v. Exxon Mobil Corp.*,
    No. 05-cv-15 DGW, 2006 WL 2191422 (S.D. Ill. July 31, 2006) .........................................11

*Miltland Raleigh-Durham v. Myers*,
    840 F. Supp. 235 (S.D.N.Y. 1993)............................................................................................15

*Mims v. Arrow Fin. Servs. LLC*,
    132 S. Ct. 740 (2012).................................................................................................................3

*Missouri v. Jenkins*,
    491 U.S. 274 (1989)...................................................................................................................9

*Montgomery v. Aetna Plywood, Inc.*,
    231 F.3d 399 (7th Cir. 2000) .....................................................................................................8

*People Who Care v. Rockford Bd. of Educ.*,
    90 F.3d 1307 (7th Cir. 1996) ...................................................................................................14

*Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*,
    818 F.2d 278 (2d Cir. 1987)......................................................................................................15

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
    97 C 7694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) ..........................................................9

*Satterfield v. Simon & Schuster, Inc.*,
    569 F.3d 946 (9th Cir. 2009) .....................................................................................................3

*Schulte v. Fifth Third Bank*,
    805 F.Supp. 2d 560 (N.D. Ill. 2011) ........................................................................................16

*Skelton v. Gen. Motors Corp.*,
    860 F.2d 250 (7th Cir. 1988) ........................................................................................8, 10, 12

*Spicer v. Chicago Bd. Options Exch., Inc.*,
    844 F. Supp. 1226 (N.D. Ill. 1993) ..........................................................................................15

*Sutton v. Bernard*,
    504 F.3d 688 (7th Cir. 2007) .................................................................................................8, 9

*In re Synthroid Mktg. Litig.*,
　264 F.3d 712 (7th Cir. 2001) .........................................................................8, 9, 16

*Taubenfeld v. AON Corp.*,
　415 F.3d 597 (7th Cir. 2005) ........................................................................8

*Teamsters Local Union No. 604 v. Inter-Rail Transport, Inc.*,
　02-cv-1109 DRH, 2004 WL 768658 (S.D. Ill. Mar. 19, 2004) ..............................11

*In re Trans Union Corp. Privacy Litig.*,
　MDL 1350, No. 00 C 4279, 2009 WL 4799954 (N.D. Ill. Dec. 9, 2009) *order*
　*modified and remanded*, 629 F.3d 741 (7th Cir. 2011) ........................................8, 9

*Will v. Gen. Dynamics Corp.*,
　CIV. 06-698-GPM, 2010 WL 4818174 (S.D. Ill. Nov. 22, 2010).........................11

*Williams v. Gen. Elec. Capital Auto Lease*,
　94 C 7410, 1995 WL 765266 (N.D. Ill. 1995).........................................................9

## Statutes

47 U.S.C. §§ 227(b)(1)(A)(iii), 227(b)(1)(B) ...............................................................3

47 U.S.C. § 227(b)(3)(A-B).........................................................................................3

Federal Rule of Civil Procedure ...............................................................................1, 7

## Other Authorities

Richard Posner, *Economic Analysis of Law* § 21.9, at 534-35 (3d ed. 1986)..................9

William B. Rubenstein, *Newberg on Class Actions* § 14:6 (4th ed.)............................10

# I.    INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 23(e) and (h), and this Court's Order of July 24, 2014 (Dkt. 71), the Class Representatives and Class Counsel request that the Court approve Class Counsel's Motion for Approval of Attorneys' Fees, Expenses, and Incentive Awards in connection with their Class Action Settlement Agreement[1] with Bill Me Later, Inc. ("Bill Me Later" or "Defendant"), and award Class Counsel attorneys' fees in the amount of one-third of the Settlement Fund, plus expenses, as well as Incentive Awards to the Class Representatives. Defendant does not object to the relief sought in this Motion.

The Settlement is an exceptional result for Settlement Class Members and establishes a Settlement Fund of $9,900,000.00, which will provide each Settlement Class Member cash relief up to the full statutory amount of $500.00.  Notice of the Settlement through Publication Notice and Direct Notice was completed a month ago, on September 10, 2014.  To date, no Settlement Class Member has objected to the proposed Settlement, to Class Counsel's request for fees and expenses, or to the incentive awards to the Class Representatives, even though over 27,000 Settlement Class Members have already filed claims in this case.  Likewise, only 15 Settlement Class Members have opted out of the Settlement as of today.[2]

Class Counsel's fee request constitutes 33.33% of the total common financial benefit to the Settlement Class, exclusive of any consideration of the non-monetary relief already achieved and

---

[1] Unless otherwise indicated, capitalized terms have the same meaning as those terms are used in the Settlement Agreement.

