# Exhibit B

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| MISTY MURRAY AND SHAUN MURRAY, individually and on behalf of a class of similarly situated individuals, | ) ) ) ) |
| Plaintiffs, | ) No. 12-cv-04789 ) |
| v. | ) ) Hon. Sara L. Ellis |
| BILL ME LATER, INC., a Delaware corporation, | ) ) |
| Defendant. | ) |

**DECLARATION OF JEANNE C. FINEGAN, APR**

**CONCERNING IMPLEMENTATION OF NOTIFICATION PROGRAM**

I, JEANNE C. FINEGAN, declare as follows:

**OVERVIEW**

1. I am President of HF Media, LLC, Inc. ("HF") a division of Heffler Claims Group. This Declaration is based upon my personal knowledge as well as information provided to me by my associates and staff, including information reasonably relied upon in the fields of advertising media and communications.

2. Heffler Claims Group LLC ("Heffler") was engaged by the Parties as the Settlement Administrator in the above captioned litigation (the "Action"), to implement the notice procedures and administer the claims procedures identified in section I 1.38 of the Settlement Agreement, dated July 23, 2014.

3. The Settlement Agreement defines the Settlement Class as:

    i.  All persons who, from June 15, 2008 through the date of preliminary approval, (a) received a call on their cellular phone made by or on behalf of Bill Me Later, Inc. ("BML") using an automatic telephone dialing system and the called party did not give consent for BML to make such a call, or (b) received a call on their cellular phone or residential telephone

line made by or on behalf of BML using an artificial or prerecorded voice to deliver a message and the called party did not give consent for BML to make such a call.

4. I submit this Declaration in order to provide the Court and the parties to the Action a report regarding the successful implementation of the Notice Plan as it relates to the Publication Notice ("Publication Notice"), through magazine, online banner notice, and the mailing of the Notice ("Long Form Notice").

5. Furthermore, this Declaration reports on the operation and maintenance of the dedicated Settlement Website, and toll-free number.

6. In compliance with the Order, all elements of the Notice Plan have been successfully implemented. Detailed descriptions of those elements are described below.

7. Importantly, this Declaration explains how this comprehensive Notice Plan, through a combination of paid media and direct mail/ email is estimated to have reached[1] over 95 percent of the class. This Declaration will also describe why it is consistent with other similar Court approved Actions providing a best notice practicable under the circumstances.

## QUALIFICATIONS

8. My credentials that qualify me to provide an expert opinion include more 25 years of communications and advertising experience. I am the only Notice Expert accredited in Public Relations (APR) by the Universal Accreditation Board, a program administered by the Public Relations Society of America. Further, I have provided testimony before Congress on issues of notice. Also, I have lectured, published and been cited extensively on various aspects of legal noticing, product recall and crisis communications and have

---

[1] Net Reach measures the number of people exposed (unduplicated), and Frequency is a report of the number of exposures. In advertising, this is commonly referred to as a "Reach and Frequency" analysis, where "Reach" refers to the estimated percentage of the unduplicated audience exposed to the campaign, and "Frequency" refers to how many times, on average, the target audience had the opportunity to see the message. The calculations are used by advertising and communications firms worldwide, and have become a critical element to help provide the basis for determining adequacy of notice in class actions.

DECLARATION OF JEANNE C. FINEGAN, APR

served the Consumer Product Safety Commission (CPSC) as an expert to determine ways in which the CPSC can increase the effectiveness of its product recall campaigns.

9. I have particularly relevant experience for court approved telecommunications matters including:

- *Rojas v Career Education Corporation*, No. 10-cv-05260 (N.D.E.D. IL)
- *Heather Stern v. New Cingular Wireless Services Inc*., No. 09-cv-1112 CAS-AGR (C.D.Cal.)
- *Palmer v. Sprint Nextel Corporation*, No. 09-cv-01211 (JLR) (W.D.Wa.)
- *In re: MCI Non-Subscriber Telephone Rate Litig*., MDL Docket No. 1275, 3:99-cv-
  01275 (S.D.Ill.)
- *Sparks v. AT&T Corp*., No. 96-LM-983 (Third Judicial Cir., Madison County, Ill.)

10. I have served as an expert, directly responsible for the design and implementation of hundreds of class action notice programs, some of which are the largest and most complex programs ever implemented in both the United States and in Canada. My work includes a wide range of class actions and regulatory and consumer matters that include product liability, construction defect, antitrust, asbestos, medical pharmaceutical, human rights, civil rights, telecommunications, media, environmental, securities, banking, insurance and bankruptcy.

11. Further, I have been at the forefront of modern notice, integrating new media and social media into court approved legal notice programs such as *In re: Reebok Easytone Litigation*, No. 10-CV-11977 (D. MA.), and *In re: Skechers Toning Shoes Products Liability Litigation*, No. 3:11-MD-2308-TBR (W.D. Ky. 2012).

12. Heffler has provided class action settlement services in over 900 cases of varying sizes and complexity over the past 45 years. Heffler has expertise in all aspects of administration for consumer, antitrust, securities, employment, mass tort, and government enforcement matters. Heffler's administration is exemplified, in part, by the complex services provided *In re: Currency Conversion Fee Antitrust Litigation*, 1:01md, MDL No. 1409. In this matter, Heffler distributed over $3 billion in funds, processed over 10 million claims and mailed information to over 40 million potential claimants.

DECLARATION OF JEANNE C. FINEGAN, APR

13. As further reference, in evaluating the adequacy and effectiveness of my notice programs, courts have repeatedly recognized my work as an expert.  For example, in:

*In re: Skechers Toning Shoes Products Liability Litigation*, No. 3:11-MD-2308-TBR (W.D. Ky. 2012). In his order granting the Motion for Settlement, the Honorable Thomas B. Russell stated:

> … The comprehensive nature of the class notice leaves little doubt that, upon receipt, class members will be able to make an informed and intelligent decision about participating in the settlement.

*Brody v. Merck & Co., Inc., et al,* No. 3:12-cv-04774-PGS-DEA (N.J.) (Jt Hearing for Prelim App, Sept. 27, 2012, transcript page 34).   During the Hearing on Joint Application for Preliminary Approval of Class Action, the Honorable Peter G. Sheridan praised Ms. Finegan, noting:

> Ms. Finegan did a great job in testifying as to what the class administrator will do. So, I'm certain that all the class members or as many that can be found, will be given some very adequate notice in which they can perfect their claim.

*DeHoyos, et al. v. Allstate Ins. Co*., No. 01-CA-1010 (W.D.Tx.). In the Amended Final Order and Judgment Approving Class Action Settlement, the Honorable Fred Biery stated:

> [T]he undisputed evidence shows the notice program in this case was developed and implemented by a nationally recognized expert in class action notice programs. … This program was vigorous and specifically structured to reach the African-American and Hispanic class members. Additionally, the program was based on a scientific methodology which is used throughout the advertising industry and which has been routinely embraced routinely [sic] by the Courts.

And in *Stern v. AT&T Mobility Wireless*, No. 09-cv-1112 CAS-AGR (C.D.Cal.).  In the Final Approval Order, the Honorable Christina A. Snyder stated:

> [T]he Court finds that the Parties have fully and adequately effectuated the Notice Plan, as required by the Preliminary Approval Order, and, in fact, have achieved better results than anticipated or required by the Preliminary Approval Order.

14. Other examples include:

      a.     ***Gemelas v. The Dannon Company***, No. 1:08-cv-00236 (N.D. Ohio, E. Div.).  In the Judgment, Final Order, and Decree, Judge Dan Aaron Polster approved the notice program, stating:

> In accordance with the Court's Preliminary Approval Order and the Court-approved notice program, the Class Action Settlement Administrator caused the Class Notice to be distributed on a nationwide basis in magazines and newspapers (with circulation numbers exceeding 81 million) specifically chosen to reach Class Members.  In addition, the Settlement was widely publicized using Internet banner ads, press releases, audio news releases, via a Settlement Website, and through a toll-free number. … The Declaration of Jeanne C. Finegan [sic], attesting to the dissemination of the Class Notice, demonstrates compliance with this Court's Preliminary Approval Order. … The distribution of the Class Notice constituted the best notice practicable under the circumstances, and fully satisfied the requirements of Federal Rule of Civil Procedure 23, the requirements of due process, 28 U.S.C. 1715, and any other applicable law.

      b.     ***In re Expedia Hotel Taxes and Fees Litigation,*** Case No. 05-2-02060-1 SEA, Superior Court of Washington in and for King County (2009).  In the Order Granting Final Approval of Class Action Settlement, Judge Monica Benton stated:

> The Notice of the Settlement given to the Class … was the best notice practicable under the circumstances.  All of these forms of Notice directed Class Members to a Settlement Website providing key Settlement documents including instructions on how Class Members could exclude themselves from the Class, and how they could object to or comment upon the Settlement.  The Notice provided due and adequate notice of these proceeding and of the matters set forth in the Agreement to all persons entitled to such notice, and said notice fully satisfied the requirements of CR 23 and due process.

      c.     ***Stefanyshyn v. Consolidated Industries,*** Case No. 79 D 01-9712-CT-59, Tippecanoe County Sup. Ct. (Ind.) (May 28, 2009).  In the Order Granting Final Approval of Settlement, Judge Randy Williams stated**:**

> The long and short form notices provided a neutral, informative, and clear explanation of the Settlement… The proposed notice program was properly designed, recommended, and implemented … and constitutes the "best practicable" notice of the proposed Settlement. The form and content of the notice program satisfied all applicable legal requirements… The comprehensive class notice educated Settlement Class members about the

defects in Consolidated furnaces and warned them that the continued use of their furnaces created a risk of fire and/or carbon monoxide. This alone provided substantial value.

    d.    ***McGee v. Continental Tire North America, Inc. et al***, Civ. No. 06-6234-(GEB) (D.N.J.). The Court noted:

> The Class Notice, the Summary Settlement Notice, the website, the toll-free telephone number, and all other notices in the Agreement, and the notice methodology implemented pursuant to the Agreement: (a) constituted the best practicable notice under the circumstances; (b) constituted notice that was reasonably calculated to apprise Class Members of the pendency of the Action, the terms of the Settlement and their rights under the Settlement, including, but not limited to, their right to object to or exclude themselves from the proposed Settlement and to appear at the Fairness Hearing; (c) were reasonable and constituted due, adequate and sufficient notice to all persons entitled to receive notification; and (d) met all applicable requirements of law, including, but not limited to, the Federal Rules of Civil Procedure, 20 U.S.C. Sec. 1715, and the Due Process Clause(s) of the United States Constitution, as well as complied with the Federal Judicial Center's illustrative class action notices.

    e.    ***In re: Canadian Air Cargo Shipping Class Actions*** (Ontario Superior Court of Justice, Court File No. 50389CP, Supreme Court of British Columbia, Quebec Superior Court). In the Endorsement of Settlement, Ontario Superior Court of Justice Regional Senior Justice Lynne C. Leitch stated:

> I am satisfied the proposed form of notice meets the requirements of s. 17(6) of the CPA and the proposed method of notice is appropriate.

    f.    ***Lucas v. KMART Corporation***, Civil Action No 99-CV-01923 (JLK) (D. Colo. 2006). The Court noted:

> [T]he Court finds this extensive notice program to be more than adequate and approves it as the 'best notice practicable under the circumstances' and consistent with the requirements of F.R.C.P. 23 and due process.

    g.    ***Varacallo v. Massachusetts Mutual Life Insurance Company***, Civil Action No. 04-2702 (JLL) (D.N.J. 2004). The Court noted:

DECLARATION OF JEANNE C. FINEGAN, APR

[A]ll of the notices are written in simple terminology, are readily understandable by Class Members, and comply with the Federal Judicial Center's illustrative class action notices.

h.     ***Wilson v. Massachusetts Mutual Life Insurance Company***, Case No. D-101-CV 98-02814 (First Judicial District Court County of Santa Fe State of New Mexico 2002). The Court stated:

The Notice Plan was the best practicable and reasonably calculated, under the circumstances of the action . . . [and] that the notice meets or exceeds all applicable requirements of law, including Rule 1-023(C)(2) and (3) and 1-023(E), NMRA 2001, and the requirements of federal and/or state constitutional due process and any other applicable law.

i.     ***Thomas A. Foster and Linda E. Foster v. ABTco Siding***, Case No. 95-151-M (Circuit Court of Choctaw County, Alabama 2000). The Court stated:

The notice program constitutes the best notice practicable under the circumstances of this Action.  This finding is based on the overwhelming evidence of the adequacy of the notice program.

j.     ***Sparks v. AT&T Corporation***, Case No. 96-LM-983 (Third Judicial Circuit Madison County, Illinois 2001).  In granting final approval to the Settlement, the Court commented on the notification program as follows:

The Court further finds that the notice of the proposed Settlement was sufficient and furnished Class Members with the information they needed to evaluate whether to participate in or opt out of the proposed Settlement. The Court therefore concludes that the notice of the proposed Settlement met all requirements required by law, including all Constitutional requirements.

k.     ***In re: Louisiana-Pacific Inner-Seal Siding***, Civil Action Nos. 879-JE, and 1453-JE (D. Or. 1995, 1999). The Court stated:

[T]he notice given to the members of the Class fully and accurately informed the Class members of all material elements of the Settlement…[through] a broad and extensive multi-media notice campaign. . . .

15. Additionally, I have published extensively on various aspects of legal noticing, including the following publications and articles:

DECLARATION OF JEANNE C. FINEGAN, APR

a.      Author, 'Being 'Media-Relevant' — What It Means And Why It Matters - Law360.com, New York (September 11, 2013, 2:50 PM ET).

b.      Co-Author, "New Media Creates New Expectations for Bankruptcy Notice Programs," ABI Journal, Vol. XXX, No 9, November 2011.

c.      Quoted Expert, "Effective Class Action Notice Promotes Access to Justice: Insight from a New U.S. Federal Judicial Center Checklist," Canadian Supreme Court Law Review, (2011), 53 S.C.L.R. (2d).

d.      Co-Author, with Hon. Dickran Tevrizian, "*Expert Opinion: It's More Than Just a Report...Why Qualified Legal Experts Are Needed to Navigate the Changing Media Landscape,*" BNA Class Action Litigation Report, 12 CLASS 464, 5/27/11.

e.      Co-Author, with Hon. Dickran Tevrizian, "*Your Insight: It's More Than Just a Report...Why Qualified Legal Experts Are Needed to Navigate the Changing Media Landscape*, TXLR, Vol. 26, No. 21, 5/26/2011.

f.      Author, *Five Key Considerations for a Successful International Notice Program*, BNA Class Action Litigation Report, 4/9/10 Vol. 11, No. 7 p. 343.

g.      Quoted: *Technology Trends Pose Novel Notification Issues for Class Litigators*, BNA Electronic Commerce and Law Report, 15, ECLR 109, 1/27/10.

h.      Author, *Legal Notice: R U ready 2 adapt?* BNA Class Action Litigation Report, Vol. 10, No. 14, 7/24/2009, pp. 702-703.

i.      Author, *On Demand Media Could Change the Future of Best Practicable Notice*, BNA Class Action Litigation Report, Vol. 9, No. 7, 4/11/2008, pp. 307-310.

j.      Quoted in, *Warranty Conference: Globalization of Warranty and Legal Aspects of Extended Warranty*, Warranty Week, February 28, 2007, available at www.warrantyweek.com/archive/ww20070228.html.

k.      Co-Author, *Approaches to Notice in State Court Class Actions*, For The Defense, Vol. 45, No. 11, November, 2003.