[2] The deadline for the filing of objections and for opting out of the Settlement is October 23, 2014.

realized by the Settlement Class and the public.[3]  As set forth below, Class Counsel's requested fee is consistent with the Seventh Circuit's benchmark of 33-40% for awards from common funds in class actions, and is also reasonable when "cross-checked" against the time and costs Class Counsel committed to resolving this litigation for the benefit of the Settlement Class Members.

Both Class Counsel and the Class Representatives devoted tremendous time and effort to the prosecution of the Settlement Class Members' claims, and their efforts paid off.  The requested attorneys' fees and incentive awards are consistent with the fees approved in this Circuit and are amply justified in light of the investment, risks, and excellent results obtained for the Settlement Class.  As a result, the Class Representatives and Class Counsel respectfully request that the Court approve the agreed-upon attorneys' fees of $3,300,000.00, expenses of the litigation of $78,728.06, and the agreed-upon incentive awards of $30,000 each for the Class Representatives.

## II.     THE FACTS AND THE TCPA

Although this motion focuses on why the Court should approve the attorneys' fees, a brief summary of the underlying facts and law involved in this litigation is helpful to provide context to the reasonableness of the fees Class Counsel are seeking.

---

[3] In addition to the financial benefit to the Settlement Class, and although not a formal term of the Settlement, this suit has also resulted in significant non-monetary relief to the Settlement Class and the public.  Shortly after the filing of the Complaint in this matter, Bill Me Later revised its internal policies relating to invalidation of phone numbers.  Whereas Bill Me Later previously followed what is known as a "three strikes" policy – *i.e.*, it would often continue placing automated calls to a phone number until the third time the called party indicated it was calling the wrong number – it has changed that policy to a "one-strike" policy – meaning that it discontinues placing automated calls, or calls featuring a prerecorded or artificial voice, to a telephone number the first time that a called party indicates that Bill Me Later has called the wrong number.  Bill Me Later's internal documents produced in discovery demonstrate that the reasons for the change, which has already resulted and will continue to result in fewer unauthorized automated calls to non-Bill Me Later customers, were the filing of this lawsuit and the prevention of such suits in the future.

*A. The TCPA*

Congress passed the TCPA in response to "voluminous consumer complaints," and to prohibit "intrusive nuisance calls" it determined were invasive of privacy. *Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740, 744 (2012); *see also Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 954 (9th Cir. 2009) (finding that in enacting the TCPA, Congress sought to "protect the privacy interests of telephone subscribers.") The TCPA exists as a means to combat the growing threat to privacy being caused by automated telemarketing practices, and makes it unlawful to make calls without the prior express consent of the called party using an "automatic telephone dialing system" or an "artificial or prerecorded voice." *See* 47 U.S.C. §§ 227(b)(1)(A)(iii), 227(b)(1)(B); *Mims*, 132 S. Ct. at 744. The TCPA sets statutory damages in the amount of $500 per violation, and provides for injunctive relief prohibiting the further transmission of such messages. *See* 47 U.S.C. § 227(b)(3)(A-B).

*B. Bill Me Later's Phone Calls to Consumers*

Bill Me Later is a purveyor of consumer credit for merchandise purchased online and over the phone. Bill Me Later allows consumers who want to make purchases online to make such purchases without a credit or debit card, instead financing their purchases over several months. As part of its application practice, Bill Me Later obtains phone numbers from its customers, the predominant purpose of which is to call those customers should their account go into arrears. As alleged in this suit, Bill Me Later repeatedly called consumers who were not its customers and continued calling many of those non-customers long after they informed Bill Me Later of that fact.

The Class Representatives, Misty Murray any Shaun Murray, claimed that, beginning on March 17, 2012, Bill Me Later started calling them, attempting to collect a debt from an individual named Faiza Tahir, a Bill Me Later customer. The Class Representatives tried repeatedly to get

the calls to stop, but despite their requests, the calls continued unimpeded. Between March 17 and May 16, 2012, the Class Representatives allege that Bill Me Later called them 126 times, despite the fact that neither Misty Murray nor Shaun Murray have ever been its customers.