DECLARATION OF JEANNE C. FINEGAN, APR

l. Author, *The Web Offers Near, Real-Time Cost Efficient Notice*, American Bankruptcy Institute Journal, Vol. XXII, No. 5, 2003.

m. Author, *Determining Adequate Notice in Rule 23 Actions*, For The Defense, Vol. 44, No. 9, September, 2002.

n. Co-Author, *The Electronic Nature of Legal Noticing*, American Bankruptcy Institute Journal, Vol. XXI, No. 3, April, 2002.

o. Author, *Three Important Mantras for CEO's and Risk Managers in 2002*, International Risk Management Institute, irmi.com/, January, 2002.

p. Co-Author, *Used the Bat Signal Lately*, The National Law Journal, Special Litigation Section, February 19, 2001.

q. Author, *How Much is Enough Notice*, Dispute Resolution Alert, Vol. 1, No. 6, March, 2001.

r. Author, *Monitoring the Internet Buzz*, The Risk Report, Vol. XXIII, No. 5, January, 2001.

s. Author, *High-Profile Product Recalls Need More Than the Bat Signal*, International Risk Management Institute, irmi.com/, July 2001.

t. Author, *The Great Debate - How Much is Enough Legal Notice?* American Bar Association -- Class Actions and Derivatives Suits Newsletter, Winter 1999.

u. Author, *What are the best practicable methods to give notice?* Georgetown University Law Center Mass Tort Litigation Institute, CLE White Paper: Dispelling the communications myth -- A notice disseminated is a notice communicated, November 1, 2001.

16. In addition, I have lectured or presented extensively on various aspects of legal noticing. A sample list includes the following:

a. Bridgeport Continuing Ed., Speaker, Webinar "Media Relevant in the Class Notice Context." July 2014.

b. Bridgeport Continuing Ed.  Faculty Panelist, "Media Relevant in the Class Notice Context," April 2014.

c. CASD 5th Annual Speaker, "The Impact of Social Media on Class Action Notice." Consumer Attorneys of San Diego Class Action Symposium, San Diego, California, September 2012.

d. Law Seminars International, Speaker, "Class Action Notice: Rules and Statutes Governing FRCP (b)(3) Best Practicable… What constitutes a best practicable notice? What practitioners and courts should expect in the new era of online and social media."  Chicago, IL, October 2011.

e. CLE International, Faculty Panelist, Building a Workable Settlement Structure, CLE International, San Francisco, California May, 2011.

f. Consumer Attorneys of San Diego (CASD), Faculty Panelist, "21st Century Class Notice and Outreach," 2nd Annual Class Action Symposium CASD Symposium, San Diego, California, October 2010.

g. Consumer Attorneys of San Diego (CASD), Faculty Panelist, "The Future of Notice," 2nd Annual Class Action Symposium CASD Symposium, San Diego, California, October 2009.

h. American Bar Association, Speaker, 2008 Annual Meeting, "Practical Advice for Class Action Settlements:  The Future of Notice In the United States and Internationally – Meeting the Best Practicable Standard."

i. American Bar Association, Section of Business Law Business and Corporate Litigation Committee – Class and Derivative Actions Subcommittee, New York, NY, August 2008.

j. Faculty Panelist, Women Lawyers Association of Los Angeles (WLALA) CLE Presentation, "The Anatomy of a Class Action."  Los Angeles, CA, February 2008.

DECLARATION OF JEANNE C. FINEGAN, APR

k.      Faculty Panelist, Practicing Law Institute (PLI) CLE Presentation, 11th Annual Consumer Financial Services Litigation.  Presentation: Class Action Settlement Structures -- "Evolving Notice Standards in the Internet Age."  *New York/Boston* (simulcast) March, 2006; *Chicago*, April, 2006; and *San Francisco*, May 2006.

l.      Expert Panelist, U.S. Consumer Product Safety Commission.  I was the only legal notice expert invited to participate as an expert to the Consumer Product Safety Commission to discuss ways in which the CPSC could enhance and measure the recall process.   As an expert panelist, I discussed how the CPSC could better motivate consumers to take action on recalls and how companies could scientifically measure and defend their outreach efforts.  Bethesda, MD, September 2003.

m.      Expert Speaker, American Bar Association.  Presentation: "How to Bullet-Proof Notice Programs and What Communication Barriers Present Due Process Concerns in Legal Notice," ABA Litigation Section Committee on Class Actions & Derivative Suits, Chicago, August 6, 2001.

17. A comprehensive description of my credentials and experience that qualify me to provide expert opinions on the adequacy of class action notice programs is attached as <u>Exhibit A</u>.

### Notice Program Methodology

18. To appropriately design and target the notice publication component of the Notice Program, we have used a scientific methodology that is used throughout the advertising industry and that has been embraced by courts in the United States.  See *Daubert v. Merrell Dow Pharmaceuticals* 509 U.S. 579 (1993) (experts must apply a technique that may be tested by peers and use industry accepted methodology); *Kumho Tire Co. v. Carmichael* 526 U.S. 137 (1999) (same). This methodology has been accepted by numerous Courts throughout the United States. Accordingly, my staff and I studied data provided by nationally syndicated media research bureaus, including GfK Mediamark

DECLARATION OF JEANNE C. FINEGAN, APR

Research and Intelligence, LLC ("GfK MRI"), comScore[2] in order to determine the estimated net audience reached through this legal notice program.

## Notice Program Implementation

19. In compliance with the Order, the Notice program commenced on August 25, 2014 and was substantially completed on September 25, 2014. The elements of this comprehensive Notice Program included: 1) notice by direct mail and email; 2) notice by publication; 3) notice by Internet and mobile advertising; 4) a Facebook page; 5) a Settlement website; and 6) toll-free information telephone number.

## Mailed Notice

20. In compliance with the Order, on or about August 6, 2014, Heffler received via a secure portal, 47,493,058 name, address and BML phone number records from defense counsel Sidley Austin, LLP. Heffler identified 15,981,302 records in the client data that had bad phone numbers and removed those records from any further analysis, leaving 31,511,756 records to further review. Heffler analyzed the remaining 31,511,756 records and identified all the unique records using a combination of account number, phone number, name and address. This analysis yielded a dataset of 2,037,692 records. These 2,037,692 records were analyzed by Heffler to formulate a Final Class List. Heffler prepared a file containing 2,037,692 records and sent it to LexisNexis ("Lexis") with specific implementation instructions for performing a reverse phone look-up. Lexis then conducted the reverse look-up that encompassed the Class Period of June 15, 2008 to July 24, 2014. Lexis was directed to identify all of the names and addresses associated with a phone number during the class period. If more than one name was associated with the phone number during the period, Lexis sent the relevant data for each of the names associated with the phone number. Lexis provided Heffler with an output file containing

---

[2] GfK MRI is a nationally syndicated research tool. It is the leading supplier of multi-media audience research, and provides comprehensive reports on demographic, lifestyle, product usage and media exposure. It conducts more than 26,000 personal interviews annually to gather their information, and is used by more than 450 advertising agencies as the basis for the majority of media and marketing campaigns.

comScore is a global Internet information provider on which leading companies and advertising agencies rely for consumer behavior insight and Internet usage data. comScore maintains a proprietary database of more than 2 million consumers who have given comScore permission to monitor their browsing and transaction behavior, including online and offline purchasing. comScore panelists also participate in survey research that captures and integrates their attitudes and intentions.

DECLARATION OF JEANNE C. FINEGAN, APR

2,585,994 records following the reverse phone look-up. Lexis then culled the data for records that matched the look-up critical for owners during the Class Period, June 15 2008 through July 24, 2014. Lexis returned 691,180 records that did not match the criteria during the trace process, leaving 1,894,814 records from Lexis that matched the look-up criteria and owned the phone number at any time during the Class Period. These 1,894,814 records were then used to perform a matching comparison with the original data that was provided to Heffler on August 6, 2014. For each of the 1,894,814 Lexis output records, Heffler matched a combination of the phone number and the surname to the same in the original data. If the phone number and surname combination matched a record in the original data set, the Lexis record was considered a "match" and no further action was taken; 1,514,815 records were noted to be in this category. If the phone number and surname combination did not match a record in the original data set, the Lexis record was noted as "unmatched" and those unmatched records were used in formulating the final class list; 379,999 records were noted to be in the "unmatched" category. The 379,999 "unmatched" records then went through a de-duplication process to identify unique records for our final class list. Any class member that had a distinct combination of phone number, name and address were considered unique based on the aforementioned criteria and the final class list of 308,807 records was compiled.

21. In preparation for the Notice mailing, Heffler sent the 308,807 Final Class List records through the U.S. Postal Services, National Change of Address Database ("NCOA"), in an effort to identify current addresses for the records. On September 12, 2014, notices were mailed to the 308,807 members of the Final Class List. Attached as <u>Exhibit B</u> is a Class Notice and Claim Form sent to the Final Class List.

22. On August 6, 2014 Heffler was also provided via a secure portal 34,256 records with email addresses for potential class members. On September 12, 2014, Heffler emailed a Class Notice to 34,256 records. Of the 34,256 emails that were sent, 7,341 records bounced back, and therefore were not delivered. Attached as <u>Exhibit C</u> is the notice sent via email.

23. As of October 31, 2014, Heffler has received 60,348 notices returned as undeliverable. 57,375 of the undeliverable records have been sent through an address trace process with LexisNexis. The trace process produced 37,517 records with an address update. Heffler

DECLARATION OF JEANNE C. FINEGAN, APR

has re-mailed notices to the 37,517 records with updated addresses.

24. As of October 31, 2014, Heffler has received 1,136 notices returned with a forwarding address provided by the United States Postal Service. Heffler has updated the address in the claims databases and has re-mailed notices to all 1,136 records.

25. Heffler is also responsible for the receipt of Objection and Exclusion Requests for the Settlement. As of this October 31, 2014, Heffler has received thirty-two (32) Exclusion Requests and zero (0) Objections.

### Notice by Publication Program as Implemented

26. In compliance with the Order, notice by publication was to occur as described in Exhibit E to the Settlement Agreement. This requirement has been successfully accomplished.

27. Broad nationwide notice was accomplished through publication of the Summary Notice one time in *Sports Illustrated* and two times in *People Magazine*. Sports Illustrated is a widely distributed weekly magazine with a circulation of 3,065,507 and 19,680,554 readers. *People Magazine* reports a circulation of 3,637,633 with over 44,415,498 readers. In combination, the magazine circulation totals 6,703,140, with more then 64,096,052 readers[3]. Attached as Exhibit D are tear sheet proofs of publication for these titles.

| Title | Insertions | On Sale Date |
|-------|------------|--------------|
| *Sports Illustrated* | 1 | September 3, 2104 |
| *People Magazine* | 2 | August 29, 2014 September 5, 2014 |

### Internet Banner Ads

28. In compliance with the Court's Order, Internet banner ads were posted on the sites identified below. The banners were posted over a one-month period and were estimated to have reached over 37 percent of US Adults who own cell phones. Banner ads provided information for visitors to self-identify themselves as potential Class Members, where they then could "click" on the banner and then link directly to the official website

---

[3] Readership is a gross statistic which includes duplication.

DECLARATION OF JEANNE C. FINEGAN, APR

for more information and where they could register online, or download the registration form. If class members had additional questions, the toll-free information line was also posted on the website. Attached as <u>Exhibit E</u> are screen shots of banner ads as they appeared online.

| Site | Description |
|------|-------------|
| Facebook | Targeting on Facebook of adults 18+ with interests in stores who partner with Bill Me Later. Ads were targeted to appear in users newsfeed online and in their mobile/tablet Facebook app (ads located on the right-hand side of Facebook.com). |
| Xaxis Network | Targeting users who are heavy online shoppers and have a cell phone. |
| Mobile & App Network | Targeting frequent online shoppers, and those who are frequent online purchasers at stores who partner with Bill Me Later including: Best Buy, Wal-Mart, Overstock.com, ToysRUs, HP and Apple Store |

**Social Media Outreach**

29. In compliance with the Court's Order, a Facebook Page was created where Court information about the settlement was posted.

**Website**

30. In compliance with the Order, the Notice Program included an official website www.AutoPhoneCallsSettlement.com that went live on August 22, 2014. The website served as a "landing page for the banner advertising," where Class Members may continue to obtain further information about the class action, their rights, download claim forms and related information, including the Settlement Agreement, Court Orders, and Plaintiff's Motion for Approval of Fees, Expenses, and Incentive Awards. To date, over 29,000 claims were filed via the settlement website. Additionally, website visitors were able to enter telephone number which received the automated calls, phone carrier, name and address information, email to determine eligibility. Visitors were also asked to certify that their claim forms were true and correct by checking a box and electronically signing the form. The website address was prominently displayed in the publication notice and is

DECLARATION OF JEANNE C. FINEGAN, APR

accessible 24-hours a day, 7-days a week.  As of October 31, 2014 the site has received 40,011 visits.

### Telephone Helpline

31. Heffler also maintains a 24-hour toll-free telephone line, 1.844.245.3766, where callers may obtain information about the class action. As of October 31, 2014 the toll free line has received 3,703 calls.

### Exclusions and Objections

32. Class members were advised they had the right to exclude themselves from or object to the Settlement, provided that they file a Request for Exclusion or Objection by the October 23, 2014 deadline. As of October 31, 2014, Heffler has received requests from 32 class members to be excluded from the settlement.  Heffler has received no Objections to the Settlement.

### Conclusion

33. As a result of the highly effective and robust efforts conducted in our reverse look up process to identify class members, the direct mail and email effort significantly exceeded our original projections. Therefore, the combination of paid media and direct notice is now estimated to have reached over 95 percent of targeted class members.  In my opinion, the efforts employed in this notice program were of the highest communication standards, which were reasonably calculated to provide notice that was not only consistent, but exceeded Best Practicable court approved notice programs in similar matters which are consistent with the Federal Judicial Center's guidelines concerning appropriate reach.

34. I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on November 6, 2014 in Tigard, Oregon.

JEANNE C. FINEGAN

DECLARATION OF JEANNE C. FINEGAN, APR

Exhibits to Declaration of Jeanne C. Finegan, APR

Concerning Implementation of Notification Program


Exhibit A: Jeanne Finegan Expert Qualifications

Exhibit B: Mailed Class Notice and Claim Form

Exhibit C: Emailed Notice

Exhibit D: Print Publication

Exhibit E: Internet Screenshots

# Exhibit A



# JEANNE C. FINEGAN, APR

### BIOGRAPHY

Jeanne Finegan, APR, is President of HF Media, LLC., and has more than 25 years of communications and advertising experience and is a distinguished legal notice and



communications expert. During her tenure, she has planned and implemented hundreds of high-profile, complex legal notice communication programs. She is a recognized notice expert in both the United States and in Canada, with extensive international notice experience spanning more than 140 countries and over 40 languages.

Ms. Finegan has lectured, published and has been cited extensively on various aspects of legal noticing, product recall and crisis communications. She has served the Consumer Product Safety Commission (CPSC) as an expert to determine ways in which the Commission can increase the effectiveness of its product recall campaigns. Further, she has planned and implemented large-scale government enforcement notice programs for the Federal Trade Commission (FTC) and the Securities and Exchange Commission (SEC).

Ms. Finegan is accredited in Public Relations (APR) by the Universal Accreditation Board, which is a program administered by the Public Relations Society of America (PRSA), and has served on examination panels for APR candidates. Additionally, she has served as a judge for prestigious PRSA awards.

Ms. Finegan has provided expert testimony before Congress on issues of notice, and expert testimony in both state and federal courts regarding notification campaigns. She has conducted numerous media audits of proposed notice programs to assess the adequacy of those programs under Fed R. Civ. P. 23(c)(2) and similar state class action statutes.

She was an early pioneer of plain language in notice (as noted in a RAND study,[1]) and continues to set the standard for modern outreach as the first notice expert to integrate social and mobile media into court approved legal notice programs. In the course of her class action experience, courts have recognized the merits of, and admitted expert testimony based on, her scientific evaluation of the effectiveness of notice plans. She has designed legal notices for a wide range of class actions and consumer matters that include product liability, construction defect, antitrust, medical/pharmaceutical, human rights, civil rights, telecommunication, media, environment, government enforcement actions, securities, banking, insurance, mass tort, restructuring and product recall.