## III. THE LITIGATION & THE WORK PERFORMED

On June 15, 2012, the Class Representatives filed a Class Action Complaint against Bill Me Later in this Court. Contemporaneously with the filing of the Complaint, Plaintiffs filed their Motion for Class Certification. The Class Representatives alleged that the autodialing technology used to call them constituted an "automatic telephone dialing system" and that the calls were made using an artificial or prerecorded voice, and that they never provided Bill Me Later with their express consent to receive such calls.

The Parties then engaged in extensive discovery, including numerous depositions, document requests, interrogatories, and the production of thousands of documents by Bill Me Later and its agents, including third-party CSG International, Inc. ("CSG"). Plaintiffs took the depositions of three separate Bill Me Later employees in July 2013, and Bill Me Later took the depositions of both Plaintiffs later in the summer of 2013. In addition, Plaintiffs subpoenaed and reviewed phone records of several years' of automated phone calls, covering millions of calls, from CSG, Bill Me Later's agent for the placing of automated debt collection calls. Plaintiffs also noticed the 30(b)(6) deposition of CSG but agreed to withdraw the Subpoena pending the outcome of the mediation that resulted in the instant Agreement. Class discovery was initially scheduled to be completed in June 2013, but, pursuant to agreement of the Parties, the Court permitted discovery to continue through October 10, 2013.

During discovery, Plaintiffs learned that Bill Me Later "invalidated" certain numbers that it believed were not accurate or that should not be sent additional automated collections calls. Bill

Me Later produced a list of all such invalidated numbers, which included approximately one million numbers from June 2008 through 2012. This list identified the telephone number that was invalidated, the date of invalidation, and whether the number was subsequently re-validated. In response to a Subpoena in this case, Bill Me Later's agent CSG produced call detail records for all calls made by CSG on Bill Me Later's behalf between June 15, 2008 and December 31, 2012. These call detail records identified millions of automated calls, including the telephone number called, the date and time of the call, the call result, and a call result "code" assigned. Some of those codes are explained in a "call flow and scripting" guideline produced in this case and explained by CSG during the discovery process.

During CSG's automated calls, the recipient of the call can indicate that the Bill Me Later customer does not live at that address – i.e., that the call is being made to a wrong number. If the call recipient indicates a wrong number and then hangs up the call, CSG's system will record a particular code to indicate that the wrong number was called. An analysis of the call detail records produced in this case for all Bill Me Later calls made from June 2008 through 2012 revealed the unique phone numbers where the "wrong number" code was entered through CSG's system. Plaintiffs planned to move for class certification of a narrow class consisting of only those consumers whose phone numbers appeared on both Bill Me Later's invalidated number list and also on CSG's records as indicating that a "wrong number" code had been entered by the call recipient. Bill Me Later contended that Plaintiff's proposed class would not be certified for several reasons, including its arguments that it invalidated phone numbers for a number of reasons, not limited to the phone numbers being incorrect, and that call recipients falsely indicated wrong numbers on CSG's automated system.

As the deadline to complete class discovery approached, and with Plaintiffs' class certification motion forthcoming, the Parties began to explore settlement. At the close of class certification discovery, with discovery disputes still lingering both among the Parties and third-parties, the Parties agreed to mediate to determine if a settlement could be reached in advance of the uncertainties and high risks of the class certification decision. On January 28, 2014, counsel for Plaintiffs met with both in-house and outside counsel for Defendant and its corporate parent eBay, Inc. in two full-day mediation sessions at JAMS in San Francisco with the Hon. Edward A. Infante (ret.), a former Chief Magistrate Judge of the United States District Court for the Northern District of California with expertise in TCPA class settlements. The Parties were unable to reach an agreement at the mediation. However, upon recommendation of Judge Infante, the Parties agreed to meet again for a second full-day mediation session, and did so in San Francisco on March 13, 2014. At the second mediation session, the Parties reached an agreement in principle to resolve the case. In the interim between these formal sessions, and in the months that followed, counsel for Plaintiffs and for Defendant, together with assistance and guidance from Judge Infante, successfully resolved all elements of the settlement. Eventually, these extended discussions culminated in the Settlement Agreement that this Court approved on July 24, 2014.