### JUDICIAL COMMENTS AND LEGAL NOTICE CASES

---

1 Deborah R. Hensler et al., CLASS ACTION DILEMAS, PURSUING PUBLIC GOALS FOR PRIVATE GAIN. RAND (2000).

In evaluating the adequacy and effectiveness of Ms. Finegan's notice campaigns, courts have repeatedly recognized her excellent work. The following excerpts provide some examples of such judicial approval.

*In re: Skechers Toning Shoes Products Liability Litigation*, No. 3:11-MD-2308-TBR (W.D. Ky. 2012). In his order granting the Motion for Settlement, the Honorable Thomas B. Russell stated:

> *… The comprehensive nature of the class notice leaves little doubt that, upon receipt, class members will be able to make an informed and intelligent decision about participating in the settlement.*

*Brody v. Merck & Co., Inc., et al,* No. 3:12-cv-04774-PGS-DEA (N.J.) (Jt Hearing for Prelim App, Sept. 27, 2012, transcript page 34). During the Hearing on Joint Application for Preliminary Approval of Class Action, the Honorable Peter G. Sheridan praised Ms. Finegan, noting:

> *Ms. Finegan did a great job in testifying as to what the class administrator will do. So, I'm certain that all the class members or as many that can be found, will be given some very adequate notice in which they can perfect their claim.*

*DeHoyos, et al. v. Allstate Ins. Co.*, No. SA-01-CA-1010 (W.D.Tx.). In the Amended Final Order and Judgment Approving Class Action Settlement, the Honorable Fred Biery stated:

> *[T]he undisputed evidence shows the notice program in this case was developed and implemented by a nationally recognized expert in class action notice programs. … This program was vigorous and specifically structured to reach the African-American and Hispanic class members. Additionally, the program was based on a scientific methodology which is used throughout the advertising industry and which has been routinely embraced routinely [sic] by the Courts. Specifically, in order to reach the identified targets directly and efficiently, the notice program utilized a multi-layered approach which included national magazines; magazines specifically appropriate to the targeted audiences; and newspapers in both English and Spanish.*

*In re: Reebok Easytone Litigation*, No. 10-CV-11977 (D. MA.). The Honorable F. Dennis Saylor IV stated in the Final Approval Order:

> *The Court finds that the dissemination of the Class Notice, the publication of the Summary Settlement Notice, the establishment of a website containing settlement-related materials, the establishment of a toll-free telephone number, and all other notice methods set forth in the Settlement Agreement and [Ms. Finegan's] Declaration and the notice dissemination methodology implemented pursuant to the Settlement Agreement and this Court's Preliminary Approval Order… constituted the best practicable notice to Class Members under the circumstances of the Actions.*



***Gemelas v. The Dannon Company Inc.,*** No. 08-cv-00236-DAP (N.D. Ohio).  In granting final approval for the settlement, the Honorable Dan A. Polster stated:

> *In accordance with the Court's Preliminary Approval Order and the Court-approved notice program, [Ms. Finegan] caused the Class Notice to be distributed on a nationwide basis in magazines and newspapers (with circulation numbers exceeding 81 million) specifically chosen to reach Class Members. … The distribution of Class Notice constituted the best notice practicable under the circumstances, and fully satisfied the requirements of Federal Rule of Civil Procedure 23, the requirements of due process, 28 U.S.C. 1715, and any other applicable law.*

***Pashmova v. New Balance Athletic Shoes, Inc.***, 1:11-cv-10001-LTS (D. Mass.). The Honorable Leo T. Sorokin stated in the Final Approval Order:

> *The Class Notice, the Summary Settlement Notice, the web site, and all other notices in the Settlement Agreement and the Declaration of  [Ms Finegan], and the notice methodology implemented pursuant to the Settlement Agreement: (a) constituted the best practicable notice under the circumstances; (b) constituted notice that was reasonably calculated to apprise Class Members of the pendency of the Actions, the terms of the Settlement and their rights under the settlement … met all applicable requirements of law, including, but not limited to, the Federal Rules of Civil Procedure, 28 U.S.C. § 1715, and the Due Process Clause(s) of the United States Constitution, as well as complied with the Federal Judicial Center's illustrative class action notices.*

***Hartless v. Clorox Company***, No. 06-CV-2705 (CAB) (S.D.Cal.).  In the Final Order Approving Settlement, the Honorable Cathy N. Bencivengo found:

> *The Class Notice advised Class members of the terms of the settlement; the Final Approval Hearing and their right to appear at such hearing; their rights to remain in or opt out of the Class and to object to the settlement; the procedures for exercising such rights; and the binding effect of this Judgment, whether favorable or unfavorable, to the Class. The distribution of the notice to the Class constituted the best notice practicable under the circumstances, and fully satisfied the requirements of Federal Rule of Civil Procedure 23, the requirements of due process, 28 U.S.C. §1715, and any other applicable law.*

***McDonough et al v. Toys 'R' Us et al,*** No. 09:-cv-06151-AB (E.D. Pa.).  In the Final Order and Judgment Approving Settlement, the Honorable Anita Brody stated:

> *The Court finds that the Notice provided constituted the best notice practicable under the circumstances and constituted valid, due and sufficient notice to all persons entitled thereto.*



*In re: Pre-Filled Propane Tank Marketing & Sales Practices Litigation,* No. 4:09-md-02086-GAF (W.D. Mo.) In granting final approval to the settlement, the Honorable Gary A. Fenner stated:

> *The notice program included individual notice to class members who could be identified by Ferrellgas, publication notices, and notices affixed to Blue Rhino propane tank cylinders sold by Ferrellgas through various retailers. ... The Court finds the notice program fully complied with Federal Rule of Civil Procedure 23 and the requirements of due process and provided to the Class the best notice practicable under the circumstances.*

*Stern v. AT&T Mobility Wireless*, No. 09-cv-1112 CAS-AGR (C.D.Cal.). In the Final Approval Order, the Honorable Christina A. Snyder stated:

> *[T]he Court finds that the Parties have fully and adequately effectuated the Notice Plan, as required by the Preliminary Approval Order, and, in fact, have achieved better results than anticipated or required by the Preliminary Approval Order.*

*In re: Processed Egg Prods. Antitrust Litig.*, MDL No. 08-md-02002 (E.D.P.A.). In the Order Granting Final Approval of Settlement , Judge Gene E.K. Pratter stated:

> *The Notice appropriately detailed the nature of the action, the Class claims, the definition of the Class and Subclasses, the terms of the proposed settlement agreement, and the class members' right to object or request exclusion from the settlement and the timing and manner for doing so.... Accordingly, the Court determines that the notice provided to the putative Class Members constitutes adequate notice in satisfaction of the demands of Rule 23.*

*Stefanyshyn v. Consolidated Industries*, No. 79 D 01-9712-CT-59 (Tippecanoe County Sup. Ct., Ind.). In the Order Granting Final Approval of Settlement, Judge Randy Williams stated:

> *The long and short form notices provided a neutral, informative, and clear explanation of the Settlement. … The proposed notice program was properly designed, recommended, and implemented … and constitutes the "best practicable" notice of the proposed Settlement. The form and content of the notice program satisfied all applicable legal requirements. … The comprehensive class notice educated Settlement Class members about the defects in Consolidated furnaces and warned them that the continued use of their furnaces created a risk of fire and/or carbon monoxide. This alone provided substantial value.*

*McGee v. Continental Tire North America, Inc. et al*, No. 06-6234-(GEB) (D.N.J.).

> *The Class Notice, the Summary Settlement Notice, the web site, the toll-free telephone number, and all other notices in the Agreement, and the notice methodology*



*implemented pursuant to the Agreement: (a) constituted the best practicable notice under the circumstances; (b) constituted notice that was reasonably calculated to apprise Class Members of the pendency of the Action, the terms of the settlement and their rights under the settlement, including, but not limited to, their right to object to or exclude themselves from the proposed settlement and to appear at the Fairness Hearing; (c) were reasonable and constituted due, adequate and sufficient notice to all persons entitled to receive notification; and (d) met all applicable requirements of law, including, but not limited to, the Federal Rules of Civil Procedure, 20 U.S.C. Sec. 1715, and the Due Process Clause(s) of the United States Constitution, as well as complied with the Federal Judicial Center's illustrative class action notices.*

*Varacallo, et al. v. Massachusetts Mutual Life Insurance Company, et al*., No. 04-2702 (JLL) (D.N.J.).  The Court stated that:

> [A]*ll of the notices are written in simple terminology, are readily understandable by Class Members, and comply with the Federal Judicial Center's illustrative class action notices. … By working with a nationally syndicated media research firm, [Finegan's firm] was able to define a target audience for the MassMutual Class Members, which provided a valid basis for determining the magazine and newspaper preferences of the Class Members.  (Preliminary Approval Order at p. 9).  . . .  The Court agrees with Class Counsel that this was more than adequate.  (Id. at § 5.2).*

*In re: Nortel Network Corp., Sec. Litig*., No. 01-CV-1855 (RMB) Master File No. 05 MD 1659 (LAP) (S.D.N.Y.).  Ms. Finegan designed and implemented the extensive United States and Canadian notice programs in this case.  The Canadian program was published in both French and English, and targeted virtually all investors of stock in Canada.  *See* www.nortelsecuritieslitigation.com.  Of the U.S. notice program, the Honorable Loretta A. Preska stated:

> *The form and method of notifying the U.S. Global Class of the pendency of the action as a class action and of the terms and conditions of the proposed Settlement … constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.*

Regarding the B.C. Canadian Notice effort: *Jeffrey v. Nortel Networks*, [2007] BCSC 69 at para. 50, the Honourable Mr. Justice Groberman said:

> *The efforts to give notice to potential class members in this case have been thorough. There has been a broad media campaign to publicize the proposed settlement and the court processes.  There has also been a direct mail campaign directed at probable investors.  I am advised that over 1.2 million claim packages were mailed to persons around the world.  In addition, packages have been available through the worldwide web site nortelsecuritieslitigation.com  on the Internet.  Toll-free telephone lines have been set up, and it appears that class counsel and the Claims Administrator have*



*received innumerable calls from potential class members. In short, all reasonable efforts have been made to ensure that potential members of the class have had notice of the proposal and a reasonable opportunity was provided for class members to register their objections, or seek exclusion from the settlement.*

***Mayo v. Walmart Stores and Sam's Club***, No. 5:06 CV-93-R (W.D.Ky.).  In the Order Granting Final Approval of Settlement, Judge Thomas B. Russell stated:

> *According to defendants' database, the Notice was estimated to have reached over 90% of the Settlement Class Members through direct mail.*
> *The Settlement Administrator … has classified the parties' database as 'one of the most reliable and comprehensive databases [she] has worked with for the purposes of legal notice.'… The Court thus reaffirms its findings and conclusions in the Preliminary Approval Order that the form of the Notice and manner of giving notice satisfy the requirements of Fed. R. Civ. P. 23 and affords due process to the Settlement Class Members.*

***Fishbein v. All Market Inc***., (d/b/a **Vita Coco**) No. 11-cv-05580  (S.D.N.Y.).  In granting final approval of the settlement, the Honorable J. Paul Oetken stated:

> *"The Court finds that the dissemination of Class Notice pursuant to the Notice Program…constituted the best practicable notice to Settlement Class Members under the circumstances of this Litigation … and was reasonable and constituted due, adequate and sufficient notice to all persons entitled to such notice, and fully satisfied the requirements of the Federal Rules of Civil Procedure, including Rules 23(c)(2) and (e), the United States Constitution (including the Due Process Clause), the Rules of this Court, and any other applicable laws."*

***Lucas, et al. v. Kmart Corp***., No. 99-cv-01923 (D.Colo.), wherein the Court recognized Jeanne Finegan as an expert in the design of notice programs, and stated:

> *The Court finds that the efforts of the parties and the proposed Claims Administrator in this respect go above and beyond the "reasonable efforts" required for identifying individual class members under F.R.C.P. 23(c)(2)(B).*

***In re: Johns-Manville Corp.*** **(Statutory Direct Action Settlement, Common Law Direct Action and Hawaii Settlement)**, No 82-11656, 57, 660, 661, 665-73, 75 and 76 (BRL) (Bankr. S.D.N.Y.). The nearly half-billion dollar settlement incorporated three separate notification programs, which targeted all persons who had asbestos claims whether asserted or unasserted, against the Travelers Indemnity Company.  In the Findings of Fact and Conclusions of a Clarifying Order Approving the Settlements, slip op. at 47-48 (Aug. 17, 2004), the Honorable Burton R. Lifland, Chief Justice, stated:



*As demonstrated by Findings of Fact (citation omitted), the Statutory Direct Action Settlement notice program was reasonably calculated under all circumstances to apprise the affected individuals of the proceedings and actions taken involving their interests, Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950), such program did apprise the overwhelming majority of potentially affected claimants and far exceeded the minimum notice required. . . . The results simply speak for themselves.*

***Pigford v. Glickman and U.S. Department of Agriculture***, No. 97-1978. 98-1693 (PLF) (D.D.C.). This matter was the largest civil rights case to settle in the United States in over 40 years. The highly publicized, nationwide paid media program was designed to alert all present and past African-American farmers of the opportunity to recover monetary damages against the U.S. Department of Agriculture for alleged loan discrimination.  In his Opinion, the Honorable Paul L. Friedman commended the parties with respect to the notice program, stating;

*The parties also exerted extraordinary efforts to reach class members through a massive advertising campaign in general and African American targeted publications and television stations. . . . The Court concludes that class members have received more than adequate notice and have had sufficient opportunity to be heard on the fairness of the proposed Consent Decree.*

***In re: Louisiana-Pacific Inner-Seal Siding Litig.***, Nos. 879-JE, and 1453-JE (D.Or.).  Under the terms of the Settlement, three separate notice programs were to be implemented at three-year intervals over a period of six years.  In the first notice campaign, Ms. Finegan implemented the print advertising and Internet components of the Notice program.  In approving the legal notice communication plan, the Honorable Robert E. Jones stated:

*The notice given to the members of the Class fully and accurately informed the Class members of all material elements of the settlement…[through] a broad and extensive multi-media notice campaign.*

Additionally, with regard to the third-year notice program for Louisiana-Pacific, the Honorable Richard Unis, Special Master, commented that the notice was:

*…well formulated to conform to the definition set by the court as adequate and reasonable notice.  Indeed, I believe the record should also reflect the Court's appreciation to Ms. Finegan for all the work she's done, ensuring that notice was done correctly and professionally, while paying careful attention to overall costs.  Her understanding of various notice requirements under Fed. R. Civ. P. 23, helped to insure that the notice given in this case was consistent with the highest standards of compliance with Rule 23(d)(2).*

***In re: Expedia Hotel Taxes and Fees Litigation***, No. 05-2-02060-1 (SEA) (Sup. Ct. of Wash. in and for King County).  In the Order Granting Final Approval of Class Action Settlement, Judge



Monica Benton stated:

> *The Notice of the Settlement given to the Class … was the best notice practicable under the circumstances. All of these forms of Notice directed Class Members to a Settlement Website providing key Settlement documents including instructions on how Class Members could exclude themselves from the Class, and how they could object to or comment upon the Settlement. The Notice provided due and adequate notice of these proceeding and of the matters set forth in the Agreement to all persons entitled to such notice, and said notice fully satisfied the requirements of CR 23 and due process.*

***Rene Rosales v. Fortune Ins. Co.***, No. 99-04588 CA (41) (11th Judicial Dist. Ct. of Miami-Dade County, Fla.). Ms. Finegan provided expert testimony in this matter. She conducted an audit on behalf of intervening attorneys for the proposed notification to individuals insured with personal injury insurance.
Based upon the audit, Ms. Finegan testified that the proposed notice program was inadequate. The Court agreed and signed an Order Granting Intervenors' Objections to Class Action Settlement, stating:

> *The Court finds that Ms. Finegan is qualified as an expert on class notice and effective media campaigns. The Court finds that her testimony is credible and reliable.*

***Thomas A. Foster and Linda E. Foster v. ABTco Siding Litigation***, No. 95-151-M (Cir. Ct., Choctaw County, Ala.). This litigation focused on past and present owners of structures sided with Abitibi-Price siding. The notice program that Ms. Finegan designed and implemented was national in scope and received the following praise from the Honorable J. Lee McPhearson:

> *The Court finds that the Notice Program conducted by the Parties provided individual notice to all known Class Members and all Class Members who could be identified through reasonable efforts and constitutes the best notice practicable under the circumstances of this Action. This finding is based on the overwhelming evidence of the adequacy of the notice program. … The media campaign involved broad national notice through television and print media, regional and local newspapers, and the Internet (see id. ¶¶9-11) The result: over 90 percent of Abitibi and ABTco owners are estimated to have been reached by the direct media and direct mail campaign.*

***Wilson v. Massachusetts Mut. Life Ins. Co.***, No. D-101-CV 98-02814 (First Judicial Dist. Ct., County of Santa Fe, N.M.). This was a nationwide notification program that included all persons in the United States who owned, or had owned, a life or disability insurance policy with Massachusetts Mutual Life Insurance Company and had paid additional charges when paying their premium on an installment basis. The class was estimated to exceed 1.6 million individuals. www.insuranceclassclaims.com. In granting preliminary approval to the settlement, the Honorable Art Encinias found:



> [T]he Notice Plan [is] the best practicable notice that is reasonably calculated, under the circumstances of the action. …[and] meets or exceeds all applicable requirements of the law, including Rule 1-023(C)(2) and (3) and 1-023(E), NMRA 2001, and the requirements of federal and/or state constitutional due process and any other applicable law.