## IV. THE SETTLEMENT

The fruit of Class Counsel's labor is a Settlement that is of tremendous benefit to the Settlement Class Members, along with voluntary changes to Bill Me Later's practices that significantly reduce further intrusions on the privacy of consumers and the public generally. The Settlement established a $9,900,000.00 cash Settlement Fund. (Settlement Agreement, Dkt. 69-1, § 1.41.) Each Settlement Class Member who submits a valid Claim Form will be entitled to an

equal share of the Settlement Fund, up to the full $500 statutory amount available under the TCPA, after payments are first made for notice and administration costs, Court-approved attorneys' fees and expenses, and Court-approved incentive payments to Plaintiffs. (*Id*. § 3.2.)

The total payment to each Settlement Class Member will depend on the number of valid Claim Forms submitted. Direct Notice was provided by First-Class Mail to approximately 285,000 consumers, and notice was provided by email to an additional approximately 27,000 consumers. (*See* Declaration of Evan M. Meyers ("Meyers Decl."), filed herewith, ¶ 10). As of the date of this filing, approximately 27,555 Claim Forms have been received by the Settlement Administrator (*Id*.), which makes it highly likely that the <u>entire</u> Settlement Fund, net of attorneys' fees, administrative expenses and incentive awards, will be distributed to the Settlement Class Members directly.

## V.    THE COURT SHOULD APPROVE THE AGREED-UPON ATTORNEYS' FEES AND EXPENSES BECAUSE THEY ARE REASONABLE

Pursuant to the Settlement, Class Counsel is seeking attorneys' fees in the amount of $3,300,000.00. (Dkt. 69-1, § 7.1.). This amounts to 33.33% of the total cash benefit of the Settlement Fund. Federal Rule of Civil Procedure 23(h) permits the award of reasonable fees in a class action if authorized by law or the agreement of the parties. Fed. R. Civ. P. 23(h). Courts strongly encourage negotiated fee awards in class action settlements. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorneys' fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of the fee.") Here, the Court should approve the agreed-upon fee of $3,300,000.00, which is supported both by the facts of this case and the relevant factors identified by the Seventh Circuit in settlements of this type.

It is well-settled that attorneys who, by their efforts, create a common fund for the benefit of a class are entitled to reasonable compensation for their services. *Boeing Co. v. Van Gemert*,

444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *Florin v. Nationsbank of Ga., N.A. ("Florin I")*, 34 F.3d 560, 563 (7th Cir. 1994) ("When a case results in the creation of a common fund for the benefit of the plaintiff class, the common fund doctrine allows plaintiffs' attorneys to petition the court to recover its fees out of the fund.") This rule "is based on the equitable notion that those who have benefited from litigation should share in its costs." *Sutton*, 504 F.3d at 691-92, (*citing Skelton v. Gen. Motors Corp*., 860 F.2d 250, 252 (7th Cir. 1988.) Courts have recognized that, in addition to providing just compensation, substantial counsel fees encourage forceful prosecution of cases. *See Halverson v. Convenient Food Mart, Inc.*, 458 F.2d 927, 931 n.5 (7th Cir. 1972).

In deciding an appropriate fee in common fund cases, the Seventh Circuit has "consistently directed district courts to 'do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'" *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007) (*quoting In re Synthroid Mktg. Litig*., 264 F.3d 712, 718 (7th Cir. 2001) ("*Synthroid I*")); *see also Montgomery v. Aetna Plywood, Inc*., 231 F.3d 399, 408 (7th Cir. 2000) (finding that in common fund cases, "the measure of what is reasonable [as an attorney fee] is what an attorney would receive from a paying client in a similar case"); *In re Trans Union Corp. Privacy Litig.*, MDL 1350, No. 00 C 4279, 2009 WL 4799954, at *9 (N.D. Ill. Dec. 9, 2009) *order modified and remanded*, 629 F.3d 741 (7th Cir. 2011) ("The analysis should be determined from what an arms-length negotiation between the class and the lawyers at the beginning of the case would have likely produced."); *Taubenfeld v. AON Corp*., 415 F.3d 597, 599 (7th Cir. 2005) ("Although is it impossible to know *ex post* exactly what terms would have resulted from arm's-length bargaining *ex ante*, courts must do their best to recreate the market by

considering factors such as actual fee contracts that were privately negotiated for similar litigation . . . .") (*citing Synthroid I*, 264 F.3d at 719)).