***Sparks v. AT&T Corp.***, No. 96-LM-983 (Third Judicial Cir., Madison County, Ill.). The litigation concerned all persons in the United States who leased certain AT&T telephones during the 1980's. Ms. Finegan designed and implemented a nationwide media program designed to target all persons who may have leased telephones during this time period, a class that included a large percentage of the entire population of the United States.
In granting final approval to the settlement, the Court found:

> *The Court further finds that the notice of the proposed settlement was sufficient and furnished Class Members with the information they needed to evaluate whether to participate in or opt out of the proposed settlement. The Court therefore concludes that the notice of the proposed settlement met all requirements required by law, including all Constitutional requirements.*

***In re: Georgia-Pacific Toxic Explosion Litig.***, No. 98 CVC05-3535 (Ct. of Common Pleas, Franklin County, Ohio). Ms. Finegan designed and implemented a regional notice program that included network affiliate television, radio and newspaper. The notice was designed to alert adults living near a Georgia-Pacific plant that they had been exposed to an air-born toxic plume and their rights under the terms of the class action settlement. In the Order and Judgment finally approving the settlement, the Honorable Jennifer L. Bunner stated:

> *[N]otice of the settlement to the Class was the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The Court finds that such effort exceeded even reasonable effort and that the Notice complies with the requirements of Civ. R. 23(C).*

***In re: American Cyanamid***, No. CV-97-0581-BH-M (S.D.Al.). The media program targeted Farmers who had purchased crop protection chemicals manufactured by American Cyanamid. In the Final Order and Judgment, the Honorable Charles R. Butler Jr. wrote:

> *The Court finds that the form and method of notice used to notify the Temporary Settlement Class of the Settlement satisfied the requirements of Fed. R. Civ. P. 23 and due process, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all potential members of the Temporary Class Settlement.*

***In re: First Alert Smoke Alarm Litig.***, No. CV-98-C-1546-W (UWC) (N.D.Al.). Ms. Finegan designed and implemented a nationwide legal notice and public information program. The public information program ran over a two-year period to inform those with smoke alarms of

the performance characteristics between photoelectric and ionization detection. The media program included network and cable television, magazine and specialty trade publications. In the Findings and Order Preliminarily Certifying the Class for Settlement Purposes, Preliminarily Approving Class Settlement, Appointing Class Counsel, Directing Issuance of Notice to the Class, and Scheduling a Fairness Hearing, the Honorable C.W. Clemon wrote that the notice plan:

> *…constitutes due, adequate and sufficient notice to all Class Members; and (v) meets or exceeds all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Alabama State Constitution, the Rules of the Court, and any other applicable law.*

*In re: James Hardie Roofing Litig.,* No. 00-2-17945-65SEA (Sup. Ct. of Wash., King County). The nationwide legal notice program included advertising on television, in print and on the Internet. The program was designed to reach all persons who own any structure with JHBP roofing products. In the Final Order and Judgment, the Honorable Steven Scott stated:

> *The notice program required by the Preliminary Order has been fully carried out… [and was] extensive. The notice provided fully and accurately informed the Class Members of all material elements of the proposed Settlement and their opportunity to participate in or be excluded from it; was the best notice practicable under the circumstances; was valid, due and sufficient notice to all Class Members; and complied fully with Civ. R. 23, the United States Constitution, due process, and other applicable law.*

*Barden v. Hurd Millwork Co. Inc., et al,* No. 2:6-cv-00046 (LA) (E.D.Wis.) (*"The Court approves, as to form and content, the notice plan and finds that such notice is the best practicable under the circumstances under Federal Rule of Civil Procedure 23(c)(2)(B) and constitutes notice in a reasonable manner under Rule 23(e)(1)."*)

*Altieri v. Reebok,* No. 4:10-cv-11977 (FDS) (D.C.Mass.) (*"The Court finds that the notices … constitute the best practicable notice….. The Court further finds that all of the notices are written in simple terminology, are readily understandable by Class Members, and comply with the Federal Judicial Center's illustrative class action notices."*)

*Marenco v. Visa Inc.,* No. CV 10-08022 (DMG) (C.D.Cal.) (*"[T]he Court finds that the notice plan…meets the requirements of due process, California law, and other applicable precedent. The Court finds that the proposed notice program is designed to provide the Class with the best notice practicable, under the circumstances of this action, of the pendency of this litigation and of the proposed Settlement's terms, conditions, and procedures, and shall constitute due and sufficient notice to all persons entitled thereto under California law, the United States Constitution, and any other applicable law."*)

*Palmer v. Sprint Solutions, Inc.,* No. 09-cv-01211 (JLR) (W.D.Wa.) (*"The means of notice were reasonable and constitute due, adequate, and sufficient notice to all persons entitled to be provide3d with notice."*)

*In re: Tyson Foods, Inc., Chicken Raised Without Antibiotics Consumer Litigation*, No. 1:08-md-01982 RDB (D. Md. N. Div.) (*"The notice, in form, method, and content, fully complied with the requirements of Rule 23 and due process, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons entitled to notice of the settlement."*)

*Sager v. Inamed Corp. and McGhan Medical Breast Implant Litigation*, No. 01043771 (Sup. Ct. Cal., County of Santa Barbara) (*"Notice provided was the best practicable under the circumstances."*).

*Deke, et al. v. Cardservice Internat'l,* Case No. BC 271679, slip op. at 3 (Sup. Ct. Cal., County of Los Angeles) (*"The Class Notice satisfied the requirements of California Rules of Court 1856 and 1859 and due process and constituted the best notice practicable under the circumstances."*).

*Levine, et al. v. Dr. Philip C. McGraw, et al*., Case No. BC 312830 (Los Angeles County Super. Ct., Cal.) (*"[T]he plan for notice to the Settlement Class … constitutes the best notice practicable under the circumstances and constituted due and sufficient notice to the members of the Settlement Class … and satisfies the requirements of California law and federal due process of law."*).

*In re: Canadian Air Cargo Shipping Class Actions*,  Court File No. 50389CP, Ontario Superior Court of Justice, Supreme Court of British Columbia, Quebec Superior Court (*"I am satisfied the proposed form of notice meets the requirements of s. 17(6) of the CPA  and the proposed method of notice is appropriate."*).

*Fischer et al v. IG Investment Management, Ltd. et al*, Court File No. 06-CV-307599CP, Ontario Superior Court of Justice.

*In re: Vivendi Universal, S.A. Securities Litigation*, No. 02-cv-5571 (RJH)(HBP) (S.D.N.Y.).

*In re: Air Cargo Shipping Services Antitrust Litigation*, No. 06-MD-1775 (JG) (VV) (E.D.N.Y.).

*Berger, et al., v. Property ID Corporation, et al.*, No. CV 05-5373-GHK (CWx) (C.D.Cal.).

*Lozano v. AT&T Mobility Wireless*, No. 02-cv-0090 CAS (AJWx) (C.D.Cal.).

*Howard A. Engle, M.D., et al., v. R.J. Reynolds Tobacco Co., Philip Morris, Inc., Brown & Williamson Tobacco Corp.,* No. 94-08273 CA (22) (11th Judicial Dist. Ct. of Miami-Dade County, Fla.).

*In re: Royal Dutch/Shell Transport Securities Litigation,* No. 04 Civ. 374 (JAP) (Consolidated Cases) (D. N.J.).

*In re: Epson Cartridge Cases, Judicial Council Coordination Proceeding*, No. 4347 (Sup. Ct. of Cal., County of Los Angeles).

*UAW v. General Motors Corporation*, No: 05-73991 (E.D.MI).

*Wicon, Inc. v. Cardservice Intern'l, Inc.*, BC 320215 (Sup. Ct. of Cal., County of Los Angeles).

*In re: SmithKline Beecham Clinical Billing Litig.*, No. CV. No. 97-L-1230 (Third Judicial Cir., Madison County, Ill.). Ms. Finegan designed and developed a national media and Internet site notification program in connection with the settlement of a nationwide class action concerning billings for clinical laboratory testing services.

*MacGregor v. Schering-Plough Corp.,* No. EC248041 (Sup. Ct. Cal., County of Los Angeles). This nationwide notification program was designed to reach all persons who had purchased or used an aerosol inhaler manufactured by Schering-Plough. Because no mailing list was available, notice was accomplished entirely through the media program.

*In re: Swiss Banks Holocaust Victim Asset Litig.*, No. CV-96-4849 (E.D.N.Y.). Ms. Finegan managed the design and implementation of the Internet site on this historic case. The site was developed in 21 native languages. It is a highly secure data gathering tool and information hub, central to the global outreach program of Holocaust survivors. www.swissbankclaims.com.

*In re: Exxon Valdez Oil Spill Litig.*, No. A89-095-CV (HRH) (Consolidated) (D. Alaska). Ms. Finegan designed and implemented two media campaigns to notify native Alaskan residents, trade workers, fisherman, and others impacted by the oil spill of the litigation and their rights under the settlement terms.

*In re: Johns-Manville Phenolic Foam Litig.*, No. CV 96-10069 (D. Mass). The nationwide multi-media legal notice program was designed to reach all Persons who owned any structure, including an industrial building, commercial building, school, condominium, apartment house, home, garage or other type of structure located in the United States or its territories, in which Johns-Manville PFRI was installed, in whole or in part, on top of a metal roof deck.

*Bristow v Fleetwood Enters Litig.*, No Civ 00-0082-S-EJL (D. Id). Ms. Finegan designed and implemented a legal notice campaign targeting present and former employees of Fleetwood Enterprises, Inc., or its subsidiaries who worked as hourly production workers at Fleetwood's housing, travel trailer, or motor home manufacturing plants. The comprehensive notice campaign included print, radio and television advertising.

*In re: New Orleans Tank Car Leakage Fire Litig.*, No 87-16374 (Civil Dist. Ct., Parish of Orleans, LA) (2000). This case resulted in one of the largest settlements in U.S. history. This campaign consisted of a media relations and paid advertising program to notify individuals of their rights under the terms of the settlement.

*Garria Spencer v. Shell Oil Co.*, No. CV 94-074(Dist. Ct., Harris County, Tex.). The nationwide notification program was designed to reach individuals who owned real property or structures in the United States which contained polybutylene plumbing with acetyl insert or metal insert fittings.

*In re: Hurd Millwork Heat Mirror™ Litig.*, No. CV-772488 (Sup. Ct. of Cal., County of Santa Clara). This nationwide multi-media notice program was designed to reach class members with failed heat mirror seals on windows and doors, and alert them as to the actions that they needed to take to receive enhanced warranties or window and door replacement.

*Laborers Dist. Counsel of Alabama Health and Welfare Fund v. Clinical Lab. Servs., Inc*, No. CV–97-C-629-W (N.D. Ala.). Ms. Finegan designed and developed a national media and Internet site notification program in connection with the settlement of a nationwide class action concerning alleged billing discrepancies for clinical laboratory testing services.

*In re: StarLink Corn Prods. Liab. Litig.*, No. 01-C-1181 (N.D. Ill).. Ms. Finegan designed and implemented a nationwide notification program designed to alert potential class members of the terms of the settlement.

*In re: MCI Non-Subscriber RatePayers Litig.*, MDL Docket No. 1275, 3:99-cv-01275 (S.D.Ill.). The advertising and media notice program, found to be "more than adequate" by the Court, was designed with the understanding that the litigation affected all persons or entities who were customers of record for telephone lines presubscribed to MCI/World Com, and were charged the higher non-subscriber rates and surcharges for direct-dialed long distance calls placed on those lines. www.rateclaims.com.

*In re: Albertson's Back Pay Litig.*, No. 97-0159-S-BLW (D.Id.). Ms. Finegan designed and developed a secure Internet site, where claimants could seek case information confidentially.

*In re: Georgia Pacific Hardboard Siding Recovering Program*, No. CV-95-3330-RG (Cir. Ct., Mobile County, Ala.). Ms. Finegan designed and implemented a multi-media legal notice program, which was designed to reach class members with failed G-P siding and alert them of the pending matter. Notice was provided through advertisements, which aired on national cable networks, magazines of nationwide distribution, local newspaper, press releases and trade magazines.

*In re: Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig*., Nos. 1203, 99-20593. Ms. Finegan worked as a consultant to the National Diet Drug Settlement Committee on notification issues. The resulting notice program was described and

complimented at length in the Court's Memorandum and Pretrial Order 1415, approving the settlement,

*In re: Diet Drugs* **(Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig**., 2000 WL 1222042, Nos. 1203, 99-20593 (E.D.Pa. Aug. 28, 2002).

Ms. Finegan designed the Notice programs for multiple state antitrust cases filed against the Microsoft Corporation. In those cases, it was generally alleged that Microsoft unlawfully used anticompetitive means to maintain a monopoly in markets for certain software, and that as a result, it overcharged consumers who licensed its MS-DOS, Windows, Word, Excel and Office software. The multiple legal notice programs designed by Jeanne Finegan and listed below targeted both individual users and business users of this software. The scientifically designed notice programs took into consideration both media usage habits and demographic characteristics of the targeted class members.

*In re: Florida Microsoft Antitrust Litig. Settlement*, No. 99-27340 CA 11 (11th Judicial Dist. Ct. of Miami-Dade County, Fla.).

*In re: Montana Microsoft Antitrust Litig. Settlement*, No. DCV 2000 219 (First Judicial Dist. Ct., Lewis & Clark Co., Mt.).

*In re: South Dakota Microsoft Antitrust Litig. Settlement*, No. 00-235(Sixth Judicial Cir., County of Hughes, S.D.).

*In re: Kansas Microsoft Antitrust Litig. Settlement*, No. 99C17089 Division No. 15 Consolidated Cases (Dist. Ct., Johnson County, Kan.) ("The Class Notice provided was the best notice practicable under the circumstances and fully complied in all respects with the requirements of due process and of the Kansas State. Annot. §60-22.3.").

*In re: North Carolina Microsoft Antitrust Litig. Settlement*, No. 00-CvS-4073 (Wake) 00-CvS-1246 (Lincoln) (General Court of Justice Sup. Ct., Wake and Lincoln Counties, N.C.).

*In re: ABS II Pipes Litig.*, No. 3126 (Sup. Ct. of Cal., Contra Costa County). The Court approved regional notification program designed to alert those individuals who owned structures with the pipe that they were eligible to recover the cost of replacing the pipe.