Accordingly, although awarding fees based on a percentage of the recovery or Class Counsel's lodestar remains within the discretion of the court, *In re Trans Union Corp.*, 2009 WL 4799954, at *9 (*citing Florin I*, 34 F.3d at 566), "[t]he approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred upon the class" especially where the percentage accurately reflects the market. *Williams v. Gen. Elec. Capital Auto Lease*, 94 C 7410, 1995 WL 765266, *9 (N.D. Ill. 1995); *see also Sutton*, 504 F.3d at 693 (directing district court on remand to consult the market for legal services so as to arrive at a reasonable percentage) (*citing Missouri v. Jenkins*, 491 U.S. 274, 285 (1989) (stating that in determining attorneys' fees, "we have consistently looked to the marketplace as our guide to what is 'reasonable'")).

The contingent nature of the fees here supports an award based on the percentage of recovery approach. The fee agreements between Class Counsel and the Class Representatives are contingent in nature, and the Plaintiffs agreed *ex ante* that 33% of any settlement fund plus reimbursement of all costs and expenses would represent a fair award of attorneys' fees from a fund recovered for the class. (Meyers Decl. ¶ 15.) It has been stated that in commercial, non-class litigation, attorneys regularly negotiate contingent fee arrangements, which result in a fee of between 33.3% to 40% of the recovery. *Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, 97 C 7694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) (*citing Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 1986)); *see also* Richard Posner, *Economic Analysis of Law* § 21.9, at 534-35 (3d ed. 1986) (explaining established practice to reward attorneys for taking the risk of non-payment by

paying them a premium over their normal hourly rates for winning[4] contingency cases).

Additionally, Class Counsel assumed a substantial risk of non-payment given the complexity of the action and the Defendant's position that it stood ready at all times to vigorously defend the lawsuit. (Meyers Decl. ¶¶ 8, 14.) In light of the significant likelihood that Class Counsel (and Settlement Class Members) could have ultimately recovered nothing, Class Counsel had every incentive to litigate this matter in the most efficient manner possible.

The magnitude of the recovery for the Class Members is further suggestive of an award based on the percentage of recovery approach. Settlement Class Members who submit valid claims are entitled to cash payments of up to $500.00 each – full recovery under the TCPA – or their *pro rata* share of the $9,900,000.00 Settlement Fund in the event the approved claims, along with attorneys' fees and settlement notice and administration costs, exhaust the total amount of the fund. As such, the entire $9,900,000.00 fund will be paid out by the Defendant as part of the settlement.

Finally, the response of the Settlement Class Members supports the reasonableness of the request. As of today, approximately 27,555 Settlement Class Members have submitted claims, only 15 have opted out of the Settlement Class, and none have voiced any objection to the Settlement. (Meyers Decl. ¶ 10.) The percentage of recovery approach is appropriately applied to the instant settlement and the inquiry turns to what percentage would be appropriate given the market for legal fees.

"Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery." William B.

---

[4] That this case settled is irrelevant, as courts have made clear that if, by their skill and determined efforts, plaintiffs' counsel ultimately secure a settlement, that fact does not diminish the risk they assumed at the case's inception. *See Skelton*, 860 F.2d at 258 (7th Cir. 1988) ("The point at which plaintiffs settle with defendants . . . is simply not relevant to determining the risks incurred by their counsel in agreeing to represent them.")

Rubenstein, *Newberg on Class Actions* § 14:6 (4th ed.). Accordingly, Class Counsel request that the court adopt the percentage of the fund approach, and award one-third of the Settlement Fund as attorneys' fees.

   A. *The Requested Fees Represent 33.33% of the Common Benefit Provided to the Class—a Percentage Consistent with the Range that has Been Found Reasonable by the Courts.*

The fee request in this case equals 33.33% of the cash common fund created under the Settlement, a figure widely recognized as reasonable. *See Meyenburg v. Exxon Mobil Corp.*, No. 05-cv-15 DGW, 2006 WL 2191422, at *2 (S.D. Ill. July 31, 2006) ("33 1/3% to 40% (plus the cost of litigation) is the standard contingent fee percentages in this legal marketplace for comparable commercial litigation.") Using the market percentage method in the courts of the Seventh Circuit results in awards of attorney's fees "equal to approximately one-third or more of the recovery." *Teamsters Local Union No. 604 v. Inter-Rail Transport, Inc.*, 02-cv-1109 DRH, 2004 WL 768658, at *1 (S.D. Ill. Mar. 19, 2004) ("In this Circuit, a fee award of thirty-three and one-third (33 1/3%) in a class action in [sic] not uncommon"); *Gaskill v. Gordon*, 160 F.3d 361, 362-363 (7th Cir. 1998) (noting that typical contingency fees are between 33% and 40% and that "[s]ome courts have suggested 25% as a benchmark figure for a contingent-fee award in a class action"); *McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 812 (E.D. Wis. 2009) (approving a fee request of 30% of the settlement amount as "common among contingency fee arrangements and is not facially unreasonable.") Where the market for legal services in a class action is only for contingency fee agreements, and there is a substantial risk of nonpayment for the attorneys, "the normal rate of compensation in the market" is "33.33% of the common fund recovered." *Will v. Gen. Dynamics Corp.*, CIV. 06-698-GPM, 2010 WL 4818174 (S.D. Ill. Nov. 22, 2010).