*In re: Avenue A Inc. Internet Privacy Litig.*, No: C00-1964C (W.D. Wash.).

*In re: Lorazepam and Clorazepate Antitrust Litig.*, No. 1290 (TFH) (D.C.C.).

*In re: Providian Fin. Corp. ERISA Litig.*, No C-01-5027 (N.D. Cal.).

*In re: H & R Block., et al Tax Refund Litig.*, No. 97195023/CC4111 (Maryland Cir. Ct., Baltimore City).

*In re: American Premier Underwriters, Inc, U.S. Railroad Vest Corp.*, No. 06C01-9912 (Cir. Ct., Boone County, Ind.).

*In re: Sprint Corp. Optical Fiber Litig.*, No: 9907 CV 284 (Dist. Ct., Leavenworth County, Kan).

*In re: Shelter Mutual Ins. Co. Litig.*, No. CJ-2002-263 (Dist.Ct., Canadian County. Ok).

*In re: Conseco, Inc. Sec. Litig.*, No: IP-00-0585-C Y/S CA (S.D. Ind.).

*In re: Nat'l Treasury Employees Union, et al.*, 54 Fed. Cl. 791 (2002).

*In re: City of Miami Parking Litig.*, Nos. 99-21456 CA-10, 99-23765 – CA-10 (11th Judicial Dist. Ct. of Miami-Dade County, Fla.).

*In re: Prime Co. Incorporated D/B/A/ Prime Co. Personal Comm.*, No. L 1:01CV658 (E.D. Tx.).

*Alsea Veneer v. State of Oregon A.A.*, No. 88C-11289-88C-11300.


## SEC ENFORCEMENT NOTICE PROGRAM EXPERIENCE

*SEC v. Vivendi Universal, S.A., et al.,* Case No. 02 Civ. 5571 (RJH) (HBP) (S.D.N.Y.).
The Notice program included publication in 11 different countries and eight different languages. The engagement involved a full range of services, from design and printing of the notice and claim packets through claims processing, and ultimately distribution.

*SEC v. Royal Dutch Petroleum Company*, No.04-3359 (S.D. Tex.)


## FEDERAL TRADE COMMISSION NOTICE PROGRAM EXPERIENCE

*FTC v. Skechers U.S.A., Inc.,* No. 1:12-cv-01214-JG (N.D. Ohio).

*FTC  v. Reebok International Ltd.*,  No. 11-cv-02046 (N.D. Ohio)

*FTC v. Chanery and RTC Research and Development LLC [Nutraquest]*, No :05-cv-03460 (D.N.J.)


## BANKRUPTCY EXPERIENCE

Ms. Finegan has designed and implemented hundreds of domestic and international bankruptcy notice programs.  A sample case list includes the following:



*In re AMR Corporation [American Airlines], et al.*, No. 11-15463 (SHL) (Bankr. S.D.N.Y.) **("***due and proper notice [was] provided, and … no other or further notice need be provided.***")**

*In re Jackson Hewitt Tax Service Inc.*, et al., No 11-11587 (Bankr. D.Del.) (2011). The debtors sought to provide notice of their filing as well as the hearing to approve their disclosure statement and confirm their plan to a large group of current and former customers, many of whom current and viable addresses promised to be a difficult (if not impossible) and costly undertaking. The court approved a publication notice program designed and implemented by Finegan and the administrator, that included more than 350 local newspaper and television websites, two national online networks (24/7 Real Media, Inc. and Microsoft Media Network), a website notice linked to a press release and notice on eight major websites, including CNN and Yahoo. These online efforts supplemented the print publication and direct-mail notice provided to known claimants and their attorneys, as well as to the state attorneys general of all 50 states. The *Jackson Hewitt* notice program constituted one of the first large chapter 11 cases to incorporate online advertising.

*In re: Nutraquest Inc.*, No. 03-44147 (Bankr. D.N.J.)

*In re: General Motors Corp. et al*, No. 09-50026 (Bankr. S.D.N.Y.). This case is the 4th largest bankruptcy in U.S. history. Ms. Finegan and her team worked with General Motors restructuring attorneys to design and implement the legal notice program.

*In re: ACandS, Inc.*, No. 0212687 (Bankr. D.Del.) (2007) (*"Adequate notice of the Motion and of the hearing on the Motion was given."*).

*In re: United Airlines*, No. 02-B-48191 (Bankr. N.D Ill.). Ms. Finegan worked with United and its restructuring attorneys to design and implement global legal notice programs. The notice was published in 11 countries and translated into 6 languages. Ms. Finegan worked closely with legal counsel and UAL's advertising team to select the appropriate media and to negotiate the most favorable advertising rates. www.pd-ual.com.

*In re: Enron*, No. 01-16034 (Bankr. S.D.N.Y.). Ms. Finegan worked with Enron and its restructuring attorneys to publish various legal notices.

*In re: Dow Corning,* No. 95-20512 (Bankr. E.D. Mich.). Ms. Finegan originally designed the information website. This Internet site is a major information hub that has various forms in 15 languages.

*In re: Harnischfeger Inds.*, No. 99-2171 (RJW) Jointly Administered (Bankr. D. Del.). Ms. Finegan designed and implemented 6 domestic and international notice programs for this case. The notice was translated into 14 different languages and published in 16 countries.



***In re: Keene Corp.***, No. 93B 46090 (SMB), (Bankr. E.D. MO.). Ms. Finegan designed and implemented multiple domestic bankruptcy notice programs including notice on the plan of reorganization directed to all creditors and all Class 4 asbestos-related claimants and counsel.

***In re: Lamonts***, No. 00-00045 (Bankr. W.D. Wash.). Ms. Finegan designed an implemented multiple bankruptcy notice programs.

***In re: Monet Group Holdings***, Nos. 00-1936 (MFW) (Bankr. D. Del.). Ms. Finegan designed and implemented a bar date notice.

***In re: Laclede Steel Co.***, No. 98-53121-399 (Bankr. E.D. MO.). Ms. Finegan designed and implemented multiple bankruptcy notice programs.

***In re: Columbia Gas Transmission Corp.***, No. 91-804 (Bankr. S.D.N.Y.). Ms. Finegan developed multiple nationwide legal notice notification programs for this case.

***In re: U.S.H. Corp. of New York, et al***. (Bankr. S.D.N.Y.) Ms. Finegan designed and implemented a bar date advertising notification campaign.

***In re: Best Prods. Co., Inc.,*** No. 96-35267-T, (Bankr. E.D. Va.). Ms. Finegan implemented a national legal notice program that included multiple advertising campaigns for notice of sale, bar date, disclosure and plan confirmation.

***In re: Lodgian, Inc., et al.***, No. 16345 (BRL) Factory Card Outlet – 99-685 (JCA), 99-686 (JCA) (Bankr. S.D.N.Y.)

***In re: Internat'l Total Servs, Inc., et al.***, Nos. 01-21812, 01-21818, 01-21820, 01-21882, 01-21824, 01-21826, 01-21827 (CD) Under Case No: 01-21812 (Bankr. E.D.N.Y.).

***In re: Decora Inds., Inc. and Decora, Incorp.***, Nos. 00-4459 and 00-4460 (JJF) (Bankr. D. Del.).

***In re: Genesis Health Ventures, Inc., et al***, No. 002692 (PJW) (Bankr. D. Del.).

***In re: Tel. Warehouse, Inc., et al*** No. 00-2105 through 00-2110 (MFW) (Bankr. D. Del.).

***In re: United Cos. Fin. Corp., et al*** No. 99-450 (MFW) through 99-461 (MFW) (Bankr. D. Del.).

***In re: Caldor, Inc. New York, The Caldor Corp., Caldor, Inc. CT, et al.***, No. 95-B44080 (JLG) (Bankr. S.D.N.Y.).

***In re: Physicians Health Corp., et al.***, No. 00-4482 (MFW) (Bankr. D. Del.).

***In re: GC Cos., et al.***, Nos. 00-3897 through 00-3927 (MFW) (Bankr. D. Del.).

*In re: Heilig-Meyers Co., et al.*, Nos. 00-34533 through 00-34538 (Bankr. E.D. Va.).

## PRODUCT RECALL AND CRISIS COMMUNICATION EXPERIENCE

***Reser's Fine Foods.*** Reser's is a nationally distributed brand and manufacturer of food products through giants such as Albertsons, Costco, Food Lion, WinnDixie, Ingles, Safeway and Walmart. Ms. Finegan designed an enterprise-wide crisis communication plan that included communications objectives, crisis team roles and responsibilities, crisis response procedures, regulatory protocols, definitions of incidents that require various levels of notice, target audiences, and threat assessment protocols. Ms. Finegan worked with the company through two nationwide, high profile recalls, conducting extensive media relations efforts.

***Gulf Coast Claims Facility Notice Campaign.*** Finegan coordinated a massive outreach effort throughout the Gulf Coast region to notify those who have claims as a result of damages caused by the Deep Water Horizon Oil spill. The notice campaign includes extensive advertising in newspapers throughout the region, Internet notice through local newspaper, television and radio websites and media relations. The Gulf Coast Claims Facility (GCCF) is an independent claims facility, funded by BP, for the resolution of claims by individuals and businesses for damages incurred as a result of the oil discharges due to the Deepwater Horizon incident on April 20, 2010.

***City of New Orleans Tax Revisions, Post-Hurricane Katrina***. In 2007, the City of New Orleans revised property tax assessments for property owners. As part of this process, it received numerous appeals to the assessments. An administration firm served as liaison between the city and property owners, coordinating the hearing schedule and providing important information to property owners on the status of their appeal. Central to this effort was the comprehensive outreach program designed by Ms. Finegan, which included a website and a heavy schedule of television, radio and newspaper advertising, along with the coordination of key news interviews about the project picked up by local media.

## ARTICLES

Author, 'Being 'Media-Relevant' — What It Means And Why It Matters - Law360.com, New York (September 11, 2013, 2:50 PM ET).

Co-Author, "New Media Creates New Expectations for Bankruptcy Notice Programs," ABI Journal, Vol. XXX, No 9, November 2011.

Quoted Expert, "Effective Class Action Notice Promotes Access to Justice: Insight from a New U.S. Federal Judicial Center Checklist," Canadian Supreme Court Law Review, (2011), 53 S.C.L.R. (2d).



Co-Author, with Hon. Dickran Tevrizian – "Expert Opinion: It's More Than Just a Report…Why Qualified Legal Experts Are Needed to Navigate the Changing Media Landscape," BNA Class Action Litigation Report, 12 CLASS 464, 5/27/11.

Co-Author, with Hon. Dickran Tevrizian, Your Insight, "Expert Opinion: It's More Than Just a Report -Why Qualified Legal Experts Are Needed to Navigate the Changing Media Landscape," TXLR, Vol. 26, No. 21, 5/26/2011.

Quoted Expert, "Analysis of the FJC's 2010 Judges' Class Action Notice and Claims Process Checklist and Guide: A New Roadmap to Adequate Notice and Beyond," BNA Class Action Litigation Report, 12 CLASS 165, 2/25/11.

Author, Five Key Considerations for a Successful International Notice Program, BNA Class Action Litigation Report, 4/9/10 Vol. 11, No. 7 p. 343.

Quoted Expert, "Communication Technology Trends Pose Novel Notification Issues for Class Litigators," BNA Electronic Commerce and Law, 15 ECLR 109 1/27/2010.

Author, "Legal Notice: R U ready 2 adapt?" BNA Class Action Report, Vol. 10 Class 702, 7/24/2009.

Author, "On Demand Media Could Change the Future of Best Practicable Notice," BNA Class Action Litigation Report, Vol. 9, No. 7, 4/11/2008, pp. 307-310.

Quoted Expert, "Warranty Conference: Globalization of Warranty and Legal Aspects of Extended Warranty," Warranty Week, warrantyweek.com/archive/ww20070228.html/ February 28, 2007.

Co-Author, "Approaches to Notice in State Court Class Actions," For The Defense, Vol. 45, No. 11, November, 2003.

Citation, "Recall Effectiveness Research: A Review and Summary of the Literature on Consumer Motivation and Behavior," U.S. Consumer Product Safety Commission, CPSC-F-02-1391, p.10, Heiden Associates, July 2003.

Author, "The Web Offers Near, Real-Time Cost Efficient Notice," American Bankruptcy Institute, ABI Journal, Vol. XXII, No. 5., 2003.

Author, "Determining Adequate Notice in Rule 23 Actions," For The Defense, Vol. 44, No. 9 September, 2002.

Author, "Legal Notice, What You Need To Know and Why," Monograph, July 2002.

Co-Author, "The Electronic Nature of Legal Noticing," The American Bankruptcy Institute Journal, Vol. XXI, No. 3, April 2002.

Author, "Three Important Mantras for CEO's and Risk Managers," - International Risk Management Institute, irmi.com, January 2002.

Co-Author, "Used the Bat Signal Lately," The National Law Journal, Special Litigation Section, February 19, 2001.

Author, "How Much is Enough Notice," Dispute Resolution Alert, Vol. 1, No. 6. March 2001.

Author, "Monitoring the Internet Buzz," The Risk Report, Vol. XXIII, No. 5, Jan. 2001.

Author, "High-Profile Product Recalls Need More Than the Bat Signal," - International Risk Management Institute, irmi.com, July 2001.

Co-Author, "Do You Know What 100 Million People are Buzzing About Today?" Risk and Insurance Management, March 2001.

Quoted Article, "Keep Up with Class Action," Kentucky Courier Journal, March 13, 2000.

Author, "The Great Debate - How Much is Enough Legal Notice?" American Bar Association – Class Actions and Derivatives Suits Newsletter, winter edition 1999.