The going rate in the market for class action legal fees clearly suggests that the fee requested here is appropriate. Given the constraints imposed by the Settlement Agreement, a fee

award of 33.33% is consistent with the market rate and facially reasonable.

*B. The Requested Fees are Equally Appropriate Under the Lodestar Method.*

The attorneys' fees are equally reasonable should the Court apply the lodestar method. To determine the reasonableness of attorneys' fees under the lodestar method, the first step is to "multiply[] a reasonable hourly rate by the number of hours reasonably expended." *Gastineau v. Wright,* 592 F.3d 747, 748 (7th Cir. 2010) (*citing Hensley v. Eckerhart,* 461 U.S. 424, 433-37 (1983)). A reasonable hourly rate should be in line with the prevailing rate in the "community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Jeffboat, LLC v. Director, Office of Workers' Comp. Programs*, 553 F.3d 487, 489 (7th Cir. 2009); *see also Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003) (finding the attorney's actual billing rate for comparable work is presumptively appropriate).

Once the base lodestar is computed, the Court should adjust the lodestar using a risk multiplier. "[A] risk multiplier is not merely available in a common fund case but mandated, if the court finds that counsel 'had no sure source of compensation for the services.'" *Florin I*, 34 F.3d at 565 (quoting *In re Continental Ill. Sec. Litig.,* 962 F.2d 566, 569 (7th Cir. 1992)) ("the need for such an adjustment is particularly acute in class action suits.") The risk multiplier should take into account various factors in the litigation that affect the reasonableness of the requested fees. *See, e.g., Cook v. Niedert,* 142 F.3d 1004, 1015 (7th Cir. 1998); *Skelton*, 860 F.2d at 255. These factors include "the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." *Gastineau*, 592 F.3d at 748.

When applying a multiplier to the base lodestar amount, courts should also consider the risk plaintiff's counsel assumes in recovering nothing. *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975-76 (7th Cir. 1991) (remanding case for recalculation of attorneys' fees because the trial court

failed to award a risk multiplier). Typical multipliers awarded in comparable class action litigation average around 4, but are often much higher. *In re Linerboard Antitrust Litig.*, No. 98-5055, 2004 WL 1221350, at *14 (E.D. Pa. Jun. 2, 2004) (recognizing that from 2001 to 2003, the average multiplier approved in common fund cases was 4.35). Here, Class Counsel's base lodestar is reasonable, and the success obtained for the Settlement Class given the risk taken in prosecuting this case justifies the moderate multiplier requested here.

As detailed in the attached declarations, the base lodestar of Class Counsel[5] is $1,549,518.00 and is summarized by the following chart:

| LAW FIRM | ADJUSTED LODESTAR |
|----------|-------------------|
| McGuire Law, P.C. | $872,955.50 |
| McMorrow Law, P.C. | $676,562.50 |
| TOTAL: | $1,549,518.00 |

(*See* Meyers Decl., ¶ 18; *see also* Declaration of Michael J. McMorrow ("McMorrow Decl."), filed herewith, ¶ 13.)

The hourly rates utilized by the McGuire Law, P.C. and McMorrow Law, P.C. attorneys are comparable to rates charged by attorneys with similar experience, skill and reputation, for similar services in the Chicago legal market and comparable markets nationwide. (Meyers Decl., ¶ 18; McMorrow Decl. ¶ 13.) The hourly rates listed in the chart above are the actual billing rates for the respective attorneys that they charge to hourly clients, and, therefore, yield a presumption of appropriateness. "The attorney's actual billing rate for comparable work is 'presumptively

---

[5] Prior to submission, Class Counsel reviewed the hours expended by the attorneys and staff on this case and reduced any hours deemed duplicative or excessive. (Meyers Decl. ¶ 18.)

appropriate' to use as the market rate." *Aspacher v. Rosenthal Collins Grp.*, No. 00 C 7520, 2001 U.S. Dist. LEXIS 19464, at *5 (N.D. Ill. Nov. 6, 2001) (quoting *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310 (7th Cir. 1996)). *See also In re Cont'l*, 962 F.2d at 569 ("lawyers . . . are entitled to be compensated at market rates.") Further, several state and federal courts have approved the then-current hourly rates of the attorneys at both firms as reasonable. (Meyers Decl., ¶ 17; McMorrow Decl. ¶ 14.)