## SPEAKER/EXPERT PANELIST/PRESENTER

| | |
|---|---|
| CASD 5th Annual | Speaker, "The Impact of Social Media on Class Action Notice." Consumer Attorneys of San Diego Class Action Symposium, San Diego, California, September 2012. |
| Law Seminars International | Speaker, "Class Action Notice: Rules and Statutes Governing FRCP (b)(3) Best Practicable… What constitutes a best practicable notice? What practitioners and courts should expect in the new era of online and social media."  Chicago, IL, October 2011. ***Voted by attendees as one of the best presentations given.*** |
| CASD 4th Annual | Faculty Panelist, "Reasonable Notice - Insight for practitioners on the FJC's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*. Consumer Attorneys of San Diego Class Action Symposium, San Diego, California, October 2011. |
| CLE International | Faculty Panelist, Building a Workable Settlement Structure, CLE International, San Francisco, California May, 2011. |



| | |
|---|---|
| CASD | Faculty Panelist, "21st Century Class Notice and Outreach." 3nd Annual Class Action Symposium CASD Symposium, San Diego, California, October 2010. |
| CASD | Faculty Panelist, "The Future of Notice." 2nd Annual Class Action Symposium CASD Symposium, San Diego California, October 2009. |
| American Bar Association | Speaker, 2008 Annual Meeting, "Practical Advice for Class Action Settlements:  The Future of Notice In the United States and Internationally – Meeting the Best Practicable Standard." |
| | Section of Business Law Business and Corporate Litigation Committee – Class and Derivative Actions Subcommittee, New York, NY, August 2008. |
| Women Lawyers Association of Los Angeles | Faculty Panelist, Women Lawyers Association of Los Angeles |

(WLALA) CLE Presentation, "The Anatomy of a Class Action."  Los Angeles, CA- February, 2008.

| | |
|---|---|
| Warranty Chain Mgmt. | Faculty Panelist, Presentation Product Recall Simulation.  Tampa, Florida, March 2007. |
| Practicing Law Institute (PLI) | Faculty Panelist, CLE Presentation, 11th Annual Consumer Financial Services Litigation. Presentation: Class Action Settlement Structures – Evolving Notice Standards in the Internet Age.  New York/Boston (simulcast), NY March 2006; Chicago, IL April 2006 and San Francisco, CA, May 2006. |
| U.S. Consumer Product Safety Commission | Ms. Finegan participated as an expert panelist to the Consumer Product Safety Commission to discuss ways in which the CPSC could enhance and measure the recall process. As a panelist, Ms Finegan discussed how the CPSC could better motivate consumers to take action on recalls and how companies could scientifically measure and defend their outreach efforts.  Bethesda MD, September 2003. |
| Weil, Gotshal & Manges | Presenter, CLE presentation, "A Scientific Approach to Legal Notice Communication." New York, June 2003. |



| | |
|---|---|
| Sidley & Austin | Presenter, CLE presentation, "A Scientific Approach to Legal Notice Communication." Los Angeles, May 2003. |
| Kirkland & Ellis | Speaker to restructuring group addressing "The Best Practicable Methods to Give Notice in a Tort Bankruptcy." Chicago, April 2002. |
| Georgetown University Law | Faculty, CLE White Paper: "What are the best practicable methods to Center Mass Tort Litigation give notice? Dispelling the communications myth – A notice Institute disseminated is a notice communicated," Mass Tort Litigation Institute. Washington D.C., November, 2001. |
| American Bar Association | Presenter, "How to Bullet-Proof Notice Programs and What Communication Barriers Present Due Process Concerns in Legal Notice," ABA Litigation Section Committee on Class Actions & Derivative Suits. Chicago, IL, August 6, 2001. |
| McCutchin, Doyle, Brown | Speaker to litigation group in San Francisco and simulcast to four other & Enerson McCutchin locations, addressing the definition of effective notice and barriers to communication that affect due process in legal notice. San Francisco, CA, June 2001. |
| Marylhurst University | Guest lecturer on public relations research methods. Portland, OR, February 2001. |
| University of Oregon | Guest speaker to MBA candidates on quantitative and qualitative research for marketing and communications programs. Portland, OR, May 2001. |
| Judicial Arbitration & Mediation Services (JAMS) | Speaker on the definition of effective notice. San Francisco and Los Angeles, CA, June 2000. |
| International Risk Management Institute | Past Expert Commentator on Crisis and Litigation Communications. www.irmi.com. |
| The American Bankruptcy Institute Journal (ABI) | Past Contributing Editor – Beyond the Quill. www.abi.org. |



## BACKGROUND

Ms Finegan's past experience includes working in senior management for leading Class Action Administration firms including The Garden City Group ("GCG") and Poorman-Douglas Corp., ("EPIQ"). Ms. Finegan co-founded Huntington Advertising, a nationally recognized leader in legal notice communications. After Fleet Bank purchased her firm in 1997, she grew the company into one of the nation's leading legal notice communication agencies.

Prior to that, Ms. Finegan spearheaded Huntington Communications, (an Internet development company) and The Huntington Group, Inc., (a public relations firm). As a partner and consultant, she has worked on a wide variety of client marketing, research, advertising, public relations and Internet programs. During her tenure at the Huntington Group, client projects included advertising (media planning and buying), shareholder meetings, direct mail, public relations (planning, financial communications) and community outreach programs. Her past client list includes large public and privately held companies: Code-A-Phone Corp., Thrifty-Payless Drug Stores, Hyster-Yale, The Portland Winter Hawks Hockey Team, U.S. National Bank, U.S. Trust Company, Morley Capital Management, and Durametal Corporation.

Prior to Huntington Advertising, Ms. Finegan worked as a consultant and public relations specialist for a West Coast-based Management and Public Relations Consulting firm.

Additionally, Ms. Finegan has experience in news and public affairs. Her professional background includes being a reporter, anchor and public affairs director for KWJJ/KJIB radio in Portland, Oregon, as well as reporter covering state government for KBZY radio in Salem, Oregon. Ms. Finegan worked as an assistant television program/promotion manager for KPDX directing $50 million in programming. She was also the program/promotion manager at and KECH-22 television.

Ms. Finegan's multi-level communication background gives her a thorough, hands-on understanding of media, the communication process, and how it relates to creating effective and efficient legal notice campaigns.

## MEMBERSHIPS, PROFESSIONAL CREDENTIALS

**APR -** The Universal Board of Accreditation Public Relations Society of America – Accredited.
**Member of the Public Relations Society of America**
**Member Canadian Public Relations Society**

**Also see** *LinkedIn* **page.**

# Exhibit B

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| MISTY MURRAY AND SHAUN MURRAY, individually and on behalf of a class of similarly situated individuals, | ) ) ) | |
| *Plaintiffs*, | ) | Case No. 12-cv-04789 |
| v. | ) | |
| BILL ME LATER, INC., a Delaware corporation, | ) | Judge Sarah L. Ellis |
| *Defendant*. | ) | |

## NOTICE OF CLASS ACTION LAWSUIT AND PROPOSED SETTLEMENT

**PLEASE READ THIS NOTICE CAREFULLY. IT EXPLAINS THAT YOU MAY BE ENTITLED TO RECEIVE A PAYMENT OF UP TO $500.00 FROM A CLASS ACTION SETTLEMENT. YOUR RIGHTS AND OPTIONS – AND THE DEADLINES TO EXERCISE THEM – ARE EXPLAINED IN THIS NOTICE.**

**THIS IS <u>NOT</u> NOTICE OF A LAWSUIT AGAINST YOU.  THIS IS <u>NOT</u> A SOLICITATION FROM A LAWYER.**

### WHY DID I GET THIS NOTICE?

This is a Court-authorized notice of a proposed settlement ("Notice") in a class action lawsuit. The settlement would resolve a lawsuit brought on behalf of individuals who allege they received, but did not consent to receive, automated telephone calls made by persons or entities working on behalf of Bill Me later, Inc. ("Bill Me Later"). This lawsuit relates only to such calls that were made without the called party's consent and that were made to either (1) a cellular phone using an automatic telephone dialing system, or (2) a cellular or landline phone using an artificial or prerecorded voice. If you are receiving this Notice by mail, you have been identified as someone who may have received one of these automated telephone calls between June 15, 2008 and July 24, 2014.

### WHAT IS THIS LAWSUIT ABOUT?

The lawsuit alleges that Bill Me Later and its agents violated the federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, by making automated or prerecorded telephone calls to called parties who did not give consent to receive such calls. Bill Me Later contests the claims in the Complaint and denies that it violated the TCPA.

### WHY IS THIS A CLASS ACTION?

In a class action, one or more people called "Class Representatives" sue on behalf of people who have similar claims. All of these people together are a "Settlement Class" or "Settlement Class Members." The Settlement, if approved by the Court, resolves the issues for all Settlement Class Members, except for those who exclude themselves from the Settlement Class.

### WHY IS THERE A SETTLEMENT?

The Court did not decide in favor of the Plaintiffs or the Defendant. Instead, both sides have agreed to a Settlement. The Settlement avoids the cost, risk and delay of trial, and Settlement Class Members will get compensation now rather than, if at all, years from now. Under the Settlement, Settlement Class Members will have the opportunity to obtain a payment in exchange for giving up certain legal rights. The Class Representatives and their attorneys believe the Settlement is best for all Settlement Class Members. Bill Me Later has not conceded it is liable, but is instead agreeing to settle to avoid the costs and risks associated with litigation.

## WHAT DOES THE SETTLEMENT PROVIDE?

The total amount of the Settlement Fund is $9,900,000. The cost to administer the Settlement (including the cost of processing Claim Forms and mailing Settlement checks), the cost to inform people about the Settlement (including the cost of publishing and mailing the Notice and maintaining the Settlement website), and attorneys' fees and expenses of Class Counsel and payments to the Class Representatives will come out of these funds. The amount remaining after deducting these costs will be paid to eligible Settlement Class Members who submit valid Claim Forms, up to a maximum of $500.00 per claimant. The lawyers who brought this lawsuit (listed below) will ask the Court to award them attorneys' fees of $3.3 million plus their expenses in an amount not to exceed $100,000 for the substantial time, costs, and effort they put into this case. The Class Representatives also will apply to the Court for payments, in the total amount of $30,000 each for their service to the Settlement Class.

## WHAT RIGHTS AM I GIVING UP IN THIS SETTLEMENT?

Unless you exclude yourself from this Settlement, you will be considered a member of the Settlement Class, which means you give up your right to file or continue a lawsuit against Bill Me Later, certain of its agents, and/or banks that extend or have extended credit under the Bill Me Later Program ("Released Parties"), arising from automated telephone calls made by or on behalf of Bill Me Later. Giving up your legal claims is called a release. The precise terms of the release are set forth in the Settlement Agreement, which is available on the settlement website listed below. Unless you formally exclude yourself from this Settlement, you will release your claims whether or not you submit a Claim Form and receive payment. If you have any questions, you can talk for free to the attorneys identified below who have been appointed by the Court to represent the Settlement Class, or you are welcome to talk to any other lawyer of your choosing.

## WHAT ARE MY OPTIONS?

**(1) Accept the Settlement**.

To accept the Settlement, send in a complete Claim Form by **December 11, 2014**. A Claim Form is enclosed with this Notice. You also may obtain a Claim Form at www.AutoPhoneCallsSettlement.com, and you have the option of submitting your claim form online at the same website. You also may email the completed Claim Form to the Settlement Administrator at info@AutoPhoneCallsSettlement.com . If the Settlement is approved, and you have submitted a valid claim, a check will be mailed to you. ***Submitting a valid and timely Claim Form is the only way to receive a payment from this Settlement, and is the only thing you need to do to receive a payment***.

**(2) Exclude yourself**.

You may exclude yourself from the Settlement. If you do so, you will not receive any cash payment, but you will not release any claims you may have against the Released Parties and are free to pursue whatever legal rights you may have by pursuing your own lawsuit against the Released Parties at your own risk and expense. To exclude yourself from the Settlement, you must mail a signed letter to the Settlement Administrator at MURRAY v. BILL ME LATER, C/O HEFFLER CLAIMS GROUP, P.O. BOX 360, PHILADELPHIA, PA 19105-0360, postmarked by **October 23, 2014**. You may also exclude yourself online at www.AutoPhoneCallsSettlement.com. The exclusion letter must state that you exclude yourself from this Settlement and must include the name and case number of this litigation, as well as your full name, address, and the telephone numbers at which you received a call made by or on behalf of Bill Me Later.

**(3) Object to the Settlement**.

If you wish to object to the Settlement, you must submit your objection in writing to the Clerk of the Court of the United States District Court for the Northern District of Illinois, Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, IL 60604. The objection must be received by the Court no later than **October 23, 2014**. You must also send a copy of your objection to the attorneys for both Parties to the lawsuit, including at least one of the attorneys representing the Settlement Class (set forth below), as well as the attorneys representing Bill Me Later (Mark Blocker, Sidley Austin LLP, 1 South Dearborn St., Chicago, IL 60603), postmarked no later than **October 23, 2014**. Any objection to the proposed Settlement must include your full name; address; the telephone number(s) at which you received a call by made or on behalf of BML; the telephone carrier associated with each such identified telephone number; whether each identified telephone number is a cellular phone or a residential landline; and all grounds for the objection with factual and legal support for the stated objection.

PAGE 2 OF 4

You may appear at the Final Approval Hearing, to be held on **November 20, 2014, at 1:30 p.m.**, in Courtroom 1403 of the Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, IL 60604 in person or through counsel to show cause why the proposed Settlement should not be approved as fair, reasonable, and adequate. Attendance at the hearing is not necessary; however, persons wishing to be heard orally in opposition to the approval of the Settlement, and/or the request for attorneys' fees and expenses, and/or the request for compensation awards to the Class Representatives are required to indicate in their written objection their intention to appear at the hearing on their own behalf or through counsel and to identify the names of any witnesses they intend to call to testify at the Final Approval Hearing, as well as to identify any exhibits they intend to introduce at the Final Approval Hearing.

**(4) Do Nothing.**

If you do nothing, you will receive no money from the Settlement Fund. Unless you exclude yourself from the Settlement, you will not be able to file or continue a lawsuit against the Released Parties regarding any released claims. *Submitting a valid and timely Claim Form is the only way to receive a payment from this Settlement.*

## HOW MUCH WILL I BE PAID?

If the Court approves the Settlement, every Settlement Class Member who submits a timely and valid Claim Form will be entitled to an equal payment from the Settlement Fund. Each Settlement Class Member is entitled to make only one claim regardless of the number of telephone calls received. It is estimated based on typical response rates that each claimant is likely to receive between $75.00 and $150.00, but the amount could be higher or lower based on the actual number of valid Claim Forms submitted by Settlement Class Members. However, in no event will you be entitled to receive more than the statutory maximum of $500.00.

## WHEN WILL I BE PAID?

If the Court finally approves the Settlement, you will be paid as soon as possible after the court order becomes final, which should be within 90 days after the Settlement has been finally approved. If there is an appeal of the Settlement, payment will likely be delayed. The Settlement Administrator will include information about the timing of payment at www.AutoPhoneCallsSettlement.com . All checks issued to Settlement Class Members will expire and become void 180 days after they are issued. Any uncashed checks issued from the Settlement Fund will be donated to charitable or non-profit organizations approved by the Court.

## WHAT WILL HAPPEN IF THE COURT DOES NOT APPROVE THE SETTLEMENT?

If the Court does not approve the Settlement, if it approves the Settlement and the approval is reversed on appeal, or if the Settlement does not become final for some other reason, you will not be paid at this time and the case will continue, which may or may not be in the form of a class action. The Parties may negotiate a different settlement or the case may proceed forward.

## WHO REPRESENTS THE CLASS?

The attorneys who have been appointed by the Court to represent the Class are:

| | |
|---|---|
| Myles McGuire<br>Evan M. Meyers<br>MCGUIRE LAW, P.C.<br>161 N. Clark St., 47th Floor<br>Chicago, IL 60601<br>mmcguire@mcgpc.com<br>emeyers@mcgpc.com<br>Tel: 312-216-5179 | Michael J. McMorrow<br>MCMORROW LAW, P.C.<br>One North LaSalle St.<br>44th Floor<br>Chicago, IL 60602<br>mike@mcmorrowlaw.com<br>Tel: 312-265-0708 |

**WHERE CAN I GET ADDITIONAL INFORMATION?**

This Notice is only a summary of the proposed Settlement of this lawsuit. More details are in the Settlement Agreement which, along with other documents, can be obtained at www.AutoPhoneCallsSettlement.com . If you have any questions, you can also call the Settlement Administrator at 1-844-245-3766 or Class Counsel at the numbers set forth above. In addition to the documents available on the case website, all pleadings and documents filed in Court may be reviewed or copied in the Office of the Clerk. Please do not call the Judge or the Clerk of the Court about this Case. They will not be able to give you advice on your options.

DATED: July 24, 2014

By order of: Honorable Sarah L. Ellis, District Court Judge, United States District Court, Northern District of Illinois

### BILL ME LATER SETTLEMENT

### PROOF OF CLAIM FORM

To receive a payment up to $500 from the Settlement Fund you must complete and submit a Claim Form by **December 11, 2014**.

 *A Claim Form can be submitted using one of the following methods*:

1. Online by visiting www.Autophonecallssettlement.com and completing an online Claim Form no later than midnight, U.S. Eastern Standard Time, on **December 11, 2014**.

2. By mail to the Settlement Administrator, completed, signed, and postmarked no later than **December 11, 2014**, sent to the following address: MURRAY v. BILL ME LATER, C/O HEFFLER CLAIMS GROUP, P.O. BOX 360, PHILADELPHIA, PA 19105-0360.

3. By email to the Settlement Administrator at info@AutoPhoneCallsSettlement.com no later than midnight, U.S. Eastern Standard Time, on **December 11, 2014**. If you use email, you must send the Claim Form in a format that includes a legible signature.