It is readily apparent that a multiplier to the base lodestar is warranted in this case. Class Counsel's willingness to undertake this litigation was risky, and despite such risk, an excellent result was achieved for the Settlement Class. As noted above, the rates employed by Class Counsel are their normal billing rates and they would not have brought this action absent the prospect of obtaining a percentage of the fund or a multiplier on their actual fees expended to account for the risk inherent in this type of class action. (Meyers Decl., ¶ 18; McMorrow Decl. ¶ 8.) Plaintiffs' claims were untested, and Class Counsel agreed to commence this litigation knowing they would assuredly face significant opposition from a defendant with the financial resources of Bill Me Later and its corporate parents. (Meyers Decl. ¶ 14.) Indeed, throughout the litigation Bill Me Later mounted a vigorous opposition, consistently arguing that the Plaintiffs would not be able to certify a damages class and contesting whether Defendant would be liable under the TCPA to Plaintiff and to many Settlement Class Members. (Meyers Decl. ¶¶ 7-9.) Had this case not settled, Defendant undoubtedly would have contested class certification and the underlying factual allegations of the case as well. (Meyers Decl. ¶¶ 7-8.) Analysis of novel issues, significant investigation and discovery relating to complex computer and telecommunications technology and the review and analysis of millions of records, and careful and extended negotiation of the final Settlement Agreement were required to ensure a substantial benefit to Class, and that is in fact

what the Class received.  (Meyers Decl., ¶ 9.)  The Settlement Fund of $9,900,000.00 was only obtained through the diligence, skill and persistence of Class Counsel, and the lack of opposition to date indicates that the Settlement Class Members support that conclusion.  Furthermore, Class Counsel anticipate expending additional time and effort through Final Approval and beyond in order to respond to inquiries from Class Members, objectors, and the Settlement Administrator, among others. Class Counsel estimate such additional time conservatively at $60,000. (Meyers Decl. ¶ 19; McMorrow Decl. ¶ 15.) Accordingly, Class Counsel's lodestar of $1,609,518.00 requires a multiplier of less than 2.1, and is reasonable given the results obtained and the relief made available for the Settlement Class.

In addition to this amount, or such other amount awarded by this honorable Court, Class Counsel have expended $78,728.06 in reimbursable expenses related to filing, appearances, discovery, subpoenas, experts, mediation, travel, copying, case administration, and transcripts, with the potential of more expenses yet to come.  (Meyers Decl. ¶ 20.)  The Defendant has agreed not to oppose Class Counsel's request for expenses up to $100,000.00.  Courts regularly award reimbursement of the expenses counsel incurred in prosecuting the litigation. *See Spicer v. Chicago Bd. Options Exch., Inc.*, 844 F. Supp. 1226, 1256 (N.D. Ill. 1993) (detailing and awarding expenses incurred during litigation); *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they 'were incidental and necessary to the representation' of those clients.") (quoting *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 283 (2d Cir. 1987)).  Therefore, Class Counsel request the Court approve as reasonable the agreed-upon expenses in the amount of $78,728.06.

Under either the percentage of the fund method or the lodestar method Class Counsel's fee request is reasonable in this case. More importantly, the requested fee award follows Seventh Circuit precedent in that it is accurately reflective of and consistent with what the market would award. Accordingly, this Court should award the request for attorneys' fees of $3,300,000, and expenses of $78,728.06, for a total fee and expense award to Plaintiffs' Counsel of $3,378,728.06.

## VI. THE COURT SHOULD APPROVE THE AGREED-UPON INCENTIVE AWARDS

Because a named plaintiff is essential to any class action, "[i]ncentive awards are justified when necessary to induce individuals to become named representatives." *Synthroid I*, 264 F.3d at 722-23. Merely agreeing to serve as plaintiffs opened the Class Representatives to scrutiny and attention which, in and of itself, has been found worthy of some type of remuneration. *See Schulte v. Fifth Third Bank*, 805 F.Supp. 2d 560, 600-01 (N.D. Ill. 2011).