**IMPORTANT NOTE: You must submit a Claim Form by mail, email or submit the Claim Form online to receive payment. Each Settlement Class Member is entitled to make only one claim regardless of the number of telephone calls received.**

**You must fully complete the following information by printing below your (i) name, (ii) address, (iii) telephone number that you believe was called without your consent by or on behalf of Bill Me Later between June 15, 2008 and July 24, 2014, and (iv) the name of the telephone carrier for that telephone number during the time period when you received the automated calls, and then sign and date the form.**

**Name:** _____

      **First Name**              **MI**     **Last Name**

**Address:** _____

      **Address 1**

      _____

      **Address 2**

      _____  _____  _____  - _____

      **City**                **State**     **Zipcode**     **Zip4 (optional)**

**Telephone number: (** _____ **)** _____ - _____

**Telephone carrier:** _____

**I hereby certify that automated calls from Bill Me Later were received on the telephone number listed above, that I was the authorized user of the telephone number listed above when those automated calls from Bill Me Later were received, and that I did not consent to receive automated calls from Bill Me Later at the time the calls were made.**
**I certify that this is true and correct.** I understand that the Settlement Administrator has the right to verify my responses with my telephone carrier or otherwise and to dispute any claims that are based on inaccurate responses.

_____      _____

**Signature**                   **Date**

Exhibit C

**Subject:** Notice of Class Action Settlement  Murray v. Bill Me Later
**Date:**      Wednesday September 10 12:49 PM

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

MISTY MURRAY AND SHAUN MURRAY, individually and on behalf of a class of similarly situated individuals,
Plaintiffs,
v.
BILL ME LATER, INC., a Delaware corporation,
Defendant.
     Case No. 12-cv-04789
Judge Sarah L. Ellis

NOTICE OF CLASS ACTION LAWSUIT AND PROPOSED SETTLEMENT
**PLEASE READ THIS NOTICE CAREFULLY. IT EXPLAINS THAT YOU MAY BE ENTITLED TO RECEIVE A PAYMENT OF UP TO $500.00 FROM A CLASS ACTION SETTLEMENT. YOUR RIGHTS AND OPTIONS - AND THE DEADLINES TO EXERCISE THEM - ARE EXPLAINED IN THIS NOTICE.**
**THIS IS NOT NOTICE OF A LAWSUIT AGAINST YOU. THIS IS NOT A SOLICITATION FROM A LAWYER.**

**WHY DID I GET THIS NOTICE**?

This is a Court-authorized notice of a proposed settlement ("Notice") in a class action lawsuit. The settlement would resolve a lawsuit brought on behalf of individuals who allege they received, but did not consent to receive, automated telephone calls made by persons or entities working on behalf of Bill Me Later, Inc. ("Bill Me Later"). This lawsuit relates only to such calls that were made without the called party's consent and that were made to either (1) a cellular phone using an automatic telephone dialing system, or (2) a cellular or landline phone using an artificial or prerecorded voice. If you are receiving this Notice by mail, you have been identified as someone who may have received one of these automated telephone calls between June 15, 2008 and July 24, 2014.

**WHAT IS THIS LAWSUIT ABOUT?**

The lawsuit alleges that Bill Me Later and its agents violated the federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, by making automated or prerecorded telephone calls to called parties who did not give consent to receive such calls. Bill Me Later contests the claims in the Complaint and denies that it violated the TCPA.

**WHY IS THIS A CLASS ACTION?**

In a class action, one or more people called "Class Representatives" sue on behalf of people who have similar claims. All of these people together are a "Settlement Class" or "Settlement Class Members." The Settlement, if approved by the Court, resolves the issues for all Settlement Class Members, except for those who exclude themselves from the Settlement Class.

**WHY IS THERE A SETTLEMENT?**

The Court did not decide in favor of the Plaintiffs or the Defendant. Instead, both sides have agreed to a Settlement. The Settlement avoids the cost, risk and delay of trial, and Settlement Class Members will get compensation now rather than, if at all, years from now. Under the Settlement, Settlement Class Members will have the opportunity to obtain a payment in exchange for giving up certain legal rights. The Class Representatives and their attorneys believe the Settlement is best for all Settlement Class Members. Bill Me Later has not conceded it is liable, but is instead agreeing to settle to avoid the costs and risks associated with litigation.

**WHAT DOES THE SETTLEMENT PROVIDE?**

The total amount of the Settlement Fund is $9,900,000. The cost to administer the Settlement (including the cost of processing Claim Forms and mailing Settlement checks), the cost to inform people about the Settlement (including the cost of publishing and mailing the Notice and maintaining the Settlement website), and attorneys' fees and expenses of Class Counsel and payments to the Class Representatives will come out of these funds. The amount remaining after deducting these costs will be paid to eligible Settlement Class Members who submit valid Claim Forms, up to a maximum of $500.00 per claimant. The lawyers who brought this lawsuit (listed below) will ask the Court to award them attorneys' fees of $3.3 million plus their expenses in an amount not to exceed $100,000 for the substantial time, costs, and effort they put into this case. The Class Representatives also will apply to the Court for payments, in the total amount of $30,000 each for their service to the Settlement Class.

**WHAT RIGHTS AM I GIVING UP IN THIS SETTLEMENT?**

Unless you exclude yourself from this Settlement, you will be considered a member of the Settlement Class, which means you give up your right to file or continue a lawsuit against Bill Me Later, certain of its agents, and/or banks that extend or have extended credit under the Bill Me Later Program ("Released Parties"), arising from automated telephone calls made by or on behalf of Bill Me Later. Giving up your legal claims is called a release. The precise terms of the release are set forth in the Settlement Agreement, which is available on the settlement website listed below. Unless you formally exclude yourself from this Settlement, you will release your claims whether or not you submit a Claim Form and receive payment. If you have any questions, you can talk for free to the attorneys identified below who have been appointed by the Court to represent the Settlement Class, or you are welcome to talk to any other lawyer of your choosing.

**WHAT ARE MY OPTIONS?**

(1)    Accept the Settlement.

To accept the Settlement, send in a complete Claim Form by December 11, 2014. A Claim Form is enclosed with this Notice. You also may obtain a Claim Form at www.AutoPhoneCallsSettlement.com, and you have the option of submitting your claim form online at the same website. You also may email the completed Claim Form to the Settlement Administrator at info@AutoPhoneCallsSettlement.com<mailto:info@AutoPhoneCallsSettlement.com>. If the Settlement is approved, and you have submitted a valid claim, a check will be mailed to you. Submitting a valid and timely Claim Form is the only way to receive a payment from this Settlement, and is the only thing you need to do to receive a payment.

(2)     Exclude yourself.

You may exclude yourself from the Settlement. If you do so, you will not receive any cash payment, but you will not release any claims you may have against the Released Parties and are free to pursue whatever legal rights you may have by pursuing your own lawsuit against the Released Parties at your own risk and expense. To exclude yourself from the Settlement, you must mail a signed letter to the Settlement Administrator at MURRAY v. BILL ME LATER, C/O HEFFLER CLAIMS GROUP, P.O. BOX 360, PHILADELPHIA, PA 19105-0360, postmarked by October 23, 2014. You may also exclude yourself online at www.AutoPhoneCallsSettlement.com. The exclusion letter must state that you exclude yourself from this Settlement and must include the name and case number of this litigation, as well as your full name, address, and the telephone numbers at which you received a call made by or on behalf of Bill Me Later.

(3)     Object to the Settlement.

If you wish to object to the Settlement, you must submit your objection in writing to the Clerk of the Court of the United States District Court for the Northern District of Illinois, Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, IL 60604. The objection must be received by the Court no later than October 23, 2014. You must also send a copy of your objection to the attorneys for both Parties to the lawsuit, including at least one of the attorneys representing the Settlement Class (set forth below), as well as the attorneys representing Bill Me Later (Mark Blocker, Sidley Austin LLP, 1 South Dearborn St., Chicago, IL 60603), postmarked no later than October 23, 2014. Any objection to the proposed Settlement must include your full name; address; the telephone number(s) at which you received a call by, made or on behalf of BML; the telephone carrier associated with each such identified telephone number; whether each identified telephone number is a cellular phone or a residential landline; and all grounds for the objection with factual and legal support for the stated objection.

You may appear at the Final Approval Hearing, to be held on November 20, 2014, at 1:30 p.m., in Courtroom 1403 of the Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, IL 60604 in person or through counsel to show cause why the proposed Settlement should not be approved as fair, reasonable, and adequate. Attendance at the hearing is not necessary; however, persons wishing to be heard orally in opposition to the approval of the Settlement, and/or the request for attorney's fees and expenses, and/or the request for compensation awards to the Class Representatives are required to indicate in their written objection their intention to appear at the hearing on their own behalf or through counsel and to identify the names of any witnesses they intend to call to testify at the Final Approval Hearing, as well as to identify any exhibits they intend to introduce at the Final Approval Hearing.

(4)     Do Nothing.

If you do nothing, you will receive no money from the Settlement Fund. Unless you exclude yourself from the Settlement, you will not be able to file or continue a lawsuit against the Released Parties regarding any released claims. Submitting a valid and timely Claim Form is the only way to receive a payment from this Settlement.

**HOW MUCH WILL I BE PAID?**

If the Court approves the Settlement, every Settlement Class Member who submits a timely and valid Claim Form will be entitled to an equal payment from the Settlement Fund. Each Settlement Class Member is entitled to make only one claim regardless of the number of telephone calls received. It is estimated based on typical response rates that each claimant is likely to receive between $75.00 and $150.00, but the amount could be higher or lower based on the actual number of valid Claim Forms submitted by Settlement Class Members. However, in no event will you be entitled to receive more than the statutory maximum of $500.00.

**WHEN WILL I BE PAID?**

If the Court finally approves the Settlement, you will be paid as soon as possible after the court order becomes final, which should be within 90 days after the Settlement has been finally approved. If there is an appeal of the Settlement, payment will likely be delayed. The Settlement Administrator will include information about the timing of payment at www.AutoPhoneCallsSettlement.com<http://del2.com/url/1522920/2961b27/>. All checks issued to Settlement Class Members will expire and become void 180 days after they are issued. Any uncashed checks issued from the Settlement Fund will be donated to charitable or non-profit organizations approved by the Court.

**WHAT WILL HAPPEN IF THE COURT DOES NOT APPROVE THE SETTLEMENT?**

If the Court does not approve the Settlement, if it approves the Settlement and the approval is reversed on appeal, or if the Settlement does not become final for some other reason, you will not be paid at this time and the case will continue, which may or may not be in the form of a class action. The Parties may negotiate a different settlement or the case may proceed forward.

**WHO REPRESENTS THE CLASS?**

The attorneys who have been appointed by the Court to represent the Class are:
Myles McGuire
Evan M. Meyers
McGUIRE LAW, P.C.
161 N. Clark St., 47th Floor
Chicago, IL 60601
mmcguire@mcgpc.com<mailto:mmcguire@mcgpc.com>
emeyers@mcgpc.com<mailto:emeyers@mcgpc.com>
Tel: 312-216-5179      Michael J. McMorrow
McMORROW LAW, P.C.
One North LaSalle St.
44th Floor
Chicago, IL 60602
mike@mcmorrowlaw.com<mailto:mike@mcmorrowlaw.com>
Tel: 312-265-0708

**WHERE CAN I GET ADDITIONAL INFORMATION?**

This Notice is only a summary of the proposed Settlement of this lawsuit. More details are in the Settlement Agreement which, along with other documents, can be obtained at www.AutoPhoneCallsSettlement.com<http://del2.com/url/1522921/2961b27/> . If you have any questions, you can also call the Settlement Administrator at 1-844-245-3766 or Class Counsel at the numbers set forth above. In addition to the documents available on the case website, all pleadings and documents filed in Court may be reviewed or copied in the Office of the Clerk. Please do not call the Judge or the Clerk of the Court about this Case. They will not be able to give you advice on your options.

Click Here to Submit or Download a Claim Form
https://www.autophonecallssettlement.com/claim/<http://del2.com/url/1522922/2961b27/>

DATED: July 24, 2014
By order of: Honorable Sarah L. Ellis, District Court Judge, United States District Court, Northern District of Illinois

QUESTIONS? VISIT WWW.AUTOPHONECALLSSETTLEMENT.COM<http://del2.com/url/1522923/2961b27/> OR CALL TOLL FREE 1-844-245-3766.
PARA UNA NOTIFICACION EN ESPANOL, LLAMAR OR VISITAR NUESTRO WEBSITE.

MURRAY v. BILL ME LATER | C/O HEFFLER CLAIMS GROUP | P.O. BOX 360 | PHILADELPHIA, PA | 19105-0360
top

_____

Click here<http://del2.com/mailprefs/335f6e8/2961b27/> to update your information or stop future mailings.

# Exhibit D

SEPTEMBER 8, 2014

# People

THE EMMYS! GOWNS, PARTIES & MORE!

**THE DEATH OF SHARON TATE**

Charles Manson, 1969

## SPECIAL REPORT
### VOICES FROM FERGUSON

# Chilling New Details
# MURDERED BY MANSON

**INSIDE MEG RYAN'S SPLIT**

**EXCLUSIVE** 45 years after the killings, **Sharon Tate's sister speaks**

$4.99US $5.99CAN

0 72440 10227 9



## IF YOU RECEIVED AN AUTOMATED OR PRERECORDED TELEPHONE CALL MADE BY OR ON BEHALF OF BILL ME LATER, YOU MAY BE ENTITLED TO A CASH PAYMENT FROM A SETTLEMENT

*Para una notificación en Español visitar, www.Autophonecallssettlement.com*

A Settlement has been proposed in a class action lawsuit regarding telephone calls made by or on behalf of Bill Me Later, Inc., ("BML"). The lawsuit, *Murray, et al. v. Bill Me Later, Inc.*, Case No. 12-cv-4789 (U.S. Dist. Court for the Northern District of Illinois, Eastern Division), alleges that BML and its agents violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, ("TCPA") by making automated telephone calls to persons who did not give consent for such calls. The Settlement is not an admission of wrongdoing by BML. The Court has not decided who is right or wrong. Rather, the parties are resolving the dispute by agreement.

### Am I a Member of the Settlement Class?

You're a Settlement Class Member if, between June 15, 2008 and July 24, 2014, you received a call made by or on behalf of Bill Me Later where such call was made without your consent to either (1) your cellular telephone using an automatic telephone dialing system, or (2) your cellular or landline telephone using an artificial or prerecorded voice.

### What are the Terms of the proposed Settlement?

The total amount of the Settlement Fund is $9,900,000. If the Court approves the Settlement, each Settlement Class Member who submits a valid, timely Claim Form will be entitled to an equal payment from the Settlement Fund up to $500 per claimant, after expenses, attorneys' fees, and incentive awards are paid from the Settlement Fund. The exact amount of your payment is unknown at this time but is expected to be approximately $75-$150 and may be more or less depending on how many Settlement Class Members return valid Claim Forms.

### What are my Options?

To make a claim for a cash payment, you must mail or submit online a completed Claim Form by **December 11, 2014**. If you do not wish to participate in the Settlement, you may exclude yourself from the Class by mail or online by **October 23, 2014**, or you may object to the Settlement by submitting a written objection by **October 23, 2014**. If you do nothing, you will be bound by the decisions of the Court if the Settlement is approved. *Submitting a timely and valid Claim Form is the only way to receive a cash payment through this Settlement. Visit www.Autophonecallssettlement.com for more detailed and important information about your options under the Settlement.*

### Hearing on the proposed Settlement

The Court will hold a Final Approval Hearing on **November 20, 2014 at 1:30 p.m.** at the U.S. Courthouse, Room 1403, 219 S. Dearborn St. Chicago, IL 60604 to consider whether the proposed Settlement is fair, reasonable, and adequate. At the Hearing, Class Counsel will ask the Court to award attorneys' fees up to $3,300,000, plus expenses not to exceed $100,000, for their work in the case. The Court will also consider incentive award payments up to $30,000 to each of the two Class Representatives. You may, but do not have to, attend the Hearing, which may be changed by the Court.