In deciding whether an incentive award is warranted, courts look to: (1) "the actions the plaintiff has taken to protect the interests of the class"; (2) "the degree to which the class has benefitted from those actions"; and (3) "the amount of time and effort the plaintiff expended in pursuing the litigation." *Cook*, 142 F.3d at 1016. These factors are readily satisfied here because the Settlement Class benefitted significantly from the Plaintiffs' involvement as the Class Representatives. Were it not for their efforts and contributions to the litigation by assisting Class Counsel with their investigation and filing of this suit, their participation in responding to the Defendant's discovery and agreeing to be deposed, and their monitoring of the case throughout its litigation, the substantial benefit to the Class afforded under this Settlement Agreement would not have resulted. (Meyers Decl. ¶¶ 22-23.)

Throughout this litigation there was no pre-agreement or discussion concerning an award or the potential for an award in exchange for the Class Representatives' involvement. (*See* Meyers Decl. ¶ 24.) Nonetheless, both Class Representatives contributed their own time and effort in

pursuing their individual claims, as well as the action on behalf of the Settlement Class, exhibiting a willingness to participate and undertake the responsibilities and risks attendant with bringing a representative action. (Meyers Decl. ¶¶ 21-22.) Both Class Representatives responded to written discovery, produced personal documents, and sat for deposition, submitting to interrogation under oath regarding their business and personal lives and their motives for bringing this suit. (Meyers Decl. ¶ 22.) The Class Representatives also consulted with Class Counsel on numerous occasions in person, over the phone, and by email, and reviewed documents, including filings and settlement agreements. (*Id*.)

The incentive awards requested here collectively account for only 0.6% of the total Settlement Fund, a very small amount. Reducing each Settlement Class Member's claims by 0.6% to compensate the Class Representatives for the risks and efforts they undertook to benefit the Settlement Class as a whole is more than reasonable under the circumstances of this case and considering the results obtained. Finally, $30,000 incentive awards are reasonable in light of the efforts required and the recovery obtained for the Class. *See Cook*, 142 F.3d at 1016 (affirming incentive award of $25,000 of $13 million Settlement fund); *Lucken Family Ltd. P'ship, LLLP, v. Ultra Res., Inc.*, 09-cv-01543-REB-KMT, 2010 U.S. Dist. LEXIS 144366, at *16-*17 (D. Colo. Dec. 22, 2010) (noting *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 251 (S.D. Ohio 1991) (approving incentive awards of $50,000 for each of 6 class representatives, for a total of $300,000 out of a settlement fund of $56.6 million, which was 0.56% of the common fund)).

Courts have approved incentive awards in similar class action litigation consistent with and greater than the agreed-upon $30,000 award to each of the Class Representatives here; furthermore, no objection to these incentive awards has been raised to date. Accordingly, the

agreed-upon incentive award of $30,000 for each of the two Class Representatives is reasonable and should be approved.

## VII. CONCLUSION

For the foregoing reasons, the Class Representatives and Class Counsel respectfully request that this honorable Court approve their motion for an award of attorneys' fees of $3,300,000.00, equal to one third of the Settlement Fund, an award of $78,728.06 from the Settlement Fund for reimbursement of Class Counsel's actual costs and expenses incurred in connection with their representation of the Settlement Class in this action, and an incentive award in the amount of $30,000.00 to each of the Class Representatives in recognition of their significant efforts and success on behalf the Settlement Class, and for such other and further relief the Court deems reasonable and just.

Dated: October 6, 2014                                                    Respectfully submitted,

                                                              By: /s/ Michael J. McMorrow
                                                              One of Plaintiffs' Attorneys

Myles McGuire
mmcguire@mgpc.com
Evan M. Meyers
emeyers@mcgpc.com
McGUIRE LAW, P.C.
161 N. Clark Street, 47th Floor
Chicago, IL 60601
Tel: (312) 216-5179
Fax: 312-275-7895

Michael J. McMorrow
mike@mjmcmorrow.com
MCMORROW LAW, P.C.
One North LaSalle St., 44th Floor
Chicago, IL 60604
Tel: (312) 265-0708

*Counsel for Misty Murray and Shaun Murray and*
*the Settlement Class*