**For more information and for a Claim Form, visit www.Autophonecallssettlement.com, or call 1-844-245-3766.**

**1-844-245-3766**
**www.Autophonecallssettlement.com**



nurturing our community, together.
providing meals, together.
stirring the public to act, together.

**49 million people face hunger in America,** even though billions of pounds of food go unused every year. Together let's work to close this gap. Please join the Feeding America nationwide network of food banks this Hunger Action Month™. When you get involved, you become part of a national solution while making an impact on your local community. Learn how you can solve hunger today at **FeedingAmerica.org**.

**together**
we can solve hunger.™



HUNGER ACTION MONTH    FEEDING AMERICA

Ad Council



**Andrew McCutchen** Goes Deep | By **ALBERT CHEN** P. 36

# Sports Illustrated

THE
TOMMY JOHN
DILEMMA
BY MATT
MCCARTHY
P. 54

"This is for a feature story arguing that you'll be the **Best QB In the NFL** by the end of this season. Thoughts?"

**Andrew Luck** shrugs. "Well … thanks. Lot of work to do to get to that."

By **Andy Benoit**
P. 28

**IF YOU RECEIVED AN AUTOMATED OR PRERECORDED TELEPHONE CALL MADE BY OR ON BEHALF OF BILL ME LATER, YOU MAY BE ENTITLED TO A CASH PAYMENT FROM A SETTLEMENT**

*Para una notificación en Español visitar, www.Autophonecallssettlement.com*

A Settlement has been proposed in a class action lawsuit regarding telephone calls made by or on behalf of Bill Me Later, Inc. ("BML"). The lawsuit, *Murray, et al. v. Bill Me Later, Inc.*, Case No. 12-cv-4789 (U.S. Dist. Court for the Northern District of Illinois, Eastern Division), alleges that BML and its agents violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, ("TCPA") by making automated telephone calls to persons who did not give consent for such calls. The Settlement is not an admission of wrongdoing by BML. The Court has not decided who is right or wrong. Rather, the parties are resolving the dispute by agreement.

**Am I a Member of the Settlement Class?**
You're a Settlement Class Member if, between June 15, 2008 and July 24, 2014, you received a call made by or on behalf of Bill Me Later where such call was made without your consent to either (1) your cellular telephone using an automatic telephone dialing system, or (2) your cellular or landline telephone using an artificial or prerecorded voice.

**What are the Terms of the proposed Settlement?**
The total amount of the Settlement Fund is $9,900,000. If the Court approves the Settlement, each Settlement Class Member who submits a valid, timely Claim Form will be entitled to an equal payment from the Settlement Fund up to $500 per claimant, after expenses, attorneys' fees, and incentive awards are paid from the Settlement Fund. The exact amount of your payment is unknown at this time but is expected to be approximately $75-$150 and may be more or less depending on how many Settlement Class Members return valid Claim Forms.

**What are my Options?**
To make a claim for a cash payment, you must mail or submit online a completed Claim Form by **December 11, 2014**. If you do not wish to participate in the Settlement, you may exclude yourself from the Class by mail or online by **October 23, 2014**, or you may object to the Settlement by submitting a written objection by **October 23, 2014**. If you do nothing, you will be bound by the decisions of the Court if the Settlement is approved. *Submitting a timely and valid Claim Form is the only way to receive a cash payment through this Settlement. Visit www.Autophonecallssettlement.com for more detailed and important information about your options under the Settlement.*

**Hearing on the proposed Settlement**
The Court will hold a Final Approval Hearing on **November 20, 2014 at 1:30 p.m.** at the U.S. Courthouse, Room 1403, 219 S. Dearborn St. Chicago, IL 60604 to consider whether the proposed Settlement is fair, reasonable, and adequate. At the Hearing, Class Counsel will ask the Court to award attorneys' fees up to $3,300,000, plus expenses not to exceed $100,000, for their work in the case. The Court will also consider incentive award payments up to $30,000 to each of the two Class Representatives. You may, but do not have to, attend the Hearing, which may be changed by the Court.

For more information and for a Claim Form, visit www.Autophonecallssettlement.com, or call 1-844-245-3766.

**1-844-245-3766
www.Autophonecallssettlement.com**

## TOMMY JOHN SURGERY

remarkable about watching Mininder Kocher perform an ulnar collateral ligament reconstruction is seeing the mix of finesse and brute strength required. One moment he's navigating a tiny microscope, known as an arthroscope, to help him gently manipulate the damaged ligament and to look for cartilage injuries or bone spurs that also need to be treated. The next, he's using that large drill to bore holes into the humerus and the ulna. Standing there in Watch City, I couldn't help but imagine Matt Ferreira's extended right arm as the hand on a clock and Dr. Kocher as a craftsman salvaging a valuable timepiece.

The procedure took less than 90 minutes. Matt's arm would be in a brace for the next eight weeks, but he would begin a physical therapy program immediately. The preliminary goal was for him to start soft tossing a baseball in six months and return to the field in about nine, just in time for opening day 2015. Matt sent me an email not long after he returned home. "I am still just a few days out from the surgery," he wrote, "so I haven't gone through the toughest part yet. I slept through the surgery itself, so, yeah, it was a piece of cake! It went by very quickly, but since then I've been pretty sore. The brace is heavy, but I'm getting used to it and am anxious to get started on the road back."

Matt has reason to be optimistic. A recent 10-year follow-up study in the *American Journal of Sports Medicine* of 256 baseball players who underwent Tommy John surgery found that 83% (and 90% of pitchers) returned to the same level of competition in less than a year. Ninety-three percent were satisfied with their operation, and only 3% had persistent elbow pain. On Aug. 20, the same day Tanaka announced that his elbow was healed, Matt Ferreira called to share similar news. "I just swung a bat for the first time since the surgery," he said, "and it felt great!" He had seen Dr. Kocher earlier in the day and was cleared to start a light throwing program in mid-September, a month ahead of schedule.

Matt's 12-year-old brother, Joshua, is also a baseball player: He pitches and also plays shortstop and catcher. According to Pete, both Joshua and Matt will have preventative evaluations at the Micheli Center before next season.

**N**OT LONG after I returned home to Manhattan, I received the results of my pitching analysis. It was a six-page report, full of obscure abbreviations and medical-ese. It also contained an explanation in layman's terms of what I was doing right and wrong, with the ego-bruising caveat that I was throwing slower than the competitive pitchers the test was intended to evaluate.

Despite my herky-jerky windup, the strain on my elbow registered at 46 newton meters (a measurement of torque), below the stress that's believed to cause a ligament tear. This explained why I never had an elbow injury. I also learned that my hip-shoulder separation was only 17 degrees—it should have been between 40 and 60—and that my release point was a mere .64 of a centimeter ahead of my front foot. Ideally that distance would be 20 to 30 centimeters.

In 15 years of pitching I'd had dozens of coaches, players and scouts offer opinions about why my pitching mechanics weren't quite right, but no one—not a single person—ever mentioned my release point. But here it was, right in front of me. A computer could tell me what a human could not. I wonder how this technology would have helped some of the guys I played with—or me—and how it might impact the next generation of pitchers. How many might avoid a trip to the disabled list by taking a trip to Waltham?

The story of Tommy John surgery is complicated, and it's still unfolding. Our understanding of ulnar collateral ligament injury may look quite different a few years from now. The remarkable thing is that we've developed the medical expertise to correct the problem. Soon we may have the technology to prevent it.  □



**PLUS** Fall TV Preview
Meredith Vieira
and More

# Peo[...]le

EXCLUSIVE
PHOTOS

# Dream Day!

## The Jolie-Pitt Family Wedding Album

Château Miraval, France. August 23, 2014

$4.99

37>

88526"10 22 5

**IF YOU RECEIVED AN AUTOMATED OR PRERECORDED TELEPHONE CALL MADE BY OR ON BEHALF OF BILL ME LATER, YOU MAY BE ENTITLED TO A CASH PAYMENT FROM A SETTLEMENT**

*Para una notificación en Español visitar, www.Autophonecallssettlement.com*

A Settlement has been proposed in a class action lawsuit regarding telephone calls made by or on behalf of Bill Me Later, Inc. ("BML"). The lawsuit, *Murray, et al. v. Bill Me Later, Inc.*, Case No. 12-cv-4789 (U.S. Dist. Court for the Northern District of Illinois, Eastern Division), alleges that BML and its agents violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, ("TCPA") by making automated telephone calls to persons who did not give consent for such calls. The Settlement is not an admission of wrongdoing by BML. The Court has not decided who is right or wrong. Rather, the parties are resolving the dispute by agreement.

**Am I a Member of the Settlement Class?**

You're a Settlement Class Member if, between June 15, 2008 and July 24, 2014, you received a call made by or on behalf of Bill Me Later where such call was made without your consent to either (1) your cellular telephone using an automatic telephone dialing system, or (2) your cellular or landline telephone using an artificial or prerecorded voice.

**What are the Terms of the proposed Settlement?**

The total amount of the Settlement Fund is $9,900,000. If the Court approves the Settlement, each Settlement Class Member who submits a valid, timely Claim Form will be entitled to an equal payment from the Settlement Fund up to $500 per claimant, after expenses, attorneys' fees, and incentive awards are paid from the Settlement Fund. The exact amount of your payment is unknown at this time but is expected to be approximately $75-$150 and may be more or less depending on how many Settlement Class Members return valid Claim Forms.

**What are my Options?**

To make a claim for a cash payment, you must mail or submit online a completed Claim Form by **December 11, 2014**. If you do not wish to participate in the Settlement, you may exclude yourself from the Class by mail or online by **October 23, 2014**, or you may object to the Settlement by submitting a written objection by **October 23, 2014**. If you do nothing, you will be bound by the decisions of the Court if the Settlement is approved. *Submitting a timely and valid Claim Form is the only way to receive a cash payment through this Settlement. Visit www.Autophonecallssettlement.com for more detailed and important information about your options under the Settlement.*

**Hearing on the proposed Settlement**

The Court will hold a Final Approval Hearing on **November 20, 2014 at 1:30 p.m.** at the U.S. Courthouse, Room 1403, 219 S. Dearborn St. Chicago, IL 60604 to consider whether the proposed Settlement is fair, reasonable, and adequate. At the Hearing, Class Counsel will ask the Court to award attorneys' fees up to $3,300,000, plus expenses not to exceed $100,000, for their work in the case. The Court will also consider incentive award payments up to $30,000 to each of the two Class Representatives. You may, but do not have to, attend the Hearing, which may be changed by the Court.

For more information and for a Claim Form, visit www.Autophonecallssettlement.com, or call 1-844-245-3766.

**1-844-245-3766**
**www.Autophonecallssettlement.com**






**DEADLY VACATION** Heather and Schaefer (above), shortly after their arrest on Aug. 13, have reportedly refused to cooperate with Bali investigators. "She's pretty shaken up," says attorney Michael Elkin of his client, who stayed at the St. Regis Bali Resort (right) with her mom and Schaefer.

broken. She'd been hit by a blunt object on the face and head."

Even more shocking was the news that hours after the bloody suitcase's contents were revealed, the 62-year-old victim's daughter Heather Mack, 18, and her boyfriend Tommy Schaefer, 21, whom police say carried the suitcase to the cab, were locked up in a Balinese jail for the murder. An autopsy found von Wiese-Mack died of asphyxiation from a broken nose resulting from a blow and also had a broken neck, according to authorities. Her gruesome death has left friends struggling to make sense of the tragedy. "So many people," laments longtime pal Mark Bacharach, "told Sheila not to take this trip with Heather."

• • •

**The mother and daughter's 10-day** vacation to the white sand beaches of Bali was yet one more attempt, friends say, by a desperate von Wiese-Mack to reach out to her daughter, whose father, renowned Chicago composer and arranger James Mack, died at age

**'Sheila had a big heart.** We hoped this relationship with Heather was going to work out'
—FRIEND ALLEN PARCHEM

76 of a pulmonary embolism on a 2006 vacation in Greece. Between January 2004 and June 2013, police were called to the family's sprawling home in the Chicago suburb of Oak Park, Ill., 86 times to "break up fights" between the mother and daughter and "investigate missing money and credit cards," says David Powers, spokesman for Oak Park Village. Also in dispute may have been a $1.5 million settlement the James Mack estate received in 2011 from Royal Caribbean Cruise Lines, stemming from a debilitating injury he received in a cruise ship swimming pool in 2001. After netting $340,667 after legal fees, according to court records, von Wiese-Mack also received $500,000 as the sole executor of her husband's estate. "She had a

# Exhibit E



# XAXIS

## Bill Me Later

Screenshots









Bill Me Later– 728x90
Site : - Dailytech.com



Prepared by HF Media

**Legal Notice**
If you received an automated call from **Bill Me Later**
you may be entitled to a cash payment from a Settlement.

**Learn More**
**Click Here**

| Home | Auto | Gadgets | Hardware | Internet | IT | Science | Software | Blogs | Polls | | RSS | Search DailyTech | GO |

**Submit News**

## Top Stories

<< Previous

**NEW! From HULC to FORTIS: the Evolution of Lockheed Martin's Incredible Exosuit**



Source: Lockheed Martin

New exoskeleton technology could increase worker productivity, cut injuries from aircraft and ship assembly...

August 22, 2014, 12:45 PM, **12 comments**



**NEW! Report: Microsoft to Announces Windows 9 on September 30**

Microsoft is ready to move past Windows 8.x...

August 21, 2014, 11:20 AM
**72 comments**

**NEW! New Photos Show**

## Latest Headlines  More >>

**NEW! Volkswagen e-Golf Priced from $35,445, Offers Up to 90-Mile Range**
August 25, 2014, 12:35 PM , **17 comments**

**NEW! Huawei: Windows Phone Devices On Hold, Tizen has "No chance to be successful"**
August 25, 2014, 8:16 AM , **21 comments**

**NEW! Owner of "Decepticon" Maserati Ordered to Appear in Court This Thursday**
August 25, 2014, 7:55 AM , **10 comments**



**SUPERMICR⊙**
NEW!
**TwinPro**™
Four or Two Hot-Pluggable Nodes in 2U

FDR(56Gbps)/QDR InfiniBand · 10GBase-T
Up to 12 HDDs/Node
Up to 1TB DDR3-1866 MHz in 16 DIMMs
Redundant Platinum Level Power Supplies
SAS 3.0 (12Gbps)
Intel® Xeon® Processor E5-2600 v2 product family  **Learn More >**

**NEW! Microsoft's Surface 2 Tablet Family Gets a $100 Price Cut**
August 25, 2014, 1:16 AM , **16 comments**

**NEW! Microsoft: Roughly 25,000 Win8.x Users**

## Latest Blog Posts

**Space Terrorism is a Looming Threat For the United States**
Michael Hatamoto - Apr 23, 2014, 7:47 PM

**Facebook Aims to Provide Internet to "Every Person in the World" with Drones, Satellites**
Jason Mick - Apr 1, 2014, 10:20 AM

**Retail Mobile Sites Experience Outages in Light of Simplexity's Bankruptcy**
Tiffany Kaiser - Mar 14, 2014, 8:48 AM

**Tesla vs. BMW: Who Has the Safer EV?**
Jason Mick - Feb 1, 2014, 2:56 PM

**Justice Leaks Details of Next HTC One Two Flagship Phone**
Jason Mick - Dec 5, 2013, 4:04 PM

More Blog Posts

## Most Popular Articles

**New Photos Show "Assembled" iPhone 6, Protruding Camera Ring**
August 20, 2014, 2:32 PM

**Leaked Qualcomm Roadmap:**



**XAXIS**

# Millennial Media:
# Bill Me Later Case

Mobile Screenshots





300x250



728x90





480x75

320x50

# facebook®

Bill Me Later

Screenshots



**Bill Me Later Settlement**
www.autophonecallssettlement.com
Did you receive an automated call from Bill
Me Later? You may get money from a
settlement.



**Bill Me Later Settlement**
www.autophonecallssettlement.com
Did you receive an automated call from Bill
Me Later? You may get money from a
settlement.